# EXHIBIT 5

ISRAELI VC PARTNERS, LP

---

AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP

DATED 15 November, 2013

---

THE LIMITED PARTNERSHIP INTERESTS (THE "INTERESTS") OF ISRAELI VC PARTNERS, LP (THE "PARTNERSHIP") HAVE NOT BEEN REGISTERED UNDER THE SECURITIES LAWS OF ANY JURISDICTION IN RELIANCE UPON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF SUCH LAWS. SUCH INTERESTS MUST BE ACQUIRED FOR INVESTMENT ONLY AND MAY NOT BE OFFERED FOR SALE, PLEDGED, HYPOTHECATED, SOLD, ASSIGNED OR TRANSFERRED AT ANY TIME EXCEPT IN COMPLIANCE WITH (I) THE SECURITIES LAWS OF ANY APPLICABLE JURISDICTION; AND (II) THE TERMS AND CONDITIONS OF THIS LIMITED PARTNERSHIP AGREEMENT. THE INTERESTS MAY NOT BE TRANSFERRED OF RECORD EXCEPT IN COMPLIANCE WITH SUCH LAWS AND THIS LIMITED PARTNERSHIP AGREEMENT. THEREFORE, PURCHASERS OF SUCH INTERESTS WILL BE REQUIRED TO BEAR THE RISK OF THEIR INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

# TABLE OF CONTENTS

**Page**

ARTICLE I Definitions ....................................................................................1

ARTICLE II General Provisions ........................................................................9
    2.1    Formation. ...........................................................................9
    2.2    Limited Partners. ................................................................9
    2.3    Name. ...............................................................................10
    2.4    Term. ...............................................................................10
    2.5    Organizational Certificates and Other Filings. ................10
    2.6    Purpose. ............................................................................10
    2.7    Principal Place of Business; Other Places of Business. ...10
    2.8    Registered Office and Registered Agent. ........................11
    2.9    Tax Classification of the Partnership. .............................11

ARTICLE III Commitments, Contributions, Investments and Distributions .....11
    3.1    Commitments, Investments and Capital Contributions. ...11
    3.2    Distributions. ....................................................................12
    3.3    Partial Dispositions. ..........................................................13
    3.4    Distributions of Marketable Securities. ...........................14
    3.5    Tax Distributions. .............................................................16
    3.6    Write-Downs and Write-Ups. ...........................................16
    3.7    Limitation on Distributions. ..............................................17
    3.8    Reinvestment. ....................................................................17

ARTICLE IV Management ...............................................................................17
    4.1    Investment Guidelines. ......................................................17
    4.2    Powers of the General Partner; Investment Committee; Budget Payment. ...17
    4.3    Limitation on Liability. .....................................................20
    4.4    Indemnification. ................................................................21
    4.5    Break-up Fees and Directors' Fees. ..................................22
    4.6    Co-Investment. ..................................................................22

ARTICLE V The Limited Partners ...................................................................23
    5.1    Management. .....................................................................23
    5.2    Approval Rights of the Special Limited Partner. ..............23
    5.3    Special Limited Partner Termination Right. .....................23
    5.4    Liabilities of the Limited Partners. ...................................24
    5.5    Partners and Management Company's Outside Activities. ...25
    5.6    ERISA Representations. ....................................................25
    5.7    Additional Limited Partners. .............................................25

ARTICLE VI Expenses and Fees ......................................................................27
    6.1    Partnership Expenses. ........................................................27

ARTICLE VII Books and Records and Reports to Limited Partners ............................. 28

    7.1    Books, Register and Records. ....................................................... 28
    7.2    Federal, State, Local and Non-United States Income Tax Information. ............... 29
    7.3    Reports to Limited Partners. ...................................................... 29
    7.4    Tax Elections. ................................................................... 30
    7.5    Withholding Tax Payments and Obligations. ......................................... 31

ARTICLE VIII Term and Dissolution of the Partnership ....................................... 33

    8.1    Events of Dissolution. ............................................................ 33
    8.2    Winding-up. ...................................................................... 33
    8.3    Final Distribution. ............................................................... 34
    8.4    Upon Payment of Excess Carried Interest Amounts. ................................... 34
    8.5    Termination of Partnership. ....................................................... 35

ARTICLE IX Capital Accounts and Allocations of Profits and Losses ......................... 35

    9.1    Capital Accounts. ................................................................. 35
    9.2    General Application. .............................................................. 35
    9.3    General Allocations. .............................................................. 36
    9.4    Special Allocations. .............................................................. 37
    9.5    Allocation of Nonrecourse Liabilities. ............................................ 38
    9.6    Transfer of Interest. ............................................................. 38
    9.7    Tax Allocations. .................................................................. 38

ARTICLE X Miscellaneous .................................................................... 39

    10.1    Waiver of Partition and Accounting. .............................................. 39
    10.2    Power of Attorney. ............................................................... 39
    10.3    Amendments. ...................................................................... 39
    10.4    Entire Agreement. ................................................................ 39
    10.5    Severability. .................................................................... 39
    10.6    Notices. ......................................................................... 40
    10.7    GOVERNING LAW. .................................................................. 40
    10.8    No Third Party Beneficiaries; Successors and Assigns. ............................ 41
    10.9    Counterparts. .................................................................... 41
    10.10    Headings. ....................................................................... 41
    10.11    Interpretation .................................................................. 41
    10.12    Delivery of Certificate. ........................................................ 41
    10.13    Confidentiality. ................................................................ 41
    10.14    No Restrictions. ................................................................ 43
    10.15    Disputes. ....................................................................... 43
    10.16    Data. ........................................................................... 43
    10.17    Remedies and Waivers. ........................................................... 43
    10.18    Risk. ........................................................................... 44

## AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP OF ISRAELI VC PARTNERS, LP

This Amended and Restated Exempted Limited Partnership Agreement (this "Agreement") of Israeli VC Partners, LP (the "Partnership") is made and entered into on the date set forth above by and among Israeli VC Partners, Ltd., a Cayman Islands exempted company, as general partner (the "General Partner"), Weft Global, Ltd. (the "Special Limited Partner") and Walkers Nominees Limited (the "Withdrawing Limited Partner"), the Limited Partners named in Annex A hereto and such other parties which may from time to time be admitted as limited partners of the Partnership after the date hereof in accordance herewith.

## W I T N E S S E T H :

WHEREAS, the General Partner and the Initial Limited Partner entered into the initial exempted limited partnership agreement dated 19 June 2013 (the "Original Agreement") in order to establish the Partnership and the Partnership was registered as an exempted limited partnership in the Cayman Islands on 19 June 2013;

WHEREAS, the parties wish to amend and restate the Original Agreement in its entirety on the date first written to permit the withdrawal of the Withdrawing Limited Partner and the admission of the Limited Partner, and to enter into this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and agreements herein made and intending to be legally bound hereby, the Limited Partners hereby agree to the following:

## ARTICLE I

### Definitions

As used herein, the following terms shall have the following meanings:

**Act:** The Exempted Limited Partnership Law (as amended) of the Cayman Islands, as the same may be amended from time to time.

**Adjusted Capital Account Deficit:** With respect to any Limited Partner, the deficit balance, if any, in such Limited Partner's Capital Account as of the end of the relevant Fiscal Year, with the following adjustments:

(a)  Credit to such Capital Account any amounts which such Limited Partner is obligated to restore pursuant to any provision of this Agreement or is deemed obligated to restore pursuant to the penultimate sentences of Regulations Section 1.704-2(g)(1) and 1.704-2(i)(5); and

(b)  Debit from such Capital Account the items described in Sections 1.704-l(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), and 1.704-1(b)(2)(ii)(d)(6) of the Regulations.



1
48
23
88
67
60
GRAND CAYMAN
CAYMAN ISLANDS
22.10.13
CAYMAN ISLANDS
₰,000,050
GOVERNMENT STAMP DUTY
P B 0 1 0 0 6

The foregoing definition of "Adjusted Capital Account Deficit" is intended to comply with the provisions of Section 1.704-1(b)(2)(ii)(d) of the Regulations and shall be interpreted consistently therewith.

**Advisers Act:**  The Investment Advisers Act of 1940, as amended.

**Affiliate:**  With respect to any Person, any Person directly or indirectly Controlling, Controlled by or under common Control with such Person.

**Agreement:**  This Amended and Restated Limited Partnership Agreement of the Partnership, including annexes hereto, as it may be amended, supplemented, modified or restated from time to time.

**Apportioned Expenses:**  With respect to a Limited Partner, as to each Realized Investment giving rise to a distribution, the product of (a) the aggregate amount of Capital Contributions made by such Limited Partner at or prior to such distribution to fund (i) the Servicing Fee and (ii) the aggregate amount of other Partnership Expenses which are not directly attributable to any Asset acquired by the Partnership, as determined by the Managing Member in its reasonable discretion, and (b) a fraction, (i) the numerator of which is the amount of the Invested Capital of such Limited Partner with respect to all Realized Investments, and (ii) the denominator of which is the aggregate amount of the Invested Capital of such Limited Partner with respect to all Realized Investments and all other Assets, if any, held by the Partnership as of such date; less the amount of any such Capital Contributions previously allocated as Apportioned Expenses to any Realized Investments as of such distribution.

**Assets:**  Venture Investments and other investments by the Partnership (including any Expired Bridge Financing) as may be agreed upon by the General Partner and the Special Limited Partner as contemplated herein. For the avoidance of doubt, multiple investments in a Portfolio Company shall be considered separate Venture Investments; provided, however, that (i) all Securities of a Venture Investment acquired in a series of related transactions, as determined by the General Partner, and (ii) any Expired Bridge Financing together with any contemporaneous investment in a Portfolio Company underlying such Expired Bridge Financing, shall be deemed a single Venture Investment.

**Available Commitment:** means, with respect to any Partner, from time to time, an amount equal to (a) such Partner's Commitment, minus (b) the aggregate amount of such Partner's Capital Contributions made at or prior to such time, minus (c) the aggregate amount of capital contributions made by such Partner to any special purpose vehicle, plus (d) the aggregate amount of Investment Proceeds that the General Partner elects to restore to such Partner's Available Commitment pursuant to Section 3.8 hereof.

**Break-up Fees:**  All break-up or similar fees received by the General Partner or the Management Company as a result of a proposed transaction or investment by the Partnership that is not consummated, net of any expenses relating to the proposed transaction or investment to which such break-up or similar fees relate.

**Bridge Financing:** As defined in Section 4.2(c)(xii).

**Budget Payment**: As defined in Section 6.1(b).

**Business Day**:  Any day except a Saturday, Sunday or other day on which commercial banks in New York, New York are required or authorized by law to close.

**Capital Account**:  As defined in Section 9.1.

**Capital Contribution**:  With respect to each Limited Partner, the amount of money or securities (valued as mutually agreed to by the General Partner and the relevant Limited Partner) contributed to the Partnership by such Limited Partner from such Limited Partner's Commitment.

**Carried Interest**: Distributions made to the General Partner pursuant to paragraphs (iv) through (vii) of Section 3.2(a).

**Certificate**:  The Partnership's Certificate of Registration as an Exempted Limited Partnership in the Cayman Islands dated 19 June 2013.

**Clawback**:  As defined in Section 8.4.

**Code**:  The U.S. Internal Revenue Code of 1986, as amended.

**Commitment**: means the total amount of capital that such Limited Partner has committed to contribute to the Partnership pursuant to such Limited Partner's Subscription Agreement.

**Commitment Period**: means the period commencing on the Effective Date and ending on the fifth anniversary of the Effective Date; provided, that the Commitment Period may end earlier upon the election of the Special Limited Partner.

**Confidential Information**:  As defined in Section 10.13.

**Control**, **Controlled**, and **Controlling**:  The possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting Securities, by contract or otherwise.

**Directors' Fees**:  All fees (but excluding the reimbursement of related expenses) received by the General Partner or the Management Company or any officer, director, employee, or a member of the General Partner or the Management Company for service as a member of the board of directors (or equivalent governing body) of any Portfolio Company where such Person was elected or appointed to such position as a result, in whole or in part, of an investment by the Partnership in Securities issued by such Portfolio Company.

**Disclosing Parties**:  As defined in Section 10.13.

**Drawdown Notice**:  As defined in Section 3.1(c).

**ERISA**:  The Employee Retirement Income Security Act of 1974, as amended.

**Event of Dissolution**: As defined in Section 8.1.

**Effective Date**: November __, 2013.

**Excess Carried Interest**: The amount by which the aggregate amount of distributions received by the General Partner on account of its Carried Interest exceeds the amount of Carried Interest that would have been distributed to the General Partner recomputed taking into account the results of all investments made by the Partnership.

**Expired Bridge Financing**: Any Bridge Financing (or portion thereof) that is not refinanced or otherwise repaid within thirteen (13) months after the date of the closing of such Bridge Financing.

**Fair Value**: As defined in Section 3.4(c) hereof.

**Final Distribution**: The distribution described in Section 8.3.

**Fiscal Year**: The calendar year, except that if the Partnership is required under the Code to use a taxable year other than a calendar year, then Fiscal Year shall mean such taxable year.

**Fiscal Quarter**: The four quarterly periods of a Fiscal Year.

**Freely Tradable**: Securities which are transferable or saleable (i) pursuant to a then-effective registration statement (including a shelf registration statement) under the Securities Act or the regulations promulgated thereunder (or similar applicable statutory provision in the case of foreign Securities); (ii) pursuant to Rule 144 under the Securities Act (or similar applicable rule in the case of foreign Securities) (irrespective of any applicable holding period); or (iii) pursuant to Rule 144A, provided that the issuer of such Marketable Securities has agreed to comply with the reporting and informational requirements under Rule 144A and such Securities are eligible for trading on PORTAL.

**General Partner**: Israeli VC Partners, Ltd.

**Gross Asset Value**: With respect to any asset, the asset's adjusted basis for U.S. federal income tax purposes, except as follows:

(a)     the initial Gross Asset Value of any asset contributed by a Limited Partner to the Partnership shall be the gross fair value of such asset, as determined by the contributing Limited Partner and the General Partner;

(b)     the Gross Asset Values of all Partnership assets shall be adjusted to equal their respective gross fair values, as determined by the General Partner, as of the following times: (i) the acquisition of an additional interest in the Partnership by any new or existing Limited Partner in exchange for more than a de minimis Capital Contribution or services; (ii) the distribution by the Partnership to a Limited Partner of more than a de minimis amount of Partnership property as consideration for an interest in the Partnership; and (iii) the liquidation of the Partnership within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g); provided,

however, that the adjustments pursuant to clauses (i) and (ii) above shall be made only if the General Partner reasonably determines that such adjustments are necessary or appropriate to reflect the relative economic interests of the Limited Partners; and

        (c)     the Gross Asset Value of any Partnership asset distributed to any General Partner or Limited Partner shall be adjusted to equal the gross fair value of such asset on the date of distribution as determined by the distributee and the General Partner.

Imputed Tax Rate:  For any Fiscal Year, the highest effective combined Federal, state and local income tax rate applicable during such year to a natural person residing in New York City, New York, taxable at the highest marginal Federal income tax rate and the highest marginal New York State and New York City income tax rates (after giving effect to the Federal income tax deduction for such state and local income taxes).

Indemnitee:  As defined in Section 4.3(a).

Indemnifying Limited Partner:  As defined in Section 4.4(c).

Interest:  The entire Limited Partnership interest owned by a Limited Partner in the Partnership at any particular time, including the right of such Limited Partner to any and all benefits to which a Limited Partner may be entitled as provided in this Agreement, together with the obligations of such Limited Partner to comply with all the terms and provisions of this Agreement.

Invested Capital:  With respect to each Asset and each Limited Partner, all Capital Contributions made by such Limited Partner which are utilized by the Partnership to acquire such Asset reduced by any Invested Capital with respect to such Asset returned to such Limited Partner pursuant to Section 3.1(e) hereof.  Except as provided in Section 3.1(e), the amount of Invested Capital at any time shall not take into account any return of, or distribution with respect to, such Invested Capital.

Investment Company Act.  The Investment Company Act of 1940, as amended.

Investment Management Agreement:  The Investment Management Agreement, dated as of November ___, 2013 between the Partnership and the Management Company, as it may be amended or restated from time to time.

Investment Proceeds:  All cash proceeds or other cash receipts received by the Partnership (other than Capital Contributions, Temporary Investment Income, Break-up Fees and Directors' Fees), net of amounts necessary to pay Partnership Expenses (to the extent the Limited Partners have not made Capital Contributions in respect of such Partnership Expenses).

Limited Partner:  Each Partner other than the General Partner.

Management Company:  Israeli VC Partners Management, Ltd.

Marketable Securities:  Securities that are (a) traded on an established U.S. or foreign securities exchange, (b) reported through the National Association of Securities Dealers,

Inc. Automated Quotation System or comparable foreign established over-the-counter trading system, (c) traded over-the-counter, as determined in the reasonable discretion of the General Partner, or (d) traded on PORTAL (in the case of Securities eligible for trading pursuant to Rule 144A); provided, however, that, in the case of clause (d) above, such Securities traded on PORTAL shall be deemed to be "Marketable Securities" only if they are Freely Tradable and are not subject to any material restrictions on transfer as a result of applicable contractual provisions.

Net Income and Net Loss: For each Fiscal Year or other period, an amount equal to the Partnership's taxable income or loss for such Fiscal Year or period, determined in accordance with Code Section 703(a) (for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or loss) with the following adjustments:

(a)     Any income of the Partnership that is exempt from Federal income tax, and to the extent not otherwise taken into account in computing Net Income or Net Loss pursuant to this paragraph, shall be added to such taxable income or loss;

(b)     Any expenditures of the Partnership described in Code Section 705(a)(2)(B) or treated as Code Section 705(a)(2)(B) expenditures pursuant to Regulations Section 1.704-1(b)(2)(iv)(i), and to the extent not otherwise taken into account in computing Net Income or Net Loss pursuant to this paragraph, shall be subtracted from such taxable income or loss;

(c)     Any items which are Regulatory Allocations pursuant to the provisions of Section 9.3 (c) and Section 9.4 hereof shall not be taken into account in computing Net Income or Net Loss;

(d)     In the event that the Gross Asset Value of any Partnership asset is adjusted pursuant to subparagraph (b) or (c) of the definition of Gross Asset Value, the amount of such adjustment shall be treated as an item of gain (if the adjustment increases the Gross Asset Value of the asset) or an item of loss (if the adjustment decreases the Gross Asset Value of the asset) from the disposition of such asset and shall be taken into account for purposes of computing Net Incomes or Net Loss;

(e)     Gain or loss resulting from any disposition of Partnership property with respect to which gain or loss is recognized for U.S. federal income tax purposes shall be computed by reference to the Gross Asset Value of the property disposed of, notwithstanding that the adjusted tax basis of such property differs from its Gross Asset Value; and

(f)     To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Code Section 734(b) or Code Section 743(b) is required, pursuant to Regulations Section 1.704-1(b)(2)(iv)(m)(2) or (4), to be taken into account in determining Capital Accounts as a result of a distribution other than in liquidation of a Limited Partner's interest in the Partnership, the amount of such adjustment shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) from the disposition of such asset and shall be taken into account for purposes of computing Net Income or Net Loss.

(g)  If the Gross Asset Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of a Fiscal Year, depreciation shall be an amount that bears the same ratio to such beginning Gross Asset Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis, provided, however, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero, the depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the General Partner.

Non-Marketable Securities:  All Securities other than Marketable Securities.

Nonrecourse Deductions: As defined in Regulations Sections 1.704-2(b)(1) and 1.704-2(c).

Nonrecourse Liability:  As defined in Regulations Section 1.752-1(a)(2).

Original Agreement: The Limited Partnership Agreement of the Partnership dated as of June 18, 2013.

Partner:   The General Partner and each other Person listed on Annex A as a Limited Partner.

Partner Nonrecourse Debt: The same meaning as the term "partner nonrecourse debt" set forth in Regulations Section 1.704-2(b)(4).

Partner Nonrecourse Debt Minimum Gain:   An amount, with respect to each Partner Nonrecourse Debt, equal to the Partnership Minimum Gain that would result if the Limited Partner Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Regulations Section 1.704-2(i)(3).

Partner Nonrecourse Deductions: The same meaning as the term "partner nonrecourse deductions" set forth in Regulations Sections 1.704-2(i)(1) and 1.704-2(i)(2).

Partnership: Israeli VC Partners, LP

Partnership Expenses:  As defined in Section 6.1(a).

Partnership Minimum Gain: As defined in Sections 1.704-2(b)(2) and 1.704-2(d) of the Regulations.

Person:   Any individual, partnership, corporation, limited liability company, unincorporated organization or association, trust (including the trustees thereof, in their capacity as such) or other entity.

Portfolio Company: means any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative, association or other entity in which the Partnership has invested (other than a Temporary Investment).

**Preferred Return**: As defined in Section 3.2(a)(iii).

**Prime Rate**: The highest prime rate of interest quoted from time to time by The Wall Street Journal as the "base rate" on corporate loans at large money center commercial banks.

**Principal**: Andrew Intrater.

**Realized Investments**: At any date of determination, all Assets (or portions thereof) that have previously been sold or otherwise disposed of by the Partnership (solely to the extent of the portion sold or otherwise disposed of). For this purpose, a written-down investment shall be considered partially disposed of (without duplication) unless it is subsequently offset by a corresponding write-up.

**Register**: As defined in Section 7.1(b).

**Regulations**: The Treasury Regulations promulgated under the Code.

**Reserves**: The amount of proceeds that the General Partner determines in good faith is necessary to be maintained by the Partnership for the purpose of paying reasonably anticipated Partnership Expenses, liabilities and obligations of the Partnership regardless of whether such Partnership Expenses, liabilities and obligations are actual or contingent.

**Securities**: Securities of every kind and nature, including stock, notes, bonds, evidences of indebtedness, options to acquire any of the foregoing, and other business interests of every type, including interests in any Portfolio Company.

**Securities Act**: The U.S. Securities Act of 1933, as amended.

**Special Limited Partner**: Weft Global Ltd.

**Special Limited Partner Termination Right**: As defined in Section 5.3

**Subscription Agreement**: The subscription agreement executed by a Limited Partner to purchase an Interest in the Partnership.

**Tax Distribution**: With respect to the General Partner, for any calendar quarter (i) the Imputed Tax Rate multiplied by the excess of (a) the General Partner's share of the estimated net taxable income allocable to the General Partner's Carried Interest for such Fiscal Year calculated through such calendar quarter over (b) the General Partner's share of any net losses (for income tax purposes) of the Partnership that were not previously utilized in the calculation of the Tax Distributions for prior Fiscal Years minus (to the extent such losses are available to offset the General Partner's share of Partnership income for U.S. federal income tax purposes) (ii) all prior distributions (including distributions of Tax Distributions) for such Fiscal Year.

**Temporary Investments**: Any investment in (a) cash; (b) United States government and agency obligations maturing within one year; (c) commercial paper rated not lower than A-1 by Standard & Poor's Rating Services or its successors or P-1 by Moody's

Investor Services, Inc. or its successors with maturities of not more than six months; (d) interest-bearing deposits in banks having one of the ratings referred to in clause (c), maturing within one year; and (e) money market mutual funds that invest principally in investments described in one or more of the foregoing clauses (b), (c) or (d).

Temporary Investment Income:   All income earned by the Partnership on Temporary Investments, including any gains and net of any (a) losses realized upon the disposition of Temporary Investments and (b) amounts necessary to pay Partnership Expenses (to the extent the Limited Partners have not made Capital Contributions in respect of such Partnership Expenses).

Transfer: means, as a noun, any voluntary or involuntary transfer, sale, pledge, assignment, hypothecation or other disposition and, as a verb, to voluntarily or involuntarily transfer, sell, pledge, assign, hypothecate or otherwise dispose of; "Transferor" means a Person that transfers; and "Transferee" means a Person to whom a transfer is made.

United States:  The United States of America, its territories and possessions, any State of the United States and the District of Columbia.

Venture Business:   Acquiring early-to-late stage Venture Investments in information technology ("IT") in key geographies. **IT is defined in the following categories: (i) infrastructure including storage, networking, telecommunications, and infrastructure as a service, (ii) internet services, including marketplaces, e-commerce, and digital media, (iii) software and cloud services, including software, software as a service, and platform as a service, (iv) mobile, including mobile-focused application experiences, and enabling technologies, and (v) big data, including analytics, data driven content, and media and computing**.

Venture Investments:   Majority and minority investments, including but not limited to those in conjunction with tier 1 and tier 2 venture capital and private equity firms.

## ARTICLE II

### General Provisions

#### 2.1     Formation.

The Partnership has been formed as an exempted limited partnership under the provisions of the Act. To the extent reasonably necessary for the conduct of the Partnership's business, the General Partner shall take or cause to be taken all action required to register or qualify the Partnership under applicable federal, state and foreign laws and rules and regulations of applicable self-regulatory organizations, and to maintain such registrations, licenses, regulatory approvals and qualifications and memberships in effect for so long as required.

#### 2.2     Limited Partners.

Annex A attached hereto contains the name and address of each Limited Partner as of the date of this Agreement. Annex A shall be revised by the General Partner from time to time to reflect the admission or withdrawal of a Limited Partner in accordance with the terms of this Agreement and other modifications to or changes in the information set forth therein.

### 2.3 Name.

The Partnership shall conduct its activities under the name of "Israeli VC Partners, LP" The Partnership's business may be conducted under any other name or names as the General Partner may determine, which name or names shall be acceptable to each other Limited Partner; provided, that the name shall always contain the words "Limited Partnership" or the letters "LP." No value shall be placed upon the name or the goodwill attached thereto for the purpose of determining the fair value of any Limited Partner's Capital Account or Interest.

### 2.4 Term.

The existence of the Partnership shall continue until the tenth anniversary of the Effective Date; provided, however, that the General Partner may, with the prior written approval of the Special Limited Partner, extend the term of the Partnership for up to two (2) additional periods of one (1) year each.

### 2.5 Organizational Certificates and Other Filings.

Except as provided in Article VII, if requested by the General Partner, the Limited Partners shall promptly execute all certificates and other documents consistent with the terms of this Agreement necessary for the General Partner to accomplish all filing, recording, publishing and other acts as may be appropriate to comply with all requirements for (a) the formation and operation of a limited partnership under the laws of the Cayman Islands, (b) if the General Partner deems it advisable, the operation of the Partnership as an entity or partnership in which the Limited Partners have limited liability, in all jurisdictions where the Partnership proposes to operate and (c) all other filings required to be made by the Partnership.

### 2.6 Purpose.

The purpose of the Partnership is to (a) engage in the Venture Business, (b) engage in such other activities as the General Partner or Management Company deems necessary, advisable, convenient, incidental or ancillary to the foregoing, and (c) engage in any other lawful acts or activities consistent with the foregoing for which limited liability companies may be organized now or hereafter under the laws of the Cayman Islands.

### 2.7 Principal Place of Business; Other Places of Business.

The principal place of business of the Partnership will be located at such location as the General Partner may from time to time designate. The General Partner will promptly give written notice to the Limited Partners of any change in the Partnership's principal place of business.

### 2.8 Registered Office

The Partnership shall maintain a registered office at c/o Intertrust SPV (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands. The General Partner may at any time change the location of the Partnership's registered office and may establish additional offices.

2.9     Tax Classification of the Partnership.

It is intended that the Partnership be classified as a partnership for income tax purposes in the United States. The Partnership shall not file any election pursuant to Regulations Section 301.7701-3(c) to be treated as an entity other than a partnership. The Partnership shall not elect, pursuant to Code Section 761(a), to be excluded from the provisions of subchapter K of the Code.

ARTICLE III

Commitments, Contributions, Investments and Distributions

3.1     Commitments, Investments and Capital Contributions.

(a)     *Commitments.*     The Special Limited Partner has a Commitment of up to $50,000,000; provided that the aggregate Commitments of the Special Limited Partner to the Partnership and Russian VC Partners, LP shall not be in excess of $50,000,000. Additional Commitments may be accepted by the General Partner, with the prior consent of the Special Limited Partner.

(b)     *Capital Contributions.*     Each Limited Partner, agrees to make Capital Contributions, from time to time, pursuant to Drawdown Notices given by the General Partner in accordance with and pursuant to the terms of this Agreement. A "Drawdown Notice" is a written notice from the General Partner to the Limited Partners to make a Capital Contribution to the Partnership which shall state that such Capital Contribution is required: (A), during the Commitment Period, in connection with an anticipated purchase of Assets (in which case such notice shall also indicate the amount being requested, the anticipated closing date of such purchase, a description in reasonable detail of the nature of the Assets and the business to which they relate, the type of interest being purchased, a brief summary of the anticipated terms of any financing to be arranged in connection therewith and the identity of the investment to be purchased), or (B) to pay, or to reimburse the General Partner or the Management Company for their payment of, Partnership Expenses (including indemnity obligations under Section 4.4 hereof) in accordance with Section 6.1. Capital Contributions shall be made by the Limited Partners *pro rata* based upon their respective Commitments; provided that, except as explicitly provided herein, in no event shall any Limited Partner be required to make Capital Contributions in an amount greater than the unpaid Commitment of such Limited Partner as of such date. All Capital Contributions shall be denominated and payable in U.S. dollars within five (5) Business Days following the date of delivery of the Drawdown Notice relating to such Capital Contributions by wire transfer of immediately available funds to an account designated by the General Partner. No interest shall be paid to any Limited Partner on any Capital Contributions.

(c)　　*Temporary Investments*.　Capital Contributions made by each Limited Partner to fund the acquisition of an Asset may be held in Temporary Investments prior to the acquisition of such Asset.　The General Partner, in its sole discretion, may determine at any time to refund to the Limited Partners some or all of any prior Capital Contributions that have not been used for Partnership purposes (the "Unused Capital Contributions") *pro rata* to the amounts of such Capital Contributions made.　Any amount refunded pursuant to this Section 3.1(e) shall be treated for purposes of this Agreement as never having been contributed to the Partnership.

(d)　　*Withdrawals*.　Except as explicitly provided elsewhere herein, no Limited Partner shall have any right (a) to withdraw as a Limited Partner from the Partnership, (b) to withdraw from the Partnership all or any part of such Limited Partner's Capital Contributions, (c) to receive property other than cash in return for such Limited Partner's Capital Contributions or (d) to receive any distribution from the Partnership.

## 3.2　Distributions.

(a)　　*Investment Proceeds*.　The General Partner shall use reasonable efforts to cause the Partnership to distribute Investment Proceeds (net of Reserves) in respect of any Fiscal Quarter within 30 days following the end of such Fiscal Quarter.　Such Investment Proceeds attributable to any Asset shall initially be apportioned among the Partners, including the General Partner, in proportion to their Capital Contributions with respect to the Asset giving rise to the distribution.　The amount apportioned to the General Partner shall be distributed to the General Partner. Except as otherwise provided herein, the amount apportioned to the General Partner and the amount apportioned to each Limited Partner shall be distributed as follows:

(i)　　First, 100% to such Limited Partner until such Limited Partner has received an amount under this clause (i) equal to such Limited Partner's *pro rata* share (based on Commitments) of the aggregate Budget Payments to date to the extent such Budget Payments have not been reimbursed pursuant to this Section 3.2(a)(i);

(ii)　　Second, 100% to such Limited Partner until such Limited Partner has received full reimbursement of such Limited Partner's Capital Contributions directly attributable to (i) Realized Investments and (ii) Apportioned Expenses with respect to Realized Investments to the extent such expenses have not been reimbursed pursuant to this Section 3.2(a)(ii);

(iii)　　Third, 100% to such Limited Partner until such Limited Partner has received an amount under this clause (iii) adequate to provide a 7% annually compounded internal rate of return on all distributions made to such Limited Partner under clause (ii) above prior to the date of distribution ("Preferred Return");

(iv)　　Fourth, 100% to the General Partner until the General Partner has received an amount under this clause (iv) equal to 20% of the total distributions made pursuant to clause (iii) above, and to the General Partner attributable to such Limited Partner pursuant to this clause (iv);

(v)    <u>Thereafter</u>, 80% to such Limited Partner and 20% to the General Partner (such amounts attributable to the General Partner under clause (iv) and this clause (v), "<u>Carried Interest</u>").

(vi)    Notwithstanding anything in this Agreement to the contrary, the General Partner at any time may elect not to receive all or a portion of any cash distribution that otherwise would be made to it pursuant to Section 3.2(a)(iv) or 3.2(a)(v). Any amount that is not distributed to the General Partner pursuant to the preceding sentence shall, in the General Partner's sole discretion, either be retained by the Partnership on the General Partner's behalf or be distributed to the Partners (other than to the General Partner pursuant to Sections 3.2(a)(iv) and 3.2(a)(v)) in accordance with this Section 3.2(a) (as an advance against future distributions). If the General Partner so elects, then any or all subsequent cash distributions shall be made one hundred percent (100%) to the General Partner until the General Partner has received the amount of cash distributions that it would have received had it not elected to forgo cash distributions pursuant to the first sentence of this paragraph.

(vii)    Notwithstanding the foregoing, in no event shall the General Partner be distributed Carried Interest until the earlier of (A) March 31, 2016 and (B) an Event of Dissolution (the earlier of such dates, the "<u>Distribution Date</u>"). Such Carried Interest otherwise payable to the General Partner shall be held in a non-interest bearing escrow account until such Distribution Date, and all Carried Interest accrued but unpaid as of the Distribution Date shall be paid to the General Partner in one lump sum on the Distribution Date (or if the Distribution Date is not a Business Day, then on the next following Business Day).

(b)    *Fee Income.* Any Break-up Fees or Directors' Fees shall be deemed to reduce the Budget Payments.

(c)    *Temporary Investment Income.* Except as otherwise provided herein, the General Partner shall use reasonable efforts to distribute Temporary Investment Income on a quarterly basis. Such Temporary Investment Income shall be distributed by the General Partner among the Limited Partners, *pro rata*, based on their respective Capital Contributions with respect to the Partnership property or funds that produced such Temporary Investment Income.

### 3.3    Partial Dispositions.

Except as otherwise provided herein, in the case of a sale or other disposition of a portion of an Asset, such portion shall be treated as having been a separate Asset retained by the Partnership, and the Invested Capital with respect to such Asset which was sold or otherwise disposed of shall be treated as having been divided between the portion which was sold or otherwise disposed of and the portion retained by the Partnership. To the extent any Asset is subject to a recapitalization or a refinancing, the General Partner may, in its reasonable discretion, treat such recapitalization or refinancing as a partial disposition subject to the provisions of this Section 3.3.

## 3.4     Distributions of Marketable Securities.

(a)     *In General.* Prior to the termination of the Partnership, the General Partner may, in its sole discretion, after consultation with the Special Limited Partner, cause the Partnership to distribute Marketable Securities to the Partners. After the termination of the Partnership, Non-Marketable Securities and other assets may also be distributed to the Partners. Any distribution of Marketable Securities pursuant to this Article III shall be made in accordance with this Section 3.4 and shall be treated as Investment Proceeds for purposes of Section 3.2(a) hereof.

(b)     *Treated as Distribution at Fair Value.* For purposes of making distributions of Marketable Securities to the Partners in accordance with this Article III, and for all other purposes of this Agreement, the distribution shall be treated as if the Partnership had sold such Marketable Securities for cash in an amount equal to their Fair Value, as determined in accordance with Section 3.4(c) hereof, and distributed such cash to the Partners instead.

(c)     *Fair Value Defined.* The valuation of Securities and other assets and liabilities under this Agreement shall be at "Fair Value" as determined in good faith by the General Partner. Except as may be required under applicable Regulations, no value shall be placed on the goodwill or the name of the Partnership in determining the value of the Interest of any Partner or in any accounting among the Partners. The following criteria shall be used for determining the Fair Value of Securities and other assets of the Partnership:

(i)     Marketable Securities which are Freely Tradable:

(A)     If traded on one (1) or more securities exchanges or the Nasdaq National Market System, the value shall be deemed to be the average of the Securities' average closing prices on such exchange(s) or system for the five (5) trading days immediately preceding the distribution date.

(B)     If actively traded over-the-counter (other than on the Nasdaq National Market System), the value shall be deemed to be the average of the closing bid and asked prices of such Securities for the five (5) trading days immediately preceding the distribution date.

(C)     If there is no active public market, the value shall be the Fair Value thereof, taking into consideration the purchase price of the Securities, developments concerning the investee Portfolio Company subsequent to the acquisition of the Securities, any financial data and projections of the investee Portfolio Company provided to the General Partner, and such other factor or factors as the General Partner may deem relevant.

(D)     Marketable Securities which are not Freely Tradable shall be valued by making an appropriate adjustment from the value determined

under clauses (A), (B) or (C) above to reflect the effect of the restrictions on transfer.

       (E)     An appropriate adjustment may be made for any control premiums associated with the Securities.

       (F)     any other Partnership asset shall be valued at the market value as of the valuation date as reasonably determined by the General Partner.

If the General Partner in good faith determines that, because of special circumstances, the valuation methods set forth in this Section 3.4(c) do not fairly determine the value of a Security or other asset of the Partnership, the General Partner shall make such adjustments or use such alternative valuation method as it deems appropriate.

       (d)     *Consent to Valuation.*  After any determination of value by the General Partner in accordance with Section 3.4(c) hereof (other than Sections 3.4(c)(i)(A) or 3.4(c)(i)(B)) for purposes of making distributions of Marketable Securities to the Partners, the General Partner shall send to the Limited Partners a written statement setting forth in reasonable detail the value of the Securities (or other asset or liability) for which a determination is being made, and the Special Limited Partner shall have ten (10) Business Days after the transmittal of such statement to make known in writing any objection to such valuation, and in the case of such an objection, such Special Limited Partner shall indicate briefly the reasons therefor.  If the Special Limited Partner shall not have objected in writing to such valuation within such ten (10) Business Day' period, the Limited Partners shall be deemed to have approved such valuation. Within five (5) Business Days of receipt of such a written objection, the General Partner shall either submit a new determination in place of the disapproved valuation or request a meeting with the Special Limited Partner to discuss a mutually satisfactory valuation.  If within an additional period of five (5) Business Days, a substitute valuation has not been agreed to by the General Partner and the Special Limited Partner, then at the cost and expense of the Partnership, the General Partner shall submit the dispute between the General Partner and such Special Limited Partner to a reputable investment banking firm selected by the General Partner and acceptable to the Special Limited Partner (such acceptance not to be unreasonably withheld or delayed) for resolution as soon as practicable.  The determination of value by such investment banking firm shall be final and conclusive and binding on all Limited Partners.

       (e)     *Distribution of Cash and Marketable Securities.* Distributions consisting of both cash and Marketable Securities shall be made to each Limited Partner receiving such distributions in the same proportions of cash and such Marketable Securities, to the extent practicable, as determined by the General Partner in its sole discretion.

       (f)     *Other Conditions and Restrictions.*  Marketable Securities distributed in kind shall be subject to such conditions and restrictions as the General Partner shall, in its sole discretion, determine are legally required or appropriate.  Whenever classes of Securities are distributed in kind (with or without cash), each Limited Partner shall receive its *pro rata* portion of each class of Securities distributed in kind and cash (if cash is distributed) in distributions under Section 3.2(a) hereof; provided, however, if any Limited Partner would

receive an amount of any Security that would cause such Limited Partner to own or control in excess of the amount of such Security that it may legally own or control, then, upon receipt of a notice to such effect from a Limited Partner, the General Partner shall, in its sole discretion, vary the method of distribution (including arranging for such Security to be distributed to a trust, custodian or other third party to be liquidated for the benefit of such Limited Partner, with all costs borne by such Limited Partner), so as to avoid such excessive ownership or control.

### 3.5    Tax Distributions.

Notwithstanding Section 3.2, as soon as reasonably practicable after the end of each calendar quarter, the General Partner shall determine the Tax Distribution for the General Partner in respect of such quarter. Upon such determination, the Partnership shall distribute the General Partner's Tax Distribution (if any) to the General Partner. All such distributions shall have priority over any distributions pursuant to Section 3.2.

(a)    *Determination of Tax Distribution.* Any determination of the amount of a Tax Distribution permitted to be made pursuant to this Section 3.5 shall be made by the General Partner in its reasonable discretion.

(b)    *Effect of Tax Distributions.* Any Tax Distributions made pursuant to this Section 3.5 shall be considered an advance against the next distribution payable to the General Partner pursuant to Section 3.2(a)(iv) and 3.2(a)(v) hereof and shall reduce such distributions.

### 3.6    Write-Downs and Write-Ups.

(a)    *Write-Downs.* If the General Partner shall determine in its sole discretion that as of any date of distribution under Section 3.2(a) there has been a permanent decline in the Fair Value of any Asset, then solely for purposes of determining the apportionment of distributions among the Partners, the General Partner shall write-down the value of such Asset in the Partnership's financial records by the amount of such decline not previously taken into account in making such a downward adjustment; and

(b)    *Write-Ups.* If the General Partner shall determine in its sole discretion that as of any date of distribution under Section 3.2(a) there has been a significant reversal or mitigation of circumstances previously giving rise to a write-down in Fair Value of such Asset, then, solely for purposes of determining the apportionment of distributions among the Partners, the General Partner shall write-up the value of such Asset by any amount (as determined in its sole discretion) not previously taken into account in making such an upward adjustment. In no event shall any Asset be written-up by an amount exceeding the cumulative write-down attributable to such Asset.

(c)    *Worthless Securities.* In the event that the General Partner shall determine in its sole discretion that any Asset is worthless, such Asset shall be written down to zero and the Partnership shall be deemed for purposes of this Agreement to have sold such Asset for an amount equal to zero. Such Asset shall thereafter be treated as a Realized Investment and shall not be subject to Section 3.6(a) hereof.

### 3.7 Limitation on Distributions.

Notwithstanding anything to the contrary contained herein, the Partnership, and the General Partner on behalf of the Partnership, shall not make a distribution to any Partner on account of its Interest if such distribution would violate the Act or other applicable law.

### 3.8 Reinvestment.

(a)     The General Partner may elect to either (i) withhold distribution of, or (ii) restore to a Partner's Commitment and thereafter recall for reinvestment from such Partner, any Investment Proceeds distributable or previously distributed, in amounts in the aggregate sufficient to effect such investments in Assets in respect of the principal amount of a Bridge Financing that is recouped by the Partnership within thirteen (13) months of the Partnership's investment in such Bridge Financing.

(b)     Without limiting Section 3.8(a), the Partnership may in any event reinvest Investment Proceeds (including, without limitation, any Investment Proceeds that represent a return of Capital Contributions made to pay the Budget Payments) provided that the Partnership's cumulative investments in Assets (other than Bridge Financings and Temporary Investments) shall not exceed one hundred twenty five percent (125%) of the aggregate Commitments of all Partners. In connection therewith, the General Partner may, in its sole discretion, elect to either (i) withhold distribution of, or (ii) restore to a Partner's Commitment and thereafter recall for reinvestment from such Partner, any Investment Proceeds distributable or previously distributed, in amounts in the aggregate sufficient to effect such investments in Assets.

## ARTICLE IV

## Management

### 4.1 Investment Guidelines.

The Partnership shall engage in the Venture Business in accordance with and pursuant to the terms of this Agreement. The Partnership intends to invest up to $50,000,000 in Israel in the initial twenty-four months of the Term.

### 4.2 Powers of the General Partner; Investment Committee.

(a)     *General.* Subject to the terms of this Agreement, the management, operation, policy and conduct of the business of the Partnership shall be vested exclusively in the General Partner, which shall have the power by itself and shall be authorized and empowered on behalf and in the name of the Partnership to carry out any and all of the objects and purposes of the Partnership and to perform all acts and enter into and perform all contracts and other undertakings that it may in its sole discretion deem necessary or advisable or incidental thereto, all in accordance with and subject to the other terms of this Agreement. All matters concerning (A) the allocation and distribution of Net Income, Net Loss, Carried Interest, Partnership Expenses, and return of capital among the Partners, including taxes thereon and (B) accounting procedures and determinations, and other determinations not specifically and

expressly provided for by the terms of this Agreement, shall be determined in good faith by the General Partner in a manner consistent with the general standards of this Agreement.

(b) *Management Company.* The Limited Partners hereby acknowledge that the Partnership has appointed the Management Company to act as the management company of the Partnership pursuant to the terms of the Investment Management Agreement. The Management Company shall be primarily responsible for identifying, evaluating, structuring and recommending to the General Partner the investments to be made by the Partnership and the disposition of those investments and for providing day-to-day managerial and administrative services to the Partnership.

(c) *Authorized Acts.* In furtherance of the Partnership's business and without limiting the powers of the General Partner in any respect, but subject to all other provisions of this Agreement, the General Partner, on behalf of the Partnership, is hereby authorized and empowered:

(i) To direct the formulation of investment policies and strategies for the Partnership;

(ii) To investigate, select, negotiate, structure, purchase, invest in, hold, pledge, exchange or otherwise Transfer Assets and Temporary Investments;

(iii) To monitor the performance of Assets and Temporary Investments, to designate members of the board of directors of Portfolio Companies or to obtain equivalent representation, to exercise all rights, powers, privileges and other incidents of ownership or possession with respect to Assets and Temporary Investments and to take whatever action, including steps to influence key management decisions of Portfolio Companies and voting shares of capital stock or other ownership interests issued by such Portfolio Companies as may be necessary or advisable as determined by the General Partner in its sole discretion;

(iv) To form subsidiaries in connection with the Partnership's business;

(v) To enter into any kind of activity and to enter into, perform and carry out contracts of any kind necessary to, in connection with, or incidental to the accomplishment of the purposes of the Partnership, including the Investment Management Agreement and Subscription Agreements with Limited Partners;

(vi) To open, maintain and close bank accounts and draw checks or other orders for the payment of money and open, maintain and close brokerage, money market fund and similar accounts;

(vii) To employ, engage and dismiss (with or without cause), on behalf of the Partnership, any Person, including an Affiliate of any Partner, to perform services for, or furnish goods to, the Partnership;

(viii) To hire, for usual and customary payments and expenses, consultants, brokers, attorneys, accountants and such other agents for the Partnership as it may

deem necessary or advisable, and authorize any such agent to act for and on behalf of the Partnership;

(ix)    To purchase insurance policies on behalf of the General Partner and the Partnership, including for director and officer liability and other liabilities;

(x)    To pay all fees and expenses of the Partnership and the General Partner in accordance with Section 4.4 hereof;

(xi)    Subject to Section 4.2(d) hereof, to cause the Partnership to borrow money from, or guarantee the obligations of, any Person for any purpose reasonably related to the business of the Partnership, including, for the purpose of paying Partnership Expenses;

(xii)    to cause the Partnership to guarantee loans or provide interim financing (a "Bridge Financing") but only to the extent that the General Partner reasonably believes that (1) any such Bridge Financing is necessary to preserve, enhance, facilitate or make available an Asset and (2) the General Partner reasonably believes that the Portfolio Company in which the Bridge Financing is made will be able to, and the General Partner intends to cause such Portfolio Company to, repay or refinance the Bridge Financing within thirteen (13) months after the Bridge Financing is made (such Bridge Financing investment decisions to be made with the prior approval of the Special Limited Partner to the extent required by Section 5.2 hereof); and

(xiii)    To take any and all other actions which are determined by the General Partner to be necessary, convenient or incidental to the conducting of the Partnership's business.

(d)    *Investment Committee.*

(i)    Generally. All investment decisions with respect to potential Assets shall be delegated to the Investment Committee in the sole discretion of the General Partner. The Investment Committee shall be comprised of between four and five individuals selected by the General Partner. The function of the Investment Committee shall be to assist in due diligence activities, provide industry and market information and analyses, otherwise assist in evaluating and deciding on investment opportunities, serve as board or advisory board members of Portfolio Companies, and such other activities as may reasonably be requested from time to time by the General Partner or the Management Company. The Investment Committee initially shall consist of Mohsen Moazami, Jason Epstein, Yaron Eitan and the Principal, which the Special Limited Partner hereby approves.

(ii)    Additional Members; Observer Rights. From time to time, upon the unanimous consent of the then current members and the approval of the Special Limited Partner, the Investment Committee may appoint additional members of the Investment Committee and may also provide observer rights to certain individuals or entities. For the avoidance of doubt, such observer rights shall entitle an observer to review all investment information that would otherwise be provided to a member of the Investment Committee but

shall not include any decision making authority or voting rights. Initially, Alexander Turkot shall be invited to be observers on the investment committee.

(iii)     <u>Meetings</u>.  The Special Limited Partner and either (i) the Investment Committee or (ii) the Principal, shall meet no less than quarterly to review prospective and current Assets.

(e)     *Investment Authority*.  Investment authority shall be allocated between the Investment Committee and the Special Limited Partner as follows:

(i)     <u>Investments in Assets of up to $5,000,000</u>.  Subject to clause 4.2 (f) below, the decision to acquire such potential Assets shall be made in the sole discretion of the Investment Committee, by a simple majority.

(ii)     <u>Investments in Assets of greater than $5,000,000.</u>  The Investment Committee shall present to the Special Limited Partner the results of independent technical due diligence and investment materials. Within twenty (20) days of presenting the Special Limited Partner with such materials, the Special Limited Partner may elect to veto the acquisition of such potential Asset. If the Special Limited Partner does not veto the acquisition of an Asset within twenty (20) days, such acquisition shall be deemed to be approved.

(f) *Additional Approval Limitation*. At all times, at least eighty percent (80%) of the Invested Capital shall be in large investments that individually are equal to or greater than $15,000,000, while no more than twenty percent (20%) of all Invested Capital shall be in small investments that individually are less than $15,000,000.

(g)     *Borrowings and Guarantees*.  The General Partner shall not be permitted to cause the Partnership to borrow money, or to guarantee loans or other extensions of credit except for (i) the purpose of funding Partnership Expenses, or (ii) such other purposes approved by the Special Limited Partner, <u>provided</u>, that any such borrowings from the General Partner or its Affiliates shall be on terms at least as favorable in all material respects to the Partnership as those available from unaffiliated third parties.

(h)     *Compliance with Law; Notice of Management Company Changes*.  The General Partner shall use its commercially reasonable efforts to cause the Partnership to comply with all applicable U.S. and non-U.S. statutes, laws, rules, regulations in all material respects with respect to the conduct of the Partnership's business and affairs and will promptly notify each Limited Partner in the event that it becomes aware of any material violation or non-compliance with any of the same or the commencement of any material action, suit, proceeding or investigation involving the General Partner whether civil, administrative or criminal in nature of which the General Partner becomes aware.  In addition, the General Partner will promptly notify each other Limited Partner upon the occurrence of any change in control of the Management Company or in the identity of any of its key executives or principals.

4.3     <u>Limitation on Liability.</u>

(a)    To the fullest extent permitted by law, none of the General Partner, the Management Company, nor any of their respective, direct or indirect, Affiliates, agents, officers, directors, stockholders, members, employees and partners and any Person who serves at the request of the General Partner or the Management Company on behalf of the Partnership as an officer, director, manager, employee or agent of any other entities (each, an "Indemnitee") shall be liable, in damages or otherwise, to the Partnership, any Partner or any of their Affiliates for (i) any act or omission taken or suffered by any of the Indemnitees in connection with the conduct of the affairs of the Partnership or otherwise in connection with this Agreement or the matters contemplated herein (including acting as officer, director, manager, employee or agent of any other entities), unless such act or omission resulted from fraud, bad faith, willful misconduct, or gross negligence (as defined under the laws of Delaware), and except that nothing herein shall constitute a waiver or limitation of any rights which a Limited Partner or the Partnership may have under applicable securities laws or other laws and which may not be waived or (ii) any mistake, negligence, dishonesty or bad faith (as defined under the laws of the State of New York) of any broker or other agent of the Partnership selected and monitored by the General Partner with reasonable care.

(b)    To the extent that, at law or in equity, any Indemnitee has duties (including fiduciary duties) and liabilities relating thereto to the Partnership or another Partner or any of their Affiliates, the Indemnitee shall not be liable to the Partnership or to the Partner or such Affiliate for its good faith reliance on the provisions of this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of any Indemnitee otherwise existing at law or in equity, are agreed by the Partners to modify to that extent such other duties and liabilities of the Indemnitee.

(c)    An Indemnitee may consult with experts, including legal counsels and accountants, selected by it and any act or omission suffered or taken by it on behalf of the Partnership or in furtherance of the interests of the Partnership in good faith reasonable reliance upon and in accordance with the advice of such experts shall be full justification for any such act or omission, and the Indemnitee shall be fully protected in so acting or omitting to act; provided, such experts were selected and monitored with reasonable care.

### 4.4    Indemnification.

(a)    To the fullest extent permitted by applicable law, the Partnership shall and does hereby agree to indemnify and hold harmless and pay all judgments and claims against any Indemnitees, from and against any loss or damage incurred by them or by the Partnership for any act or omission taken or suffered by ay of the Indemnitees in connection with the conduct of the affairs of the Partnership or otherwise in connection with this Agreement or the matters contemplated herein (including acting as officer, director, manager, employee or agent of any other entities), including costs and reasonable attorneys' fees and any amount expended in the settlement of any claims or loss or damage, unless such act or omission resulted from fraud, bad faith, willful misconduct, or gross negligence (as defined under the laws of Delaware). The provisions set forth in this Section 4.4 shall survive the termination of the Partnership and this Agreement. Expenses reasonably incurred by an Indemnitee in defense or settlement of any claim that may be subject to a right of indemnification hereunder shall be advanced by the Partnership prior to the final disposition thereof, provided that that such

Indemnitee shall repay such amount if it shall ultimately be determined that the Indemnitee is not entitled to indemnification as provided herein.

(b)     Except as otherwise provided herein, the satisfaction of any indemnification obligation pursuant to Section 4.4(a) hereof shall be from and limited to Partnership assets.  To the extent the Partnership's assets are insufficient to satisfy any such indemnification obligation, each Limited Partner shall be obligated to return any or all amounts distributed to it in order to fund any deficiency in the Partnership's indemnity obligations hereunder to the extent provided in Section 5.4 hereof.

(c)     The General Partner is hereby authorized to cause the Partnership to indemnify and hold harmless any Indemnitee or other Person, in each case pursuant to a separate indemnification agreement, to the extent such Indemnitee or other Person is not a party to this Agreement as the General Partner considers to be necessary or desirable to give full effect to the provisions of this Section 4.4. It is the express intention of the parties to this Agreement that the provisions of this Section 4.4 for the indemnification of Indemnitees may be relied upon by such Indemnitees and may be enforced by such Indemnitees (or by the General Partner on behalf of any such Indemnitees; provided that the General Partner shall not have any obligation to so act for or on behalf of any such Indemnified Party) against the Partnership pursuant to this Agreement or pursuant to a separate indemnification agreement, as if such Indemnitees were parties to this Agreement.

(d)     If the Partnership is obligated to pay any amount to a governmental agency or any other Person (or otherwise makes a payment) because of a Partner's status or otherwise specifically attributable to a Partner, then such Partner (the "Indemnifying Partner") shall indemnify the Partnership in full for the entire amount paid (including any interest, penalties and expenses associated with such payment).  At the option of the General Partner, the amount to be indemnified may be charged against the Capital Account of the Indemnifying Partner, and, either:

(i)     promptly upon notification of an obligation to indemnify the Partnership, the Indemnifying Partner shall make a cash payment to the Partnership equal to the full amount to be indemnified (and the amount paid shall be added to the Indemnifying Partner's Capital Account), or

(ii)     the Partnership shall reduce subsequent distributions which would otherwise be made to the Indemnifying Partner until the Partnership has recovered the amount to be indemnified (provided, however, that the amount of such reduction shall be deemed to have been distributed for all purposes of this Agreement, but such deemed distribution shall not further reduce the Indemnifying Partner's Capital Account).

The provisions of this Section 4.4(d)(ii) shall not apply to any withholding taxes, as to which the provisions set forth in Section 7.5 hereof shall be exclusive.

4.5     Break-up Fees and Directors' Fees.

The Management Company and or one or more of its Affiliates shall have the right to contract for and receive Break-up Fees and Directors' Fees from any Person in connection with the activities of the Partnership which shall reduce the Budget Payment pursuant to Section 3.2(b). Any compensation that is paid in the form of an option shall, for purposes of this Section 4.5 be deemed to have been received on the date such option or other right is exercised and the amount of such compensation shall be the excess of the value of the property received upon such exercise over the amount paid to exercise such option or other right (plus any amount paid to acquire such option or other right).

### 4.6   Co-Investment.

During the Venture Period, where appropriate and feasible, as determined by the General Partner in its sole discretion, the General Partner may offer available co-investment opportunities in Assets to one or more Limited Partners on such terms and conditions as shall be determined by the General Partner. Any amounts contributed by a Limited Partner in respect of a co-investment opportunity shall not reduce such Limited Partner's Commitment.

### ARTICLE V

### The Limited Partners

### 5.1   Management.

(a)   Except as expressly provided in this Agreement, no Partner, other than the General Partner, shall have the right or power to participate in the management or affairs of the Partnership, nor shall any Partner, other than the General Partner, have the power to sign for or bind the Partnership. The exercise by a Limited Partner of any right conferred herein shall not be construed to constitute participation by the Limited Partner in the control of the business of the Partnership.

(b)   A Limited Partner may, upon notice to the General Partner, elect to hold its Interest as a non-voting Interest, in which case the Limited Partner shall be deemed to have given its consent in all instances where consent by the Limited Partner is required under this Agreement. Except as provided in this Section 5.1, an Interest held as a non-voting Interest shall be identical in all regards to all other Interests held by Limited Partners. Any such election shall be irrevocable and shall bind the assignees of such Limited Partner's Interest.

### 5.2   Approval Rights of the Special Limited Partner.

None of the following actions shall be taken by the Partnership without the prior approval of the Special Limited Partner:

(i)   Acquisition of any particular Asset, or providing a Bridge Financing, in each case which requires Capital Contributions of more than $5,000,000.

(ii)   Determining the amount of each Budget Payment.

(iii)    Sale or other dispositions of any Asset for consideration less than the capital invested to acquire such Asset.

(iv)    Changing the name of the Partnership.

(v)    Commencement of any lawsuit or cause of action by the Partnership against any Person other than any Limited Partner or any Affiliate of any Limited Partner or any of their respective directors, officers, employees, representatives or agents or any Person acting in concert with any of the foregoing.

(vi)    Any press releases or public communications naming the Limited Partners and/or their Affiliates or partners unless otherwise required by applicable law.

### 5.3    Special Limited Partner Termination Right.

(a)    The Special Limited Partner may elect to terminate the Commitment Period (the "Special Limited Partner Termination Right") at any point during the term upon thirty (30) days prior written notice.

(b)    If the Special Limited Partner Termination Right is exercised at any point on or prior to the eighteen (18) month anniversary of the Effective Date of this Agreement subject to Section 5.3(d) hereof, the Partnership shall be wound up and dissolved pursuant to Section 8.3.

(c)    For the avoidance of doubt, in the event that the Commitment Period is terminated by the Special Limited Partner pursuant to this Section 5.3, the Special Limited Partner shall not be required to contribute any additional amounts to the Partnership other than Partnership Expenses (including pursuant to 4.4(b)) and Section 5.4.

(d)    Upon the exercise of the Special Limited Partner Termination Right pursuant to Section 5.3(a), the Special Limited Partner may remove the General Partner and appoint a replacement general partner. Upon such election, (i) the General Partner shall thereupon become, without any further action being required of any Person, a Limited Partner and shall cease being the general partner of the Partnership, (ii) the replacement general partner of the Partnership shall promptly prepare and file or cause to be filed, with the assistance of the General Partner if and to the extent reasonably requested, an amendment to the Certificate, and shall prepare and execute an amendment to this Agreement (A) reflecting the withdrawal of the General Partner as the general partner of the Partnership and (B) reflecting the admission of the replacement general partner as a general partner of the Partnership (iii) subject to the last sentence of this Section 5.3(d) the General Partner which has been replaced shall be entitled to receive all distributions that otherwise would have been distributable to it pursuant to Article III, as if the General Partner had not been removed as the general partner of the Partnership, but with respect only to Assets owned by the Partnership on or before the effective date of the election to remove the General Partner and without regard to Assets acquired, or fees and expenses related thereto incurred, thereafter, (iv) the General Partner and its Affiliates shall continue to be Indemnified Parties and to be entitled to indemnification hereunder, but only to the extent provided in Section 4.4 and only with respect to damages relating to Assets acquired prior to the removal of the General Partner or damages arising out of, or relating to their activities during, the period prior to

the removal of the General Partner as the general partner of the Partnership, (v) the obligation of the General Partner under Section 8.4 shall be unaffected except that Section 8.4 shall be applied to the General Partner (and all calculations thereunder shall be made) as though the only Assets and Partnership Expenses of the Partnership were those acquired and incurred prior to the removal of the General Partner, (vi) subject to clause (i) of this sentence, the General Partner shall not be required to make any Capital Contributions to the Partnership after the effective date of such election, and (vii) for all other purposes under this Agreement, the replacement general partner shall be deemed to be the "General Partner" hereunder and shall be deemed to be admitted as the general partner of the Partnership effective immediately prior to the removal of the General Partner, such replacement general partner shall continue the business of the Partnership and the Partnership shall not be dissolved except in accordance with Article VIII. Following any removal of the General Partner pursuant to clause (a) in the first sentence of this Section 5.3(d), any subsequent distributions of Carried Interest attributable to Assets owned by the Partnership on or before the effective date of the removal of the General Partner, excluding distributions relating to any Asset that was disposed of on or before such date, shall be reduced by 20% (the "Incentive Carried Interest"). The Incentive Carried Interest shall be distributed to the replacement general partner.

### 5.4    Liabilities of the Limited Partners.

(a)    Except as provided by the Act or other applicable law and subject to the obligations to make Capital Contributions pursuant to Article III and as otherwise expressly set forth in this Agreement, the Limited Partners shall not have any personal liability whatsoever in their capacity as Limited Partners, whether to the Partnership, to other Limited Partners or the Management Company, or to the creditors of the Partnership, for the debts, liabilities, contracts, or other obligations of the Partnership or for any losses of the Partnership. Each of the Limited Partners acknowledges that its Capital Contributions are subject to the claims of any and all creditors of the Partnership to the extent provided by the Act and other applicable law.

(b)    (i)    Except and unless as required by the Act, other applicable law or as otherwise expressly set forth herein, no Limited Partner shall be required to repay to the Partnership, any Limited Partner or any creditor of the Partnership all or any part of the distributions made to such Limited Partner pursuant hereto.

(ii)    If, notwithstanding anything to the contrary contained herein, it is determined under applicable law that any Limited Partner has received a distribution which is required to be returned to or for the account of the Partnership or Partnership creditors, then the obligation under applicable law of any Limited Partner to return all or any part of a distribution made to such Limited Partner shall be the obligation of such Limited Partner and not of any other Limited Partner.

(iii)    Any amount returned by a Limited Partner pursuant to this Section 5.4 shall be treated as a Capital Contribution.

The provisions of this Section 5.4 shall not affect the obligations of any Limited Partner under the Act or other applicable law.

## 5.5 Partners and Management Company's Outside Activities.

A Partner shall be entitled to and may have business interests and engage in activities in addition to those relating to the Partnership, including business interests and activities in direct competition with the Partnership. Except as expressly provided in this Agreement, neither the Partnership, any other Partner nor any other Person shall have any rights by virtue of this Agreement in any business ventures of any other Partner. The General Partner and the Management Company shall devote their respective time and attention to the Partnership as may be reasonably necessary or appropriate to manage the affairs of the Partnership.

## 5.6 ERISA Representations.

Each Limited Partner represents that it is not (a) an "employee benefit plan" that is subject to the provisions of Title I of ERISA; (b) a "plan" that is not subject to the provisions of Title I of ERISA, but that is subject to the prohibited transaction provisions of Section 4975 of the Code, such as individual retirement accounts and certain retirement plans for self-employed individuals; or (c) a pooled investment fund whose assets are treated as "plan assets" under Section 3(42) of ERISA and any regulations promulgated thereunder because "employee benefit plans" or "plans" hold 25% or more of any class of equity interest in such pooled investment fund. Each Limited Partner agrees to notify the General Partner promptly in writing if there is any change in the percentage of the Investor's assets that are treated as "plan assets" for the purpose of Section 3(42) of ERISA and any regulations promulgated thereunder.

## 5.7 Additional Limited Partners.

(a)     There shall be no new Limited Partners admitted to the Partnership or Transfers of Limited Partner's Interest without the prior written consent of the Special Limited Partner. Notwithstanding the forgoing, a Limited Partner may Transfer its Limited Partner's Interest to an Affiliate subject to the consent of the General Partner, such consent not to be unreasonably withheld or delayed (it being understood that a Limited Partner effecting such a Transfer shall thereafter remain liable for its obligations to make Capital Contributions, unless released therefrom by the General Partner in its sole and absolute discretion). Any purported Transfer by a Limited Partner of all or any part of its Interest without the satisfaction of the other requirements of this Section 5.7 shall be null and void.

(b)     Any Transfer, in whole or in part, of a Limited Partner's Interest contemplated under paragraph (a) above must be documented in writing and such documentation (i) shall be in a form reasonably acceptable to the General Partner, (ii) have terms that are not in contravention of any of the provisions of this Agreement or of applicable law, including any rule or regulation, and (iii) be duly executed by the Transferor and Transferee of such Interest. Each Transferor agrees that it shall pay all reasonable expenses, including attorneys' fees, incurred by the Partnership or the General Partner in connection with a Transfer of its Interest, except to the extent that the Transferee thereof agrees to bear such expenses. In addition, the Transferee shall have executed such documentation as the General Partner may reasonably require to acknowledge the obligation of the Transferee to make Capital Contributions that would otherwise be required to have been made by the Transferor under this Agreement and

all such other instruments as shall be reasonably required by the General Partner to signify such Transferee's agreement to be bound by all provisions of this Agreement and all other documents, including a Subscription Agreement, reasonably required by the General Partner to effect the admission of the Transferee as a Limited Partner. By execution of this Agreement each Limited Partner consents and agrees that any Transferee may be admitted as a substituted Limited Partner and this Agreement may be amended accordingly by the General Partner through the exercise of the power of attorney granted under Section 10.2 hereof, without the necessity of any further action by, or consent of, the Limited Partners.

        (c)      Notwithstanding anything to the contrary contained herein, the Partnership and the General Partner shall be entitled to treat the Transferor of a Limited Partner's Interest as the absolute owner thereof in all respects, and the Partnership shall incur no liability for allocations of Net Income, Net Losses, other items or distributions, or transmittal of reports and notices required to be given to Limited Partners hereunder which are made in good faith to such Transferor until (i) such time as the written instrument of the Transfer has been physically received by the Partnership; (ii) compliance with this Section 5.7 has taken place; (iii) the assignment in the form required by Section 5.7(b) hereof has been recorded on the Partnership's books and (iv) the date upon which the Transfer was to take place has passed. The effective date of the Transfer of an Interest shall be the first day of the month following the day on which the last of clauses (i) through (iv) of this Section 5.7(c) occurs or at such earlier time as the General Partner determines in its reasonable discretion.

        (d)      Notwithstanding anything to the contrary contained herein, no Transfer of any Limited Partner's Interest may be made if, following the proposed Transfer, the Partnership would be required to register as an investment company under, or would be in violation of, the Investment Company Act or any rules or regulations promulgated thereunder, or require the Partnership, the General Partner, the Management Company or any Affiliate thereof to register as an investment adviser under the Advisers Act.

        (e)      Notwithstanding anything to the contrary contained herein, no Transfer of any Limited Partner's Interest may be made unless the General Partner, if so requested, shall have received advice of such Limited Partner's internal counsel or other counsel satisfactory to the General Partner (or waived such requirement) that the effect of such Transfer would not (i) result in the Partnership's assets being considered "plan assets" within the meaning of ERISA or any regulations proposed or promulgated thereunder, (ii) result in a violation of the Securities Act or any comparable state law, (iii) require the Partnership to register as an investment company under the Investment Company Act, (iv) require the Partnership, the General Partner, the Management Company or any Affiliate thereof to register as an investment adviser under the Advisers Act, (v) result in a violation of any law, rule or regulation by the Limited Partner, the Partnership, the General Partner, the Management Company, their respective officers, directors, employees, shareholders, partners, managers, members or any Affiliate thereof, (vi) cause the Partnership to terminate for Federal income tax purposes, (vii) cause the Partnership to be treated as an association taxable as a corporation for Federal income tax purposes, or (vii) cause the Partnership to be treated as a "publicly traded partnership" as such term is defined in Code Section 7704(b).

## ARTICLE VI

### Expenses and Fees

#### 6.1 Partnership Expenses.

(a)    Except as otherwise provided herein, the Partnership, in the sole discretion of the General Partner, shall pay or reimburse the General Partner, the Management Company and their respective Affiliates and their respective agents, officers, directors, Limited Partners, employees and partners for any and all expenses, costs and liabilities incurred in good faith by them in the conduct of the business of the Partnership in accordance with the provisions hereof (the "Partnership Expenses"), including by way of example and not limitation:

(i)    the Budget Payments;

(ii)    Expenses, costs and liabilities incurred in connection with (i) the organization of the Partnership, the General Partner, the Management Company and their respective Affiliates and subsidiaries of the Partnership and (ii) the negotiation, execution and delivery of this Agreement, the Investment Management Agreement and any related or similar documents, including any related legal and accounting fees and expenses, travel expenses, printing cost, filing fees and expenses;

(iii)    Expenses, costs and liabilities incurred in connection with the operation of the Partnership and its subsidiaries and their respective Assets and the performance by the General Partner, the Management Company, the Partnership and their respective Affiliates of their respective obligations under this Agreement and the Investment Management Agreement, including:  (i) all expenses, costs and liabilities incurred in connection with the evaluation, making, sale, proposed sale, other disposition or valuation of actual or proposed Assets and Temporary Investments for the Partnership, whether or not consummated (including private placement fees, sales commissions, appraisal fees, taxes, brokerage fees, underwriting commissions and due diligence in connection therewith), including legal, accounting, audit and other expenses (to the extent not subject to reimbursement); (ii) costs and liabilities incurred in connection with litigation or other extraordinary events, D&O liability and other insurance and indemnity expenses; (iii) all taxes, fees and other governmental charges payable by the Partnership, expenses incidental to the Transfer, servicing and accounting for the Partnership's cash and Securities; (iv) communications expenses; (v) all expenses and costs associated with meetings of the Limited Partners; (vi) all expenses and costs of subsidiaries or other affiliated entities created to facilitate investment by the Partnership which otherwise would be incurred in connection with any Assets or Temporary Investments; (vii) brokerage commissions, custodial expenses, appraisal fees and other investment costs actually incurred in connection with actual or proposed investments; (viii) expenses of liquidating the Partnership and any subsidiaries; (ix) any and all out-of-pocket expenses for transactions that are not consummated; (x) expenses relating to defaults by Limited Partners in their obligations under this Agreement; (xi) expenses incurred in connection with the restructuring of or amendment to this Agreement or related documents, or the constituent documents of any related entity, including the General Partner or the Management Company; (xii) expenses incurred in

connection with the maintenance of the Partnership's books of account and the preparation of audited or unaudited financial statements required to implement the provisions of this Agreement or by any governmental authority with jurisdiction over the Partnership (including fees and expenses of independent auditors, accountants and counsel, the costs and expenses of preparing and circulating the reports called for by Section 7.1 hereof and any fees or imposts of a governmental authority imposed in connection with such books and records and statements) and other routine administrative expenses of the Partnership or its subsidiaries, including the cost of the preparation of cash management expenses and insurance and legal expenses; and (xiii) all expenses incurred in connection with any indebtedness of the Partnership or other credit arrangement (including any line of credit, loan commitment or letter of credit for the Partnership or related to any Assets (or any underlying asset)).

(b)     The Partnership shall pay to the Management Company in estimated semi-annual installments in advance, a budget payment (the "Budget Payment") in an amount equal to the semi-annual estimated operating budget of the Partnership for such half of the Fiscal Year. A Budget Payment shall be payable on the Effective Date and every 6 months henceforth until the date on which the Partnership completes its liquidation as provided in Section 8. The amount of each Budget Payment shall be determined by the Management Company, subject to the prior written approval of the Special Limited Partner, and the Principal shall be responsible for the administration, monitoring and reporting of all disbursements.


## ARTICLE VII

### Books and Records and Reports to Limited Partners

#### 7.1     Books, Register and Records.

(a)     The General Partner shall keep or cause to be kept complete and appropriate records and books of account of the Partnership. Except as otherwise expressly provided herein, such books and records shall be maintained on a basis which allows the proper preparation of the Partnership's financial statements and tax returns. The books and records shall be maintained at the principal office of the Partnership. Subject to Section 10.13, upon furnishing reasonable advance notice to the General Partner, a Limited Partner or its duly authorized representatives shall be permitted to inspect the books and records of the Partnership for any proper purpose, and to make copies thereof, at any reasonable time during normal business hours.

(b)     The General Partner shall keep, or cause to be kept at the registered office of the Partnership or such other place determined by it a register (the "Register") containing such particulars relating to each Limited Partner as it may deem appropriate. The Register shall be kept in such manner as to show at all times the Limited Partners for the time being and the Partnership Interests respectively held by them.

#### 7.2     Federal, State, Local and Non-United States Income Tax Information.

Within seventy five (75) days after the end of each Fiscal Year (subject to reasonable delays in the event of the late receipt of any necessary information), the General Partner shall prepare and send, or cause to be prepared and sent, to each Person who was a Limited Partner at any time during such Fiscal Year copies of such information as may be required for tax reporting purposes (including an IRS Schedule K-1).

7.3    Reports to Limited Partners.

(a)    Within forty-five (45) days after the end of each of the first three quarters of each Fiscal Year of the Partnership, and within seventy five (75) days (subject in both cases to reasonable delays in the event of the late receipt of any necessary information) after the end of each Fiscal Year of the Partnership, the General Partner shall send, or cause to be sent, to each Person who was a Limited Partner during such period:

(b)    The following financial statements for the Partnership prepared on the same basis followed by the Partnership for income tax purposes (audited in the case of Fiscal Year end):

(i)    a balance sheet as of the end of such period,

(ii)    a statement of income or loss and a statement of Limited Partners' capital for such period, and

(iii)    a schedule of changes in Capital Account balances by Limited Partner; and

(iv)    a schedule and summary description of each investment owned by the Partnership as of the end of such period.

(c)    The General Partner shall also send, or cause to be sent, to the Limited Partners weekly pipeline reports in a form reasonably satisfactory to the Limited Partners.

(d)    The General Partner shall cause the Management Company to participate in weekly calls with the Partnership to review existing and potential transactions and to participate in credit meetings to discuss the merits of pursuing potential transactions.

(e)    The General Partner shall deliver, or shall cause to be delivered, such other information available to the General Partner and the Management Company relating to the Partnership, including financial statements and computations, as the Limited Partners may from time to time reasonably request.

7.4    Tax Elections.

(a)    *Elections by Partnership*.  Except as provided in Section 2.9 hereof relating to the tax classification of the Partnership, the General Partner shall not make any tax election provided under the Code, or any provision of state, local or foreign tax law without the prior written consent of the Special Limited Partner, such consent not to be

unreasonably withheld or delayed, and the General Partner shall, to the fullest extent permitted by law, be absolved from all liability for any and all consequences to any previously admitted or subsequently admitted Limited Partners resulting from its making any such election, provided such consent has been obtained. All decisions and other matters concerning the computation and allocation of items of income, gain, loss, deduction and credits among the Limited Partners, and accounting procedures not specifically and expressly provided for by the terms of this Agreement shall be determined by the General Partner in its reasonable discretion. The General Partner upon the written request of the Special Limited Partner shall cause the Partnership to make an election under Section 754 of the Code or, to the extent the Partnership is eligible, an election to be treated as an "electing investment partnership" within the meaning of Section 743(e) of the Code. If the Partnership elects to be treated as an electing investment partnership, each Limited Partner shall (i) cooperate with the Partnership to maintain such status, (ii) not take any action that would be inconsistent with such election, (iii) provide the General Partner with any information necessary to allow the Partnership to comply with its tax reporting and other obligations as an electing investment partnership, and (iv) provide the General Partner and such Limited Partner's Transferee, promptly following the Transfer of such Limited Partner's interest, with the information required under Section 6031(b) of the Code or otherwise to be furnished to the Partnership or such Transferee, including such information as is necessary to enable the Partnership and such Transferee to compute the amount of losses disallowed under Section 743(e) of the Code. Whether or not the Partnership makes an election to be treated as an electing investment partnership, each Limited Partner shall, promptly upon request, provide the General Partner with any information related to such Limited Partner necessary to allow the Partnership to comply with (a) its obligations to make tax basis adjustments under Sections 734 or 743 of the Code and (b) any other tax reporting obligations of the Partnership.

(b)     *Elections by Limited Partners.*  If any Limited Partner makes any tax election that requires the Partnership to furnish information to such Limited Partner to enable such Limited Partner to compute its own tax liability, or requires the Partnership to file any tax return or report with any tax authority, in either case that would not be required in the absence of such election made by such Limited Partner, the General Partner may, as a condition to furnishing such information or filing such return or report, require such Limited Partner to pay to the Partnership any incremental expenses incurred in connection therewith. Each Limited Partner hereby agrees and covenants that it shall not make an election under Section 732(d) of the Code without the prior written consent of the General Partner which shall not be unreasonably withheld or delayed.

7.5     Withholding Tax Payments and Obligations. If withholding taxes are paid or required to be paid in respect of payments made to or by the Partnership, such payments or obligations shall be treated as follows:

(a)     *Payments to the Partnership.*  If the Partnership receives proceeds in respect of which a tax has been withheld, the Partnership shall be treated as having received cash in an amount equal to the amount of such withheld tax, and, for all purposes of this Agreement, each Partner shall be treated as having received a distribution pursuant to Section 3.2 hereof equal to the portion of the withholding tax allocable to such Partner, as determined by the General Partner in its reasonable discretion.

(b)    *Payments by the Partnership.*  The Partnership is authorized to withhold from any payment made to, or any distributive share of, a Partner any taxes required by law to be withheld; <u>provided</u>, that the General Partner shall cooperate with the Partners to mitigate such withholding taxes, if any.  If, and to the extent, the Partnership is required to make any such tax payments with respect to any distribution to a Partner, either (i) such Partner's proportionate share of such distribution shall be reduced by the amount of such tax payments (which tax payments shall be treated as a distribution to such Partner pursuant to Section 3.2 hereof), or (ii) such Partner shall pay to the Partnership prior to such distribution an amount of cash equal to such tax payments (which payment of cash shall not be deemed a Capital Contribution for purposes hereof and shall not reduce the Partner's available Commitment).  In the event a portion of a distribution in kind is retained by the Partnership pursuant to clause (i) above, such Securities may, in the sole discretion of the General Partner, either (A) be distributed to the other Partners (subject to Section 3.4), or (B) be sold by the Partnership to generate the cash necessary to satisfy such tax payments.  If the securities are sold, then for purposes of income tax allocations only under this Agreement, any gain or loss on such sale or exchange shall be allocated to the Partner to whom the tax payments relate to the extent of such tax payments.

(c)    *Overwithholding.*  Neither the Partnership nor the General Partner shall be liable for any excess taxes withheld in respect of any Partner's Interest, and, in the event of overwithholding, a Partner's sole recourse shall be to apply for a refund from the appropriate governmental authority; <u>provided</u>, <u>however</u>, that the General Partner shall use commercially reasonable efforts to assist such Partner in such application.

(d)    *Certain Withheld Taxes Treated as Demand Loans.*  Any taxes withheld pursuant to Section 7.5(a) or 7.5(b) hereof shall be treated as if distributed to the relevant Partner to the extent an amount equal to such withheld taxes would then be distributable to such Partner, and, to the extent in excess of such distributable amounts, as a demand loan payable by the Partner to the Partnership with interest at the Prime Rate in effect from time to time plus two percent (2%), compounded annually.  The General Partner may, in its sole discretion, either demand payment of the principal and accrued interest on such demand loan at any time, and enforce payment thereof by legal process, or may withhold from one (1) or more distributions to a Partner amounts sufficient to satisfy such Partner's obligations under any such demand loan.

(e)    *Indemnity.*  If the Partnership, the General Partner, the Management Company or any of their respective Affiliates, or any of their respective officers, directors, employees, managers, partners and, as determined by the General Partner in its reasonable discretion, consultants or agents, becomes liable as a result of a failure to withhold and remit taxes in respect of any Partner (other than as a direct result of the gross negligence (as defined under the laws of Delaware) or willful misconduct of the Partnership), then, in addition to, and without limiting, any indemnities for which such Partner may be liable under Article IV hereof, such Partner shall, to the fullest extent permitted by law, indemnify and hold harmless the Partnership, the General Partner, the Management Company or any of their respective Affiliates, or any of their respective officers, directors, employees, manager, partners and, as determined by the General Partner in its reasonable discretion, consultants or agents, as the case may be, in respect of all taxes, including interest and penalties, and any expenses incurred in any examination, determination, resolution and payment of such liability.  The provisions contained in

this Section 7.5(e) shall survive the termination of the Partnership and the Transfer of any Interest.

(f)    *Refunds of Withholding Taxes.*    In the event that the Partnership receives a refund of taxes previously withheld by a third party from one (1) or more payments to the Partnership, the economic benefit of such refund shall be apportioned among the Partners in a manner reasonably determined by the General Partner to offset the prior operation of this Section 7.5 in respect of such withheld taxes.

## ARTICLE VIII

### Term and Dissolution of the Partnership

8.1    Events of Dissolution.    Subject to the Act and Section 8.5 hereof, the Partnership shall be would up and subsequently dissolved upon the happening of any of the following events: (each an "Event of Dissolution"):

(a)    The expiration of its term in accordance with Section 2.4 hereof.

(b)    The exercise of the Special Limited Partner Termination Right.

(c)    The determination by the General Partner in good faith that such winding up and subsequent dissolution is necessary or advisable for any reason, with the prior written consent of the Special Limited Partner.

(d)    The election of the Special Limited Partner within 45 days after such Special Limited Partner becomes aware of any of the following events: (i) the General Partner has willfully and intentionally breached any of its material obligations under this Agreement and such breach is not cured within 30 days after receipt by the General Partner of written notice with respect thereto from the Special Limited Partner; (ii) the General Partner or the Principal has been convicted of any felony; and (iii) the General Partner (A) files a voluntary petition in bankruptcy, (B) is involuntarily wound up, (C) consents to or acquiesces to the appointment of a trustee, receiver or liquidator of such Person, or (D) such Person has entered against it an order for relief in a federal bankruptcy proceeding which order is not stayed, vacated or dismissed within 60 days.

8.2    Winding-up.

Upon the commencement of the winding up of the Partnership, the Partnership shall not terminate, but shall cease to engage in further business, except to the extent necessary to perform existing contracts and preserve the value of its assets, and the General Partner shall wind up its affairs and liquidate its assets. During the course of liquidation, the Partners shall continue to share Net Income, Net Losses and other separate items as provided in this Agreement, and all of the provisions of this Agreement shall continue to bind the parties and apply to the activities

of the Partnership (including the distribution provisions of Section 3.2), except as specifically provided herein to the contrary.

### 8.3    Final Distribution.

As soon as practicable following an Event of Dissolution, the proceeds from liquidation shall be applied and distributed as follows:

(a)    <u>First,</u> to the payment of the expenses of the winding-up, liquidation and dissolution of the Partnership;

(b)    <u>Second,</u> to pay all creditors of the Partnership, other than Partners in respect of distributions then owing to them, either by the payment thereof or the making of reasonable provision therefor;

(c)    <u>Fourth,</u> pay out severance payments in accordance with Section 5.3, if applicable;

(d)    <u>Fifth,</u> to establish reserves, in amounts established by the General Partner or other liquidating trustee as may be selected by the Limited Partners, to meet other liabilities of the Partnership other than to the Partners in respect of distributions then owing to them; and

(e)    <u>Sixth,</u> to the Partners in accordance with Section 3.2.

Except as provided in Section 8.4 hereof, each Partner shall look solely to the assets of the Partnership for all distributions with respect to the Partnership and shall have no recourse therefor, upon dissolution or otherwise, against any other Partner.  No Partner shall have any right to demand or receive property other than cash upon dissolution of the Partnership.

The Partnership may distribute Non-Marketable Securities to the Partners in kind upon the liquidation of the Partnership, which such Non-Marketable Securities shall be valued at their Fair Value on the date of distribution.  The conditions and restrictions provided in Section 3.4(f) shall also apply to the distribution of Non-Marketable Securities in this Section 8.3.

### 8.4    Upon Payment of Excess Carried Interest Amounts.

After the final distribution of the assets of the Partnership among the Partners as provided in Section 8.3, the General Partner shall return any Excess Carried Interest to the Partnership by means of Capital Contributions made by the General Partner to the Partnership (the "<u>Clawback</u>"); provided, however, that the amount of the Clawback shall not exceed the Maximum Clawback Amount as hereinafter defined.  For purposes hereof, the term "Maximum Clawback Amount" shall mean the excess of (x) 100% of the amount actually distributed to the General Partner during the life of the Partnership on account of the General Partner's Carried Interest (including, for this purposes, the aggregate amount of Tax Distributions to which the General Partner is entitled pursuant to Section 3.5 that reduce the amount of Carried Interest distributions that the General Partner would have been entitled to receive but for Section 3.5(b)) (reduced by the aggregate of all amounts previously contributed by or on behalf of the General

Partner pursuant to this Section 8.4)) over (y) the greater of (1) the Tax Distributions to which the General Partner is entitled pursuant to Section 3.5 or (2) the U.S. federal, state or local taxes paid or payable by the General Partner and its members on distributions (to the extent taxes upon such distributions result from distributions of cash in excess of the tax basis in the Partnership Interests) and on the allocation by the Partnership of net income and net gain in respect of the distributions described in clause (x) above (as determined by the General Partner in its reasonable discretion, and taking into account taxes paid or payable by the General Partner upon the sale or other disposition of property distributed in-kind by the Partnership pursuant to Section 3.4, but only to the extent such taxes relate to gain inherent in such property on the date of distribution by the Partnership). The General Partner shall only be obligated to restore its negative Capital Account, if any, to the extent set forth in this Section 8.4. Amounts contributed by the General Partner as a Clawback shall, subject to the Act, be distributed to each Partner *pro rata* on the basis of their aggregate Capital Contributions.

### 8.5 Termination of Partnership.

Upon the application and distribution of the proceeds of liquidation and the assets of the Partnership as provided in Sections 8.3 and 8.4 hereof, the General Partner shall file a notice of dissolution in accordance with the Act, whereupon the Partnership shall terminate. Upon the filing of a notice of dissolution by the General Partner in accordance with the Act, other than as expressly provided herein, this Agreement shall terminate.

## ARTICLE IX

### Capital Accounts and Allocations of Profits and Losses

9.1     Capital Accounts.     A separate capital account (the "Capital Account") shall be established and maintained for each Partner.  The Capital Account of each Partner shall be credited with such Partner's capital contributions to the Partnership, all profits allocated to such Partner pursuant to Section 9.2 or otherwise pursuant to this Agreement, and shall be debited with all losses allocated to such Partner pursuant to Section 9.2 or otherwise pursuant to this Agreement, and all cash and the Fair Value of any property (net of liabilities assumed by such Partner and the liabilities to which such property is subject) distributed by the Partnership to such Partner.  The foregoing provision and other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Regulations Section 1.704-1(b) and shall be interpreted and applied in a manner consistent with such Regulations.

9.2     General Application.     The rules set forth below in this Article IX shall apply for the purposes of determining each Partner's allocable share of the items of income, gain, loss and expense of the Partnership comprising Net Income or Net Loss of the Partnership for each Fiscal Year, determining special allocations of other items of income, gain, loss and expense, and adjusting the balance of each Partner's Capital Account to reflect the aforementioned general and special allocations.  For each Fiscal Year, the special allocations in Section 9.4 hereof shall be made immediately prior to the general allocations of Section 9.3 hereof.

9.3     General Allocations.

(a)     *Hypothetical Liquidation.*  The items of income, expense, gain and loss of the Partnership comprising Net Income or Net Loss for a Fiscal Year shall be allocated among the persons who were Partners during such Fiscal Year in a manner that will, as nearly as possible, cause the Capital Account balance of each Limited Partner at the end of such Fiscal Year to equal the amount of the hypothetical distribution (if any) that such Partner would receive if, on the last day of the Fiscal Year, (x) all Partnership assets, including cash and any amount required to be contributed by the General Partner pursuant to Section 8.4 hereof, were sold for cash equal to their Gross Asset Values, taking into account any adjustments thereto for such Fiscal Year, (y) all Partnership liabilities were satisfied in cash according to their terms (limited, with respect to each nonrecourse liability, to the book values of the assets securing such liability), and (z) the net proceeds thereof (after satisfaction of such liabilities) were distributed in full pursuant to Sections 3.2, 8.3 and 8.4 hereof.

(b)     *Determination of Items Comprising Allocations.*

(i)     If the Partnership has Net Income for a Fiscal Year,

(A)     for any Partner as to whom the allocation pursuant to Section 9.3(a) hereof would reduce its Capital Account, such allocation shall be comprised of a proportionate share of each of the Partnership's items of expense or loss entering into the computation of Net Income for such Fiscal Year; and

(B)     the allocation pursuant to Section 9.3(a) hereof in respect of each Partner (other than a Partner referred to in Section 9.3(b)(i)(A) hereof) shall be comprised of a proportionate share of each Partnership item of income, gain, expense and loss entering into the computation of Net Income for such Fiscal Year (other than the portion of each Partnership item of expense and loss, if any, that is allocated pursuant to Section 9.3(b)(i)(A) hereof).

(ii)     If the Partnership has a Net Loss for a Fiscal Year,

(A)     for any Partner as to whom the allocation pursuant to Section 9.3(a) hereof would increase its Capital Account, such allocation shall be comprised of a proportionate share of each of the Partnership's items of income and gain entering into the computation of Net Loss for such Fiscal Year; and

(B)     the allocation pursuant to Section 9.3(a) hereof in respect of each Partner (other than a Partner referred to in Section 9.3(b)(ii)(A) hereof) shall be comprised of a proportionate share of each Partnership item of income, gain, expense and loss entering into the computation of Net Loss for such Fiscal Year (other than the portion of each Partnership item of income and gain, if any, that is allocated pursuant to Section 9.3(b)(ii)(A) hereof).

(c)     *Loss Limitation.*  Notwithstanding anything to the contrary contained in this Section 9.3, the amount of items of Partnership expense and loss allocated pursuant to this Section 9.3 to any Partner shall not exceed the maximum amount of such items that can be so allocated without causing such Partner (other than the General Partner) to have an Adjusted Capital Account Deficit at the end of any Fiscal Year. All such items in excess of the limitation set forth in this Section 9.3(c) shall be allocated first to Partners who would not have an Adjusted Capital Account Deficit, pro rata, until no Partner would be entitled to any further allocation, and thereafter to the General Partner.

(d)     *No Deficit Restoration Obligation.*  Except as otherwise expressly provided in Section 8.4 hereof, at no time during the term of the Partnership or upon dissolution and liquidation thereof shall a Partner with a negative balance in its Capital Account have any obligation to the Partnership or the other Partners to restore such negative balance, except as may be required by law or in respect of any negative balance resulting from a withdrawal of capital or dissolution in contravention of this Agreement.

### 9.4     Special Allocations.

The following special allocations shall be made in the following order:

(a)     *Minimum Gain Chargeback.*  If there is a net decrease during a Fiscal Year in either Partnership Minimum Gain or Partner Nonrecourse Debt Minimum Gain, then notwithstanding any other provision of this Article IX, each Partner shall receive such special allocations of items of Partnership income and gain as are required in order to conform to Regulations Section 1.704-2.

(b)     *Qualified Income Offset.*  Subject to Section 9.4(a) hereof, but notwithstanding any other provision of this Article IX items of income and gain shall be specially allocated to the Partners in a manner that complies with the "qualified income offset" requirement of Regulations Section 1.704-1(b)(2)(ii)(d)(3).

(c)     *Deficit Capital Accounts Generally.*  If a Partner has a deficit Capital Account balance at the end of any Fiscal Year which is in excess of the sum of (i) the amount such Partner is then obligated to restore pursuant to this Agreement, and (ii) the amount such Partner is then deemed to be obligated to restore pursuant to the penultimate sentences of Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5), respectively, such Partner shall be specially allocated items of Partnership income and gain in an amount of such excess as quickly as possible, provided that any allocation under this Section 9.4(c) shall be made only if and to the extent that a Partner would have a deficit Capital Account balance in excess of such sum after all allocations provided for in this Article IX have been tentatively made as if this Section 9.4(c) were not in this Agreement.

(d)     *Deductions Attributable to Partner Nonrecourse Debt.* Any item of Partnership loss or expense that is attributable to Partner Nonrecourse Debt shall be specially allocated to the Partners in the manner in which they share the economic risk of loss (as defined in Regulations Section 1.752-2) for such Partner Nonrecourse Debt.

(e)     *Allocation of Nonrecourse Deductions.*  Each Nonrecourse Deduction of the Partnership shall be specially allocated to all of the Partners in proportion to their Capital Contributions.

(f)     The allocations set forth in Sections 9.3(c), and this Section 9.4 (the "Regulatory Allocations") are intended to comply with certain requirements of the Regulations. It is the intent of the Partners that, to the extent possible, all Regulatory Allocations shall be offset either with other Regulatory Allocations or with other allocations of other items of Partnership income, gain, loss, or deduction pursuant to this Section 9.4(f). Therefore, notwithstanding any other provision of this Article 9 (other than the Regulatory Allocations), the General Partner shall make such offsetting special allocations of Partnership income, gain, loss, or deduction in whatever manner it determines appropriate so that, after such offsetting allocations are made, each Partner's Capital Account balance is, to the extent possible, equal to the Capital Account balance such Partner would have had if the Regulatory Allocations were not part of the Agreement and all Partnership items were allocated pursuant to Section 9.3 (other than clause (c)).

### 9.5     Allocation of Nonrecourse Liabilities.

For purposes of determining each Partner's share of Nonrecourse Liabilities, if any, of the Partnership in accordance with Regulations Section 1.752-3(a)(3), the Partners' interests in Partnership profits shall be determined in the same manner as prescribed by Section 9.4(e) hereof.

### 9.6     Transfer of Interest.

In the event of any permitted Transfer of all or part of an Interest of a Partner at any time other than the end of a Fiscal Year, the shares of items of Net Income or Net Loss and specially allocated items allocable to the Interest Transferred shall be allocated between the Transferor and the Transferee in a manner determined by the General Partner in its reasonable discretion that is not inconsistent with the applicable provisions of the Code and Regulations.

### 9.7     Tax Allocations.

The Partners are aware of the income tax consequences of the allocations made by this Section 9 and hereby agree to be bound by the provisions of this Section 9 in reporting their shares of Partnership income and loss for income tax purposes.

## ARTICLE X

### Miscellaneous

### 10.1     Waiver of Partition and Accounting.

Except as may be otherwise required by law in connection with the winding-up, liquidation and dissolution of the Partnership, each Limited Partner hereby irrevocably waives

any and all rights that it may have to maintain an action for an accounting or for partition of any of the Partnership's property.

## 10.2 Power of Attorney.

Each Limited Partner, by execution of this Agreement, irrevocably constitutes and appoints the General Partner as the Limited Partner's true and lawful attorney-in-fact and agent, with full power and authority in such Limited Partner's name, place, and stead to execute, acknowledge, and deliver, and to file or record in any appropriate public office: (a) any certificate or other instrument that may be necessary, desirable, or appropriate to reflect an amendment approved by the Limited Partners in accordance with the provisions of this Agreement; (b) any certificates or instruments that may be necessary, desirable, or appropriate to reflect the winding up and dissolution of the Partnership; and (c) any certificates necessary to comply with the provisions of this Agreement. Notwithstanding the existence of this power of attorney, each Limited Partner agrees to join in the execution, acknowledgment, and delivery of the instruments referred to above if requested to do so by the General Partner. This power of attorney is intended to secure an interest in the property and the obligations of each Limited Partner and shall be irrevocable and does not authorize the General Partner to act on behalf of a Limited Partner except as described in this Section 10.2.

## 10.3 Amendments.

Except as required by law, this Agreement (including the Annexes hereto) may not be amended or supplemented without the prior written consent of the General Partner and each of the Limited Partners. Notwithstanding the foregoing, this Agreement may be amended by the General Partner without the consent of any Limited Partner to (a) correct any printing, stenographic or clerical error or omissions, or (b) the extent the General Partner reasonably determines based upon the written opinion of outside counsel that an amendment is necessary to comply with applicable laws and regulations.

## 10.4 Entire Agreement.

This Agreement and the Subscription Agreements constitute the entire agreement among the Limited Partners with respect to the subject matter hereof and supersede any prior agreement or understanding among or between them with respect to such subject matter. The representations and warranties of the Limited Partners in, and the other provisions of, the Subscription Agreements shall survive the execution and delivery of this Agreement.

## 10.5 Severability.

Except as otherwise specified herein, the invalidity or unenforceability of any term or terms of this Agreement shall not invalidate, make unenforceable or otherwise affect any other term of this Agreement which shall remain in full force and effect.

## 10.6 Notices.

All notices and other communication hereunder shall be in writing and shall be sent by delivery in person, by courier service, by electronic mail transmission or facsimile or by

registered or certified mail (postage prepaid, return receipt requested) addressed as follows or such other address as may be substituted by notice as herein provided:

If to the Limited Partners:

As set forth in each Limited Partner's subscription agreement.

If to the General Partner:

Israeli VC Partners, Ltd.
c/o Intertrust Corporate Services
190 Elgin Avenue
George Town, Grand Cayman KY1-9005
Cayman Islands
Attn: Andrew Intrater

with a copy to:

Morrison Cohen LLP
909 Third Avenue
New York, New York 10022
Telefacsimile: 212-735-8708
e mail: hzangara@morrisoncohen.com
Attn: Henry Zangara

Any notice given hereunder shall be deemed to have been given upon the earliest of: (i) receipt, (ii) three (3) days after being deposited in the mail, postage prepaid, registered or certified mail, return receipt requested and (iii) one (1) day after being sent by Federal Express or other recognized overnight delivery service, return receipt requested. In the case of notices sent by electronic mail transmission or telecopy, such notices shall be deemed to have been given when sent; provided, however, that any notice sent by electronic mail transmission shall only be effective upon confirmation (by telephone, telecopy or return receipt) from the Limited Partner to whom such notice was sent.

### 10.7 GOVERNING LAW.

THIS AGREEMENT SHALL BE INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF THE CAYMAN ISLANDS WITHOUT GIVING EFFECT TO CONFLICTS OF LAW PRINCIPLES THEREOF THAT WOULD CAUSE THE APPLICATION OF THE LAWS OF ANY JURISDICTION OTHER THAN THE CAYMAN ISLANDS.

### 10.8 No Third Party Beneficiaries; Successors and Assigns.

No Person which is not a party hereto shall have any rights pursuant to this Agreement. It is understood and agreed among the parties that this Agreement and the covenants made herein are made expressly and solely for the benefit of the parties hereto, and that no other

Person, other than an Indemnitee pursuant to Sections 4.3 and 4.4 hereof, shall be entitled or be deemed to be entitled to any benefits or rights hereunder, nor be authorized or entitled to enforce any rights, claims or remedies hereunder or by reason hereof. No rights under this Agreement shall be assignable to anyone, nor any duties assigned by another party, unless otherwise agreed by all parties hereto in writing. This Agreement shall be binding upon and inure to the benefit of the successors and permitted assigns of the parties hereto.

### 10.9 Counterparts.

This Agreement may be signed in counterparts, each of which shall be deemed an original and all of which shall together constitute one document.

### 10.10 Headings.

The headings of the provisions hereof are for descriptive purposes only and shall not modify or qualify any of the rights or obligations set forth in such provisions.

### 10.11 Interpretation

(a)     Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in either the masculine or the neuter gender shall include the masculine, the feminine and the neuter. The words "include," "includes," and "including" shall be deemed to be followed by the phrase "without limitation."

(b)     Whenever in this Agreement a Person is permitted or required to make a decision (i) in its "sole discretion" or "discretion" or under a grant of similar authority or latitude, the Person shall be entitled to consider any interests and factors as it desires, including its own interests, or (ii) in its "good faith" or under another express standard, the Person shall act under such express standard and shall not be subject to any other or different standards imposed by this Agreement or any other agreement contemplated herein or by relevant provisions of law or in equity or otherwise.

### 10.12 Delivery of Certificate.

The General Partner shall provide a copy of this Agreement and each amendment to this Agreement to each of the Limited Partners and a copy of the Certificate upon request.

### 10.13 Confidentiality.

(a)     *Confidential Information.* This Agreement and all financial statements, tax reports, portfolio valuations, reviews or analyses of potential or actual investments, reports or other materials and all other documents and information concerning the affairs of the Partnership and its investments, including, without limitation, information about the Portfolio Companies (collectively, the "Confidential Information"), that any Limited Partner has received or may receive or that has been or may be disclosed, distributed or disseminated (whether in writing, orally, electronically or by other means) to any Limited Partner or its representatives, in connection with the Limited Partner's subscription to the Partnership, pursuant

to or in accordance with this Agreement, or otherwise as a result of its ownership of an interest in the Partnership, constitute proprietary and confidential information about the Partnership, the General Partner and its Affiliates and the Portfolio Companies (the "Disclosing Parties"). Each Limited Partner acknowledges and agrees that the Disclosing Parties derive independent economic value from the Confidential Information not being generally known and that the Confidential Information is the subject of reasonable efforts to maintain its secrecy. Each Limited Partner further acknowledges and agrees that the Confidential Information is a trade secret, the disclosure of which is likely to cause substantial and irreparable competitive harm to the Disclosing Parties or their respective businesses.

(b) *Maintenance of Confidentiality*. Each Limited Partner agrees to hold all Confidential Information in confidence, and not to disclose any Confidential Information to any third party without the prior written consent of the General Partner. Notwithstanding the preceding sentence, each Limited Partner may disclose such Confidential Information: (i) to its officers, directors, trustees, equity owners, wholly owned subsidiaries, employees and outside experts (including but not limited to its attorneys and accountants) on a "need to know" basis, so long as such persons are bound by the same duties of confidentiality to the Partnership as such Limited Partner, and so long as such Limited Partner shall remain liable for any breach of this Section 10.13 by such Persons; (ii) to the extent that such information is required to be disclosed in connection with any civil or criminal proceeding; (iii) to the extent that such information is required to be disclosed by applicable law in connection with any governmental, administrative or regulatory proceeding or filing (including any inspection or examination or any disclosure necessary in connection with a request for information made under a state or federal freedom of information act or similar law), after reasonable prior written notice to the General Partner (except where such notice is expressly prohibited by law); (iv) to the extent that such information was received from a third party not subject to confidentiality limitations and such Limited Partner can establish that it rightfully received such information from such party other than as a result of the breach of this Section 10.13; (v) to the extent such information was rightfully in such Limited Partner's possession prior to the Partnership's conveyance of such information to such Limited Partner, as evidenced by the Limited Partner's prior written records; or (vi) to the extent that the information provided by the Partnership is otherwise available in the public domain in the absence of any improper or unlawful action on the part of such Limited Partner. Any Limited Partner seeking to make disclosure in reliance on clauses (ii) and (iii) above, shall use its commercially reasonable efforts to claim any relevant exception under such laws or obligations which would prevent or limit public disclosure of the Confidential Information and provide the General Partner immediate notice upon the Limited Partner's receipt of a request for disclosure of any Confidential Information pursuant to such laws or obligations.

(c) *Additional Restrictions*. Notwithstanding any provision of this Agreement to the contrary, the General Partner may withhold disclosure of any Confidential Information (other than this Agreement, audited financial statements or tax reports) to any particular Limited Partner if the General Partner reasonably determines that the disclosure of such Confidential Information to such Limited Partner may result in the general public gaining access to such Confidential Information or that such disclosure is not in the best interests of the Partnership or its investments; provided, however, that to the extent that any information is not delivered to a Limited Partner based on the General Partner's exercise of its discretion under this sentence, such information shall be made available for review, but not copying, during regular

business hours at a location mutually determined by the General Partner and such Limited Partner.

        (d)     *Limited Partner Advisers.*  Each Limited Partner agrees to notify such Limited Partner's attorneys, accountants and other similar advisers about the Limited Partner's and their obligations in connection with this Section 10.13 and will further cause such advisers to abide by the aforesaid provisions of this Section 10.13.

## 10.14  No Restrictions.

        None of the Limited Partners are under any contractual or other obligation or restriction that would in any way impair its ability to comply with the provisions of this Agreement, except as provided herein.

## 10.15  Disputes.

        Any dispute or controversy arising hereunder between or among the parties hereto, or in respect of any other matter, cause or thing whatsoever not herein otherwise provided for, shall be submitted to arbitration before a panel of arbitrators from the American Arbitration Association to be mutually agreed by the parties and the decision of the panel of arbitrators shall be final and binding upon parties.  The cost of such arbitration shall be borne by each of the parties to such dispute, and in such proportion as the arbitrators shall determine to be equitable, or in the event of their failure to so determine, the said cost shall be borne equally.

## 10.16  Data.

        All information concerning the Partnership shall be preserved by the General Partner for a period of at least five (5) years following the termination of this Agreement.  The General Partner will cooperate with any investigation or audit that might involve the Partnership and, subject to Section 10.13 make data available as requested by the Limited Partners.

## 10.17  Remedies and Waivers.

        No waiver of any breach of any agreement or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof or of any other agreement or provision herein contained.  No extension of time for performance of any obligations or acts shall be deemed an extension of time for performance of any other obligations or acts.  The rights, powers and remedies provided hereunder are cumulative and are not exclusive of any rights, powers and remedies provided by law.

## 10.18  Risk.

        (a)     All transactions effected for the Partnership by the General Partner, the Management Company or any of their respective Affiliates shall be for the Partnership and its risk.  Neither the General Partner nor the Management Company has made and makes no guarantee whatsoever as to the success or profitability of the its methods and strategies, and the Limited Partners acknowledge that the Limited Partners have received no such guarantee from the General Partner, the Management Company or any of their respective Affiliates and

have not entered into this Agreement in consideration of or in reliance upon any such guarantee or similar representation from the General Partner, the Management Company or any of their respective Affiliates.

(b)     The Limited Partners each acknowledge that the activities of the Partnership involve a high degree of risk, and each represents that each has such business and financial experience to evaluate and assume such risks and that none of the Limited Partners or any of their respective Affiliates have relied on any representations or warranties as to the profitability or loss that may occur as a result of investment activity of the Partnership, nor as to the merits of any investment methodology or strategy.

* * *

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as a deed on the date first above written.

GENERAL PARTNER:

ISRAELI VC PARTNERS GP, LTD.

By: _____
Name: Andrew Intrater
Title: Director

_____
Witness

John Winter

LIMITED PARTNER:

WEFT GLOBAL LTD.

By: _____

Name: Jean –Pierre Haroutounian

Title: Director

_____

Witness


WALKERS NOMINEES LIMITED

By: _____

Name:

Title:


_____

Witness

LIMITED PARTNER:

WEFT GLOBAL LTD.

By:_____
Name:
Title:


_____

Witness


WALKERS NOMINEES LIMITED

By:_____
Name: Michael Padarin
Title: Authorised Signatory


_____
Witness      SHANNA HEASMAN

## Limited Partners

- Renova Innovation Technologies Ltd.