**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

US VC PARTNERS *et al.*,

        Plaintiffs,

        v.

UNITED STATES DEPARTMENT OF THE TREASURY,
OFFICE OF FOREIGN ASSETS CONTROL *et al.*,

        Defendants.

No. 19-cv-6139-GBD

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' "MOTION FOR THE
RETURN OF UNLAWFULLY SEIZED PROPERTY"**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2739
*Attorney for Defendants*

DAVID S. JONES, Assistant United States
Attorney, *Of Counsel*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .......................................................................................................................3

     A.     Relevant Sanctions and 50 Percent Rule .................................................3

ARGUMENT ............................................................................................................................7

     I.     Criminal Rule 41(g)'s Requirements .......................................................7

     II.     The Turnover Motion Should Be Denied Because There Is No Showing the "Property Was Seized" in This District ...................................................9

     III.     The Turnover Motion Improperly Seeks to Expedite Determination of the Ultimate Relief Sought in the Complaint .............................................9

     IV.     The Turnover Motion Fails Because Criminal Rule 41(g) Is Inapplicable in This Civil Proceeding ....................................................................................11

     V.     The Turnover Motion Fails on the Merits Because the Blocking of Assets as a Matter of Law Resulting from Vekselberg's SDN Designation Is Not a "Seizure" ..............................................................................................17

     VI.     The Turnover Motion Also Fails on the Merits Because OFAC's Designation of Vekselberg and the Resulting Blocking of Assets Were Not "Unlawful" .......................................................................................18

     VII.     The Turnover Motion Also Fails on the Merits Because the United States Does Not Possess Plaintiffs' Property and Therefore Cannot Return It ...............20

CONCLUSION ........................................................................................................................21

## TABLE OF AUTHORITIES

***Cases***                                                                    ***Page***

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury,*
    686 F.3d 965 (9th Cir. 2012) .......................................................................... 17, 20

*Black Hills Institute v. Dept. of Justice,*
    967 F.2d 1237 (8th Cir. 1992) ................................................................................ 7

*Brigham City v. Stuart,*
    547 U.S. 398 (2006) .............................................................................................. 19

*Cernuda v. Heavey,*
    720 F. Sup. 1544 (S.D. Fla. 1989) ....................................................................... 12

*Chandler v. Miller,*
    520 U.S. 305 (1997) .............................................................................................. 20

*Dames & Moore v. Regan,*
    453 U.S. 654 (1981) .............................................................................................. 18

*De Almeida v. United States,*
    459 F.3d 377 (2d Cir. 2006) ......................................................................... *passim*

*Granny Goose Foods, Inc. v. Teamsters,*
    415 U.S. 423 (1974) .............................................................................................. 10

*Griffin v. Wisconsin,*
    483 U.S. 868 (1987) .............................................................................................. 19

*Guthrie v. Niak,*
    No. 12 Civ. 1761, 2013 WL 5487936 (S.D. Tex. Sep. 27, 2013) ......................... 11

*Guy v. Tanner,* No. 13 Civ. 6750, 2014 WL 2818684 (E.D. La. June 23, 2014) ................. 10, 11

*Haig v. Agee,*
    453 U.S. 280 (1981) .............................................................................................. 19

*Idowu v. Ridge,*
    No. 03 Civ. 1293, 2003 WL 21805198 (N.D. Tex. Aug. 4, 2003) ......................... 11

*KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner,*
   647 F. Supp. 2d 857 (N.D. Ohio 2009) ....................................................................... 17

*Mora v. United States,*
   955 F.2d 156 (2d Cir. 1992)......................................................................... 13, 20, 21

*New York ex rel. Schneiderman v. Actavis PLC,*
   787 F.3d 638 (2d Cir. 2015).............................................................................. 11

*Powell v. Fannie Mae,*
   No. 16-cv-1359 (LTS) (KNF), 2017 WL 712915 (S.D.N.Y. Feb. 2, 2017) ........................... 10

*Propper v. Clark,*
   337 U.S. 472 (1949) .......................................................................................... 18

*Regan v. Wald,*
   468 U.S. 222 (1984) .......................................................................................... 18

*Unicon Mgmt. Corp. v. Koppers Co.,*
   366 F.2d 199 (2d Cir. 1966)............................................................................... 10

*United States v. East Side Ophthalmology,*
   No. 95 Mag. 2424, 1996 WL 384891 (S.D.N.Y. July 9, 1996) ................................. 14

*United States v. Martinson,*
   809 F.2d 1364 (9th Cir. 1987).............................................................................. 8

*United States v. Quezada,*
   439 Fed. App'x 824 (11th Cir. 2011) .................................................................. 12

*Univ. of Tex. v. Camenisch,*
   451 U.S. 390 (1981) .......................................................................................... 10

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) .............................................................................................. 11

*Zurcher v. Stanford Daily,*
   436 U.S. 547 (1978) .......................................................................................... 13

***Statutes***

50 U.S.C. § 1701 ................................................................................................................ 4

***Rules***

Fed. R. Crim. P. 1(a)(1) ................................................................................................ 7, 11

Fed. R. Crim. P. 41 .................................................................................................... 11, 12

Fed. R. Crim. P. 41(b)-(f), (h), (i) ...................................................................................... 12

Fed. R. Crim. P. 41(g) ............................................................................................... *passim*

***Regulations***

31 C.F.R. § 589.201 ................................................................................................... 4, 5, 6

31 C.F.R. § 589.406 ........................................................................................................... 6

Defendants the United States Department of the Treasury, Office of Foreign Assets Control ("OFAC"); the Honorable Steven Mnuchin, in his official capacity as Secretary of the Treasury; and Andrea Gacki, in her official capacity as Director of OFAC (together, the "Defendants" or "Government"), respectfully submit this memorandum in opposition to Plaintiffs' "Motion for the Return of Unlawfully Seized Property" (the "Turnover Motion," ECF 29, with filing corrected at ECF 34).

## PRELIMINARY STATEMENT

The Turnover Motion seeks what Plaintiffs term the "return" by the Government of assets that they assert Defendants unlawfully "seized."  Their application is procedurally improper, and relies on a theory that is incorrect on multiple levels.  It therefore should be denied.

The parties' dispute stems from the designation by OFAC, in furtherance of Presidentially directed international economic sanctions, of a Russian national named Viktor Vekselberg as a "specially designated national," or "SDN," with the automatic result that all of Vekselberg's property and interests in property that were subject to U.S. jurisdiction were "blocked" as a matter of law.  What that means is that all such property and interests in property were required to be frozen in place and U.S. persons were barred from, among other things, selling, purchasing, transferring, or otherwise dealing in them.  OFAC did not identify or review specific affected assets to be blocked as a result of its designation of Vekselberg as an SDN; rather, all of Vekselberg's property and interests in property subject to U.S. jurisdiction were blocked as an automatic result of Vekselberg's designation.

Plaintiffs' objection is that this blocking action by OFAC has caused them to lose access to certain assets and payments that, but for the blocking action, allegedly would be due to them. Under pre-existing OFAC regulations and guidance that exists to create a bright-line rule regarding what constitutes "property and interests in property" of a sanctioned person in the

context of indirect ownership through a corporate entity, all property and interests in property of an entity that is 50 percent or more owned by a sanctioned person are considered blocked by operation of law.  This is widely referred to as the "50 Percent Rule."  Plaintiffs object that due to the operation of the 50 Percent Rule, they are unable to receive various types of payments from entities blocked by operation of law in which Plaintiffs allegedly hold minority ownership stakes or with which they have commercial relationships, and they assert that the impact on them of the blocking of Vekselberg's property and interests in property was an unlawful "seizure" as a result of which they are entitled to relief.

Through the Turnover Motion, Plaintiffs seek an order requiring the Government to "return" blocked assets under Rule 41(g) of the Federal Rules of Criminal Procedure ("Criminal Rule 41(g)").  As its name and placement within the Criminal Rules suggest, Criminal Rule 41(g) provides recourse for criminal defendants and others affected by criminal investigations and/or asset forfeitures; it has never been applied to regulatory decisions or in purely civil litigation, and it cannot properly or logically be applied in this context.  The Turnover Motion also should be denied because, contrary to the express requirements of Criminal Rule 41(g), the Turnover Motion was not brought in the district where the alleged seizure occurred.  Moreover, at a minimum, the Court should defer consideration of the motion until it first decides the Government's pending motion to dismiss, which, if granted, will resolve this action and render the motion moot.  The Turnover Motion improperly seeks the same ultimate relief that Plaintiffs seek in the lawsuit overall, and courts generally decline to impose such relief at a case's inception.  And the Turnover Motion seeks relief more accurately characterized as a preliminary injunction but does not even attempt to meet the stringent preliminary injunction standard.

Nor is there merit to Plaintiffs' motion even if the Court excuses its numerous procedural improprieties. Criminal Rule 41(g) authorizes requests for the "return" of unlawfully "seized" property in the very different context of criminal proceedings or investigations. This rule is inapplicable here for many reasons. First, the assets Plaintiffs seeks have not been "seized" as a matter of law, and Rule 41 allows relief only from seizures or the unreasonably protracted Government possession of seized property. Second, the designation of Vekselberg and the resulting block or freezing of his U.S.-tied property and interests in property are not "unlawful," and Rule 41 permits relief only as to *unlawfully* seized or possessed assets. And third, the assets that Plaintiffs seek to have "returned" never have been and are not now possessed by the United States; their blocking leaves title undisturbed and they continue to be possessed by the entities or individuals that possessed them when they became blocked.

Thus, the Turnover Motion should be denied.

## BACKGROUND

### A. Relevant Sanctions and 50 Percent Rule

The Government's memorandum of law in support of its motion to dismiss ("Def. MTD Mem.," ECF 36) details the legal authority for the sanctions at issue, and Defendants respectfully refer the Court to that legal description, which is not repeated fully in this memorandum. This memorandum, however, briefly summarizes key elements of the controlling law, as augmented by the declaration of Bradley T. Smith (the "OFAC Declaration"), which further explains the operations of sanctions as against all property and interests in property of Viktor Vekselberg that are subject to U.S. jurisdiction. These include the property and interests in property of entities that are majority-owned by Vekselberg, which give rise to Plaintiffs' complaint and motion.

Plaintiffs nowhere dispute the lawfulness of the President's sanction power under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*., nor that that power allows the President to "block . . . any acquisition, holding, withholding, use, transfer, withdrawal, . . . or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest. . . ." *Id.* § 1702(a)(1)(B).  Nor do Plaintiffs dispute that, in 2014, President Obama issued a series of Executive orders sanctioning certain persons or categories of persons in connection with events in Ukraine, with the legal consequence of blocking sanctioned persons' "property and interests in property" within the United States or possessed or controlled by any U.S. person.  *See generally* Compl. ¶¶ 29-32; 31 C.F.R. § 589.201.  Finally, they do not dispute that, in April 2018, Vekselberg and certain entities related to him were added to the SDN List under one of the 2014 Executive Orders, and that, as a result, Vekselberg's property and interests in property subject to U.S. jurisdiction were blocked.  The blocked property and interests in property include, pursuant to the 50 Percent Rule, the property and interests in property of entities in which he and/or one or more of his companies owned a 50 percent or greater ownership interest.  Compl. ¶¶ 2, 4.  These events are now confirmed by the OFAC Declaration.

When, as here, the Government imposes sanctions on an individual, the Government does not take any action with respect to any particular asset; rather, *all* of the sanctioned individual's property and interests in property that are subject to U.S. jurisdiction are "blocked" by operation of law.  OFAC Decl. ¶¶ 8, 11, 13.  The  ownership and possession of blocked property is not disturbed, and the United States does not take title to or possession of it.  OFAC Decl. ¶¶ 11-12.  Rather, title to the blocked property – which here, again, is all "property and interests in property" of Vekselberg that are subject to U.S. jurisdiction – remains with the target, but the

4

exercise of powers and privileges normally associated with ownership generally is prohibited without authorization from OFAC.  *Id.*  Blocking immediately imposes an across-the-board prohibition against "transfers or dealings of any kind with regard to the property."

https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx (posted 09/10/2002; *last visited* Sept. 17, 2019); OFAC Decl. ¶ 11.  The provision of services to a sanctioned person is also prohibited, unless authorized.  *See, e.g.*, Exec. Order ("E.O.") 13662 (2014), §§ 1(a) (blocking authority), 4 (interpreting blocking under section 1(a) to include a prohibition on services); 31 C.F.R. § 589.201 (Ukraine-related regulation applicable to Vekselberg incorporating these provisions); OFAC Decl. ¶ 14.

Further, even if a sanction is terminated or a license granted, the United States typically does not control the disposition of blocked property and interests in property.  OFAC Decl. ¶ 15. Typically, when a blocking is lifted, the property and interests in property that were blocked remain in the possession of whoever possessed them when they were blocked, and owned by whoever owned them when they were blocked, and that owner or possessor would retain the right to sell, transfer, or take other action with respect to such property and interests in property that it formerly possessed.   OFAC Decl. ¶ 15.

The 50 Percent Rule, focused on by Plaintiffs here, simply serves to make more clear and concrete what property and interests in property are blocked by operation of law as the property and interests in property of a blocked person like Vekselberg, by defining all assets that are 50 percent or more owned by a sanctioned individual or entity as "property" or "interests in property" of that party for purposes of sanctions programs.  OFAC Decl. ¶ 16.  This rule is important to provide clarity and predictability for the public and, particularly, for sanctioned individuals and for financial institutions, because the blocking of designated individuals'

property occurs as to all of the relevant individual's property and interests in property by operation of law based on the individual's designation, and is not promulgated on an asset-by-asset basis.  OFAC Decl. ¶¶ 16-17.  The rule is the subject of updated OFAC guidance issued in 2014, and codified in connection with the Ukraine-related sanctions program in relevant part at 31 C.F.R. § 589.406.  OFAC Decl. ¶ 16.[1]

Specifically as to Vekselberg and in keeping with these general practices, neither OFAC nor any other Government component made any asset-specific assessment of whether any of the Vekselberg-related entities mentioned in Plaintiffs complaint were in fact 50 percent or more owned by Vekselberg prior to Vekselberg's designation.  OFAC Decl. ¶ 26.  No property in which Plaintiffs allege they have an interest was blocked because of the possible existence of their minority ownership or commercial interests.  OFAC Decl. ¶ 29.  Rather, OFAC's designation of Vekselberg and Renova Group automatically resulted in the blocking of all of their property and interests in property as a matter of law, including assets at issue in this case pursuant to the 50 Percent Rule.  OFAC Decl. ¶ 30.  OFAC's effectuation of the Vekselberg SDN designation and OFAC's actions with respect to Plaintiffs' license applications occurred in Washington, D.C., and not in New York.  OFAC Decl. ¶ 31.

---

[1] The regulation states that a "person whose property and interests in property are blocked pursuant to § 589.201 has an interest in all property and interests in property of an entity in which it owns, directly or indirectly, a 50 percent or greater interest," and "[t]he property and interests in property of such an entity, therefore, are blocked, . . . regardless of whether the name of the entity is incorporated into OFAC's Specially Designated Nationals and Blocked Persons List."  31 C.F.R. § 589.406.  The 50 Percent Rule is generally applicable to OFAC-administered sanctions programs, and is described extensively on OFAC's website.  *See* https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx (last visited Sept. 17, 2019).

**ARGUMENT**

## I.     **Criminal Rule 41(g)'s Requirements**

As discussed below, Defendants are aware of no basis to apply Criminal Rule 41(g) in this case.  Plaintiffs cite no case in which that rule or its predecessors were used to attempt to obtain a supposed return of assets in response to an OFAC blocking action pursuant to sanctions regimes.  Nor are Defendants aware of cases applying Criminal Rule 41(g) in response to any other Government conduct not tied to the seizure or Government possession of property arising in the context of a criminal investigation or prosecution, or the asset forfeiture laws.  Rule 1 of the Criminal Rules states that "These rules" – that is, the Rules of Criminal procedure, including Criminal Rule 41(g) – "govern the procedure in all *criminal proceedings* in the United States district courts, the United States courts of appeals, and the Supreme Court."  Fed. R. Crim. P. 1(a)(1) (emphasis added).  This action is not a criminal proceeding; it is a civil action asserting claims under the Fourth and Fifth Amendments and the Administrative Procedure Act.  *See generally* Complaint (ECF 1).

As to the rule's requirements where it applies, Criminal Rule 41(g), which formerly was designated Rule 41(e),[2] provides in part: "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.  The motion must be filed in the district where the property was seized.  The court must receive evidence on any factual issue necessary to decide the motion."  Ordinarily, the rule is used to seek the return of seized property after an indictment has been issued.  *See Black Hills Institute v. Dept. of Justice,* 967 F.2d 1237, 1239 (8th Cir. 1992).  It nevertheless has been held in some

---

[2] *See De Almeida v. United States*, 459 F.3d 377, 380 n.2 (2d Cir. 2006) (former Rule 41(e) was moved to 41(g) without substantive change in 2002, and courts apply case law concerning former Rule 41(e) to the current Rule 41(g)).

circumstances that district courts have the power to entertain motions to return property that law enforcement officials seized even where there is no pending indictment or other criminal judicial proceeding, or where the person seeking the property is not a target of the criminal investigation. *See United States v. Martinson,* 809 F.2d 1364, 1366–67 (9th Cir. 1987) (entertaining motion for return of property seized by law enforcement at time when criminal investigation implicating movant had been abandoned).  The Second Circuit has held that, in the absence of a criminal proceeding, these motions can be treated as civil equitable proceedings, but courts exercise such jurisdiction "*only when there is no adequate remedy at law* and the equities favor the exercise of jurisdiction," with such jurisdiction "to be exercised with great restraint and caution *since it rests upon the court's supervisory power over the actions of federal law enforcement officials*."  *De Almeida*, 459 F.3d at 382 (internal punctuation and citations omitted; emphasis added).

Where the rule applies and under its plain terms, Rule 41(g) permits the "return" of property subject to a motion if there has been an "unlawful search and seizure of property" or if the movant has suffered "deprivation of property."  Fed. R. Crim. P. 41(g); *see also* Advisory Committee Notes to 1989 Amendments to Rule 41 ("a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it").  The rule requires the application for relief to be made in the district where the seizure occurred.  Fed. R. Crim. P. 41(g).  "No standard is set forth in the rule to govern the determination of whether property should be returned to a person aggrieved," and "reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property."  Advisory Committee Notes to 1989 Amendments to Criminal Rule 41.  Further, "[i]f the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable."  *Id.*

## II.     The Turnover Motion Should Be Denied Because There Is No Showing the "Property Was Seized" in This District

As a threshold yet dispositive matter, Criminal Rule 41(g) expressly requires that the motion authorized by the Rule be brought in the district where the "property was seized." Plaintiffs' memorandum in support of the Turnover Motion (ECF 30) nowhere addresses the location of the "property" sought to be returned, and it characterizes "OFAC" as effectuating the supposed seizure. *See* Pl. Mem. at 3 ("By blocking the Investment Funds in their entirety without regard for the ownership interests or the rights of U.S. persons, such as the Plaintiffs, OFAC seized Plaintiffs' property."). OFAC is a component of the United States Department of the Treasury, and is located primarily in Washington, D.C., and not at all in New York. *See* OFAC Decl. ¶ 5. Nor did OFAC's effectuation of Vekselberg's SDN designation, the resulting blocking of his property and interests in property, or OFAC activity in connection with Plaintiffs' license applications occur in New York. OFAC Decl. ¶ 31.

Thus, the actions that Plaintiffs contend constituted a "seizure" occurred in Washington, not in this District. Criminal Rule 41(g)'s plain language therefore requires denying the motion as improperly brought here.

## III.     The Turnover Motion Improperly Seeks to Expedite Determination of the Ultimate Relief Sought in the Complaint

The Turnover Motion should also be denied on the ground that it prematurely and improperly seeks the ultimate relief that Plaintiffs seek in this civil lawsuit, thereby improperly attempting to short-circuit Defendants' right to have their pending motion to dismiss resolved before they must further litigate the merits of the action if their motion is denied. Specifically, the Complaint seeks relief including an order requiring "Defendants to unblock or otherwise return Plaintiffs' property interests pursuant to . . . Rule 41(g) . . . ." Compl. at 57, Prayer for

9

Relief ¶ d.  The Turnover Motion seeks substantially identical relief, namely, under the purported

authority of Criminal Rule 41(g), "that the Court order Defendants to return Plaintiffs'

unlawfully seized property."  Pl. Turnover Mem. at 14.

By seeking an immediate return of property at the case's inception, before the Court has

even had an opportunity to determine the legal sufficiency of the Complaint, the Turnover

Motion in essence seeks a preliminary injunction without addressing the high standard for such

relief, and improperly inverts the fundamental purpose of preliminary injunctive relief, which is

"merely to preserve the relative positions of the parties until a trial on the merits can be held."

*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also, e.g.*, *Granny Goose Foods, Inc.*

*v. Teamsters*, 415 U.S. 423, 439 (1974) (temporary restraining orders "should be restricted to

serving their underlying purpose of preserving the status quo and preventing irreparable harm

just so long as is necessary to hold a hearing, and no longer."); *Unicon Mgmt. Corp. v. Koppers*

*Co.*, 366 F.2d 199, 204 (2d Cir. 1966) ("It is hornbook law that 'the general purpose of a

preliminary injunction is to preserve the status quo pending final determination of the action.'").

Instead of seeking to preserve the status quo, for example by barring dissipation or

relocation of the blocked assets at issue, the Turnover Motion asks this Court to upend the status

quo by granting the very relief Plaintiffs seek through this action—what they characterize as the

return of their proportional shares of cash held by blocked Vekselberg-owned entities and the

payment of various obligations to them by those blocked entities.  That is not proper.  *See, e.g.*,

*Powell v. Fannie Mae*, No. 16-cv-1359 (LTS) (KNF), 2017 WL 712915, at *2 (S.D.N.Y. Feb. 2,

2017) (R&R) (the "purpose of a preliminary injunction is to preserve the status quo between the

parties pending a full hearing on the merits," and such injunctive relief "is improper where it

would give the plaintiff substantially all the ultimate relief [he] seeks"); *Guy v. Tanner*, No. 13

10

Civ. 6750, 2014 WL 2818684, at *3 (E.D. La. June 23, 2014) ("Guy's motion is no more than a veiled attempt to expedite the resolution of his habeas petition.  This is not a proper basis for issuing an injunction."); *Guthrie v. Niak*, No. 12 Civ. 1761, 2013 WL 5487936, at *6 (S.D. Tex. Sep. 27, 2013) ("Moreover, it appears Plaintiff is merely trying to expedite the relief sought in his Complaint."); *Idowu v. Ridge*, No. 03 Civ. 1293, 2003 WL 21805198, at *6 (N.D. Tex. Aug. 4, 2003) (same).

Moreover, a "preliminary injunction is an extraordinary remedy that is never awarded as of right."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  And where a party seeks an injunction that alters the status quo, such as here, the Second Circuit has placed a heightened burden on the moving party to demonstrate entitlement to the relief sought.  *See New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) ("[T]he movant must show a 'clear' or 'substantial' likelihood of success on the merits, and make a 'strong showing' of irreparable harm, in addition to showing that the preliminary injunction is in the public interest." (internal citations omitted)).

Plaintiffs cannot meet this heightened burden.  Nor can they show even a likelihood of success on the merits, as the Complaint fails to state a cause of action, for reasons set forth in Defendants' motion to dismiss.

## IV.     The Turnover Motion Fails Because Criminal Rule 41(g) Is Inapplicable in This Civil Proceeding

The Turnover Motion also should be denied because Criminal Rule 41(g) is inapplicable in this civil proceeding.

As noted above, Federal Rule of Criminal Procedure 1 explains that "[t]hese rules" – that is, the Federal Rules of Criminal Procedure – "govern the procedure in all criminal proceedings" in the federal courts.  Fed. R. Crim. P. 1(a)(1).  Criminal Rule 41 governs, and is titled, "Search

11

and Seizure." Fed. R. Crim. P. 41.  The rule covers topics such as where, how, and before whom warrant applications are to be filed; standards and procedures for issuing, executing, and returning the warrant; and motions to quash warrants.  Fed. R. Crim. P. 41(b)-(f), (h), (i).  Criminal Rule 41(g), by virtue of its placement within the Criminal Rules and specifically within Criminal Rule 41, clearly is intended to govern the protection of persons whose property is seized in connection with a criminal proceeding or investigation – and not in a civil proceeding that does not originate in a criminal investigation involving warrants or law enforcement seizures.  *Cf. United States v. Quezada,* 439 Fed. App'x 824, 827 (11th Cir. 2011) (finding that Rule 41(g) motion is "not the appropriate means of challenging" property forfeited in an administrative action).

Plaintiffs cite no case, and the Government is aware of none, in which Criminal Rule 41(g) was used to challenge the direct result of an OFAC designation, such as the blocking of property.[3]  More generally, Plaintiffs cite no civil case unrelated to criminal law enforcement in which Criminal Rule 41(g) was applied, and, again, the Government is aware of none.  The Advisory Committee notes to Rule 41 make clear that the rule is designed to apply in connection with law enforcement searches and seizures.  The rule, then termed Criminal Rule 41(e), was broadened in the 1980s to provide protections for persons who were the subject of warrants yet were not themselves "suspected of criminal activity."  *See* Advisory Committee Note re: 1989

---

[3] The Government is aware of one 1989 district court case, not cited by Plaintiffs, in which then-Criminal Rule 41(e) was used to successfully seek the return of Cuban artworks that had been seized "pursuant to duly executed warrants" by a law enforcement agency, the United States Customs Service, where the artworks may have been blocked pursuant to OFAC-issued sanctions.  *See Cernuda v. Heavey*, 720 F. Sup. 1544, 1546 (S.D. Fla. 1989).  Here, unlike in *Cernuda*, there has been no issuance or execution of a warrant for the property at issue, nor has the property ever been taken into Government custody.  OFAC Decl. ¶ 24.

Amendments to Rule 41 (noting Supreme Court precedent[4] authorizing warrants for seizure of property from persons not suspected of criminal activity and conforming Rule's language to need to protect such persons).  Thus, "[a]s amended, Rule 41(e) provides that an aggrieved person may seek return of property that has been unlawfully seized, and a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it."  *Id.*  Importantly, however, these modifications were all developed and justified in the context of seizures in the criminal law enforcement context, and integrated into the procedures applicable to such investigations and prosecutions.

The case law cited by Plaintiffs to suggest that Criminal Rule 41(g) can apply in the civil context actually shows that the rule does not apply here, or in remotely similar circumstances. They prominently cite *Mora v. United States*, 955 F.2d 156, 158 (2d Cir. 1992), for the proposition that a "motion for the return of property is treated as [a] civil equitable proceeding." Pl. Mem. (ECF 30) at 6.  But *Mora* was brought, post-trial, by a *criminal*-case defendant and was decided in the exercise of the district court's *criminal-case jurisdiction*.  *Mora*, 955 F.2d at 157-58 (government initially asserted that Rule authorized only applications for return of property "prior to conviction," but district court on reconsideration and government on appeal took view that district court "had jurisdiction – ancillary to its jurisdiction over the criminal case – to decide this post-trial motion for the return of seized property").  While *Mora* also (relying on Ninth Circuit and other precedent) recognized that such an application could be "treated as [a] civil equitable proceeding" if "no criminal proceedings against the movant are pending," *id.* at 158 (alteration in original), that procedural observation immediately followed the Court's observation that the court had ancillary *criminal* jurisdiction over the proceeding, and was in the context of

---

[4] *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978).

allowing a criminal defendant not to lose the right to seek the return of his property merely because his criminal prosecution had ended.  *Id.*  *Mora* thus provides no support for allowing the use of Criminal Rule 41(g) in a civil proceeding that is unrelated to a criminal prosecution or investigation.

The only other case cited in the main text of Plaintiffs' memorandum seemingly to support applying Criminal Rule 41(g) here is an unreported 1996 decision issued in a proceeding in this district's Magistrate Court seeking the return of property that had been "seized by the government . . . pursuant to three search warrants issued by" a Magistrate Judge.  *United States v. East Side Ophthalmology*, No. 95 Mag. 2424, 1996 WL 384891 (S.D.N.Y. July 9, 1996).  And while Plaintiffs accurately quote *East Side Ophthalmology* as observing that "there is no justification for providing unindicted persons with less procedural protection than accorded those under indictment," Pl. Mem. (ECF 30) at 6, the Court's observation had nothing to do with authorizing persons unconnected to a criminal investigation and search to obtain relief under Criminal Rule 41(g) or its predecessor.  Rather, as the Court observed in the very next sentence, the fact that the movant had not yet been indicted did not preclude relief for an unindicted person whose property was seized pursuant to a warrant (although relief ultimately was denied on the merits) because "the amendment of Rule 41(e) in 1972 clearly indicates that the Rule [was] intended . . . to provide a pre-indictment procedure for the return of property."  1996 WL 384891 at *4.

In a footnote, Plaintiffs also characterize the Second Circuit in *De Almeida* at authorizing equitable relief where "there is no adequate remedy at law and the equities favor the exercise of jurisdiction."  Pl. Mem. (ECF 30) at 6 n.7 (quoting *De Almeida*, 459 F.3d at 382).  As noted *supra*, however, that passage from *De Almeida* does not give a blanket authorization for

equitable proceedings under Criminal Rule 41(g) untethered to the existence of a governmental seizure of property in a criminal proceeding or investigation.  Rather, *De Almeida* authorized use of the court's equitable powers ancillary to a criminal forfeiture matter to consider a "post-indictment third-party claim to forfeited property."  459 F.3d at 381.  Even though *De Almeida* squarely involved a demand for the return of property that had been seized during a criminal investigation, the Circuit cautioned (in a passage not acknowledged by Plaintiffs) that such jurisdiction "is to be exercised with great restraint and caution since it rests upon the court's supervisory power over the actions of federal law enforcement officials."  *Id.* at 382.  This Court's law enforcement supervision is plainly not implicated here, where the alleged seizure did not occur in a law enforcement context but rather under the President's emergency powers pursuant to IEEPA.

And, while Plaintiffs attempt to distinguish numerous cases refusing to consider equity-based applications under Criminal Rule 41(g) "where the movant had the opportunity to contest a continuing seizure in an ongoing or future criminal or civil forfeiture proceeding," Pl. Mem. at 6 n.7 (citing cases), those cases all underscore that the entire Criminal Rule 41(g) regime is grounded in, and limited to, protecting individuals' rights in connection with law enforcement investigations and proceedings.  The Court also should not credit Plaintiffs' statement that, unlike those cases, here Plaintiffs "have no such opportunity for relief in another proceeding." Pl. Mem. 6 n.7.  They have brought this lawsuit, which is another proceeding in which they assert entitlement to relief, and even if Defendants are correct that they fail to state a claim in this lawsuit, they are entitled to seek relief through license applications, and, if those applications are denied or unreasonably delayed, by bringing suit under the APA.  *See generally* ECF 36 ("Def. MTD Mem.").  And it would be turning logic on its head to deem the Government's non-

criminal-context actions here to be subject to the Criminal Rules, yet simultaneously to say that the lack of an ongoing or future criminal proceeding establishes that Plaintiffs have no available legal recourse such that they are entitled to proceed under Criminal Rule 41(g).  Thus, Plaintiffs do not establish, as *De Almeida* requires, that they have no adequate remedy at law and the equities favor the exercise of jurisdiction.  And even if they did show that were the case, Criminal Rule 41(g) would not be a proper basis to provide relief in this non-criminal context.

The illogic of Plaintiffs' application is confirmed by their articulation of the supposedly-applicable standard of review.  Pl. Mem. at 6 (asserting that movants under Rule 41(g) are entitled to relief "where (1) the seizure of the property was illegal or the government has no need for it as evidence; (2) the movant is entitled to lawful possession of the seized property; and (3) the property is not contraband." (citing cases from criminal-context Rule 41(g) motions)).  Whether the Government has need for the property at issue as "evidence" self-evidently protects prosecutors' ability to use seized items in forthcoming criminal proceedings, and has no application to the effects of sanctions.  Nor is the Government here holding any property for any reason, much less for possible use as evidence in a criminal proceeding.  Nor, given the lack of any asset-specific determinations by the Government or criminal-context actions against any particular asset, does it make sense to inquire whether any particular blocked property is "contraband."  Pl. Mem. 13.  Rather, the test advanced by Plaintiffs simply confirms that Criminal Rule 41(g) serves uniquely criminal-law purposes, and does not apply here.

Of course if the Criminal Rule were to be applied in this novel context for which it was not intended, a different test suited to the situation at hand would need to be developed and applied.  As the Advisory Committee Notes to Rule 41 explain, the rule sets forth "[n]o standard . . . to govern . . . whether property should be returned," and "reasonableness under all of the

circumstances must be the test when a person seeks to obtain the return of property."  Advisory

Committee Notes to Criminal Rule 41 1989 Amendments.  As explained below, and although the

Court need not reach the issue, the Government actions would survive review under such a

reasonableness test.

### V.       The Turnover Motion Fails on the Merits Because the Blocking of Assets as a Matter of Law Resulting from Vekselberg's SDN Designation Is Not a "Seizure"

The Government's motion to dismiss extensively discusses why, as a matter of law, a

blocking of assets due to OFAC's designation of an SDN such as Vekselberg does not effect a

"seizure."  *See* Def. MTD Mem. (ECF 36) Point II.  Because Criminal Rule 41(g) by its own

terms authorizes relief only as to property that has been subject to "seizure," the fact that no

seizure has occurred is fatal to the Turnover Motion.

Disregarding the substantial body of case law holding that blocking effected pursuant to

OFAC sanctions measures does not effect a seizure, *see* Def. MTD Mem. at 16-18, Plaintiffs rely

on the two distinguishable decisions that considered a blocking of property to constitute a

seizure.  *See* Pl. Mem. 8 (citing *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*,

647 F. Supp. 2d 857, 872 (N.D. Ohio 2009), and *Al Haramain Islamic Found., Inc. v. U.S. Dep't

of the Treasury*, 686 F.3d 965, 990-95 & n.17 (9th Cir. 2012)).  But those cases, while in the

Government's view wrongly decided, also do not support the existence of a seizure here, because

both concerned the direct imposition of sanctions by OFAC on a U.S.-based organization.  *See*

Def. MTD Mem. 17-20.  In fact, the Ninth Circuit, while denying reconsideration in *Al

Haramain*, wrote to make clear that its decision was limited to the facts before it – specifically,

"OFAC's original designation order" that designated a U.S.-based organization a sanctioned

terrorist or SDN, while "we do not address whether a warrant is required for subsequent orders."

*Al Haramain*, 686 F.3d at 970.  And, while Plaintiffs attempt to distinguish cases holding that

blocking does not affect a seizure as wrongly applying Fifth Amendment takings principles whereas the Fourth Amendment concerns only a "possessory interest," Pl. Mem. 9 n. 9, Plaintiffs ignore that OFAC does not possess the assets at issue, but has merely, by designating Vekselberg as an SDN, caused by automatic operation of law the "blocking" of all his property and interests in property within U.S. jurisdiction, meaning that the property and interests in property were frozen in place wherever they were upon the imposition of sanctions.  *See* OFAC Decl. ¶¶ 23-24, 30.

### VI.    The Turnover Motion Also Fails on the Merits Because OFAC's Designation of Vekselberg and the Resulting Blocking of Assets Were Not "Unlawful"

For decades, courts have recognized and approved the President's power to impose sanctions through OFAC designations in furtherance of executive orders.  *See generally* Def. MTD Mem. 15-17 (citing cases).  In particular, the Supreme Court has long upheld statutes by which "the nation sought to deprive enemies, actual or potential, of the opportunity to secure advantages to themselves or to perpetrate wrongs against the United States . . . through the use of assets that happened to be in this country."  *Propper v. Clark*, 337 U.S. 472, 481 (1949).  The Court has recognized that such measures are permissible even though they have "necessitated some inconvenience to our citizens and others who . . . are not involved in any actions adverse to the nation's interest."  *Id.*  Thus, despite repeated and varied challenges, courts have repeatedly upheld OFAC-administered sanctions regimes as lawful.  *See, e.g.*, *Dames & Moore v. Regan*, 453 U.S. 654, 674 (1981) (upholding President's power to nullify attachments of blocked Iranian funds and to suspend claims of American nationals against Iran); *see also generally Regan v. Wald*, 468 U.S. 222, 232-33 (1984).

The blocking of Vekselberg's property and interests in property, including those in which Plaintiffs own a minority share or from which they have an expectation of payment, also is

lawful because, even if it constitutes a "seizure" (which it does not), that blocking is reasonable and therefore lawful under the Fourth Amendment.  Defendants respectfully refer the Court to an extensive discussion of this reality in their memorandum supporting their motion to dismiss.  *See* Def. MTD Mem. 20-24.  In brief, the Fourth Amendment bars only "unreasonable" seizures, and an action will be deemed reasonable "as long as the circumstances, viewed objectively, justify the action." *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) (quotation marks, citation, and alteration omitted).  The national-security and foreign-relations purposes of effective sanctions regimes are of the utmost importance, *see Haig v. Agee*, 453 U.S. 280, 307 (1981), and the blocking of property can only occur as a result of an exhaustive and painstaking process including a Presidential declaration of a national emergency and the identification and application of legal criteria for the blocking, which are evaluated through interagency consultations.  *See* Def. MTD Mem. 21 (citing controlling statute and executive order). Meanwhile, while Plaintiffs may well be experiencing some financial hardship or inconvenience as a result of the blocking of Vekselberg's assets, that inconvenience is temporary, can be mitigated through the OFAC licensing process through which Plaintiffs have already had some success, and, at any rate, is outweighed by the public importance of the program.

These considerations alone make the effects of Vekselberg's designation "reasonable" (and also preclude a determination under the preliminary injunction standard that equitable factors favor the relief sought).  Moreover, the same considerations establish that the Fourth Amendment's "special needs" exception applies.  *See* Def. MTD Mem. 22-24.  That exception applies where (1) the primary purpose of the search or seizure is beyond ordinary criminal law enforcement, and (2) the circumstances make the Fourth Amendment's ordinary warrant and probable cause requirements impracticable.  *See Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987);

19

*Chandler v. Miller*, 520 U.S. 305, 313 (1997).  The designation of Vekselberg and resulting blocking of his assets is not the enforcement of the criminal laws, and it would be impracticable to require an asset-by-asset warrant before giving effect to the blocking of each and every one of Vekselberg's sprawling assets.  *Contrast Al Haramain*, 686 F.3d at 970 (limiting holding to narrow context of "OFAC's seizure of assets as a result of its designation order of a United States entity located within the United States" where the assets in question were owned by the primary target of sanctions and that target could easily be given notice and a hearing).

### VII.    The Turnover Motion Also Fails on the Merits Because the United States Does Not Possess Plaintiffs' Property and Therefore Cannot Return It

Finally, the Turnover Motion also fails because the Government does not possess – and never has possessed – any of Vekselberg's blocked property.  OFAC Decl. ¶ 24.  As its plain terms reflect and as explained above, Criminal Rule 41(g) is designed to protect persons under criminal investigation and others who are subject to searches and seizures incident to criminal investigations.  "Returning" property to a lawful possessor necessarily entails delivery by the Government as a current possessor of the seized property in question.  The Government's lack of possession of blocked property thus makes the rule inapplicable.

The Second Circuit's decision in *Mora* tests the outer limits of Rule 41, and is illustrative.  In *Mora*, the Government had seized property from the hotel room of an arrested person, including cash, a passport, an airline ticket, and a variety of personal effects.  955 F.2d at 157.  The individual sought return of his property under Rule 41, but the property "turn[ed] out to be missing" despite having been taken into Government custody at the time of Mora's arrest. *Id.*  The Government contended that the property's return was therefore impossible.  *Id.*  The district court agreed.  *Id.*

The Circuit reversed but for reasons that do not apply here, and that do not disturb the general proposition that the Government cannot return that which it never had and still does not have.  First, the Circuit faulted the Government for not submitting "any evidence concerning the disposition of Mora's property," 955 F.2d at 158, and for instead merely relying on an incomplete and unreliable representation that "fail[ed] to account for all of the personalty," such that additional findings about "whether the government actually retains possession" was required, as was a finding regarding "what happened to it" if the Government no longer possessed it.  *Id.* at 158-59.  Further, the Circuit held that, because the Government undisputedly initially took and had custody of Mora's property, its subsequent loss did not deprive the Court of jurisdiction to fashion appropriate "equitable relief," including "damages incident to the complaint."  *Id.* at 159.  This entire judicial inquiry was conducted "ancillary to [the district court's] jurisdiction over the criminal case."  *Id.* at 158.

Here, by contrast, there *is* no criminal proceeding that can provide the Court with "ancillary jurisdiction" to consider a Criminal Rule 41 motion.  And the Government cannot effectuate a "return" of property as contemplated by Criminal Rule 41 because it does not have, and never has possessed, the property whose supposed "return" the Turnover Motion seeks.

## CONCLUSION

The Court should deny Plaintiffs' Turnover Motion.

21

Dated:   New York, New York
         October 21, 2019

                                    Respectfully submitted,

                                    GEOFFREY S. BERMAN
                                    United States Attorney for the
                                    Southern District of New York
                                    *Attorney for Defendants*

                          By:    /s/ *David S. Jones*
                                 _____
                                 DAVID S. JONES
                                 Assistant United States Attorney
                                 86 Chambers Street, Third Floor
                                 New York, New York  10007
                                 Telephone:  (212) 637-2739
                                 Facsimile:   (212) 637-2750