# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

US VC PARTNERS GP LLC, *et al.*,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
THE TREASURY, OFFICE OF FOREIGN
ASSETS CONTROL, *et al.*,

    Defendants.

Civil Action No. 1:19-06139 GBD

## DECLARATION OF BRADLEY T. SMITH

### Introduction

I, Bradley T. Smith, hereby declare as follows:

1. I am the Deputy Director of the Office of Foreign Assets Control ("OFAC") at the United States Department of the Treasury ("Treasury"). I have served in this position since November 2018, and immediately prior served as the Acting Deputy Director of OFAC since May 2018. From August 2013 to May 2018, I was the Chief Counsel for Foreign Assets Control at Treasury. Prior to joining Treasury, I served as a Deputy Legal Adviser to the National Security Council at the White House. Prior to that, I held the position of Senior Counsel to the Deputy Attorney General, where my portfolio focused on national security issues. I have also served as an Attorney-Adviser at the Office of Legal Counsel, Department of Justice.

2. As Deputy Director, I supervise all aspects of OFAC's operations, including the development and implementation of sanctions polices, decisions to authorize otherwise prohibited activity, civil enforcement actions and investigations, and the selection and

1

designation of sanctions targets. I make this declaration based upon information within my personal knowledge or provided to me in my official capacity.

3. I have been made aware of the "Motion for the Return of Unlawfully Seized Property" filed by the plaintiff in this action. This declaration is made in connection with Defendants' opposition.

## OFAC's Mission and Authority

4. OFAC is principally responsible for administering U.S. economic sanctions programs on behalf of the U.S. government. These programs are primarily directed against foreign states and nationals and intended to implement U.S. foreign policy and national security goals. Pursuant to authority delegated by the President to the Secretary of the Treasury, OFAC acts under presidential wartime and peacetime national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and to freeze, or "block," certain property and interests in property within the United States or in the possession or control of U.S. persons. OFAC currently administers approximately 30 economic sanctions programs against foreign governments, entities, and individuals.

5. OFAC is headquartered in Washington, D.C., and the office and its Director perform the majority of their official duties in Washington, D.C. The Department of the Treasury is also headquartered in Washington, D.C., and the Department and the Secretary of the Treasury perform the majority of their official duties in Washington, D.C.

## Blocking Pursuant to IEEPA

6. The International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 – 06 (IEEPA), grants the President a broad spectrum of powers to deal "with any unusual and

extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a); *see also* 50 U.S.C. § 1702(a). The President has exercised these powers through, among other things, executive orders that impose economic sanctions to address particular emergencies. Most of OFAC's economic sanctions programs are administered under the authority of IEEPA and various Executive orders.

7. In addition to articulating a particular threat in an executive order declaring a national emergency or imposing measures in response to a national emergency, the President may also identify specific countries, entities, or individuals as subject to sanctions in an executive order. Executive orders imposing sanctions may also set standards for subjecting additional entities and individuals to the sanctions authorized by the executive order in the future. If an individual or entity is made subject to IEEPA blocking sanctions pursuant to an executive order, then that person or entity is referred to as "designated" under that particular program. The name and other identifying information of the designated individual or entity is also added to OFAC's List of Specially Designated Nationals and Blocked Persons ("SDN List"), which is maintained on OFAC's website. As noted above, the President generally delegates the task of determining who meets the standards for designation under an executive order to a department within the executive branch, usually Treasury. Within Treasury, this authority is further delegated to OFAC.

8. IEEPA executive orders typically direct the blocking of property and property interests of a designated person that are within the United States or within the possession or

3

control of U.S. persons, wherever located. The property and property interests blocked by OFAC pursuant to an Executive order may not be transferred, paid, exported, withdrawn, or otherwise dealt in by U.S. persons without OFAC's prior authorization. OFAC interprets the term "interest" to include a property interest of any nature whatsoever, direct or indirect. *See, e.g.*, 31 C.F.R. § 589.304 (definition of "interest" in the Ukraine Related Sanctions Regulations, 31 C.F.R. Part 589 (URSR)). OFAC's regulations define "property" and "property interest" broadly to include, among other things, financial instruments, liens or other rights in the nature of security, powers of attorney, deeds of trust, options, negotiable instruments, judgments, services of any nature whatsoever, contracts of any nature whatsoever, and any other property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future, or contingent. 31 C.F.R. § 589.308 (definition of "property; property interest" in the URSR).

9. Blocking actions can serve a number of objectives. For example, a blocking can deprive the designated person of the benefit of its property, including services, that might otherwise be used to further ends that conflict with U.S. interests, prevent the sanctioned person from receiving the economic benefits of transactions with U.S. persons or in the United States, and limit the flow of hard currency or goods to or for the benefit of that sanctioned person. The blocking of assets may also preserve them as leverage or a negotiating tool for use in resolving the national emergency that gave rise to the blocking.

10. OFAC typically does not provide prior notice of a pending investigation or impending blocking action. If persons learn that they are subjects of an ongoing sanctions investigation, there is significant risk that they would transfer, hide, sell, or destroy assets that

4

could be blocked, destroy or alter records relevant to the investigation, or otherwise frustrate or obstruct the investigation before the it—and the potential blocking of assets—can be completed.[1]

11. When property is blocked, title to the blocked property remains with the target, but the exercise of powers and privileges normally associated with ownership is prohibited without authorization from OFAC. Blocking immediately imposes an across-the-board prohibition against transfers or dealings of any kind with regard to the property. *See* OFAC Frequently Asked Question No. 9.

12. Blocked property is not transferred to OFAC, but rather held by the U.S. persons who have custody or possession of the property at the time it is blocked and are required to block such property and interests in property. Banks and other financial institutions play an important role in this regard, as a substantial part of the property subject to blocking under OFAC's authorities consists of bank accounts, funds transfers, and other financial assets. All U.S. persons who hold blocked property are required to report the blocking of such property to OFAC. *See* 31 C.F.R. § 501.603. U.S. persons required to block funds, such as currency or

---

[1] With regard to designations made pursuant to Executive Order 13662, the President stated:

> For those persons whose property and interests in property are blocked pursuant to this order who might have a constitutional presence in the United States, I find that because of the ability to transfer funds or other assets instantaneously, prior notice to such persons of measures to be taken pursuant to this order would render those measures ineffectual. I therefore determine that for these measures to be effective in addressing the national emergency declared in Executive Order 13660, and expanded in Executive Order 13661 and this order, there need be no prior notice of a listing or determination made pursuant to section 1 of this order.

E.O. 13662, Sec. 7.

bank deposits, must hold or place such funds in a blocked, interest-bearing account located in the United States. *See, e.g.*, 31 C.F.R. § 589.203.

13.     Generally, when OFAC designates a person—thereby blocking the property and interests in property of that person—OFAC does not identify specific property of the person that must be blocked because OFAC is not aware of all the potential property and interests in property a designated person may have in the United States or that are in the possession or control of U.S. persons. Instead, OFAC relies on U.S. persons in possession or control of such property to identify it block it.

14.     The provision of services to a sanctioned person is also generally prohibited, unless authorized by OFAC. *See, e.g.*, E.O. 13662, Sec. 1(a) (blocking authority), Sec. 4 (interpreting blocking under section 1(a) to include a prohibition on services); 31 C.F.R. § 589.201 (URSR section incorporating these provisions).

15.     Even if a sanction is terminated or a license granted, the United States typically does not control the disposition of blocked property and interests in property. Typically, when a blocking is lifted, the property and interests in property that were blocked remain in the possession of whoever possessed them when they were blocked; likewise the property and interests in property remain owned by whoever owned them when they were blocked, and that owner or possessor would be the sole party who would be able to sell, transfer, or take other action with respect to such property and interests in property.

## OFAC's 50 Percent Rule

16.     In August 2014, OFAC issued revised guidance to assist U.S. persons in identifying blocked property and interests in property. The August 2014 revision provided

6

further guidance on an interpretation used by OFAC since 2008, and which has become known as OFAC's "50 Percent Rule." The August 2014 guidance, which is still in effect today, clarified OFAC's interpretation of property and interests in property in the context of property and interests in property held by entities in which blocked persons have interests. It stated that:

> Persons whose property and interests in property are blocked pursuant to an Executive order or regulations administered by OFAC (blocked persons) are considered to have an interest in all property and interests in property of an entity in which such blocked persons own, whether individually or in the aggregate, directly or indirectly, a 50 percent or greater interest. Consequently, any entity owned in the aggregate, directly or indirectly, 50 percent or more by one or more blocked persons is itself considered to be a blocked person. The property and interests in property of such an entity are blocked regardless of whether the entity itself is listed in the annex to an Executive order or otherwise placed on OFAC's list of Specially Designated Nationals . . . . Accordingly, a U.S. person generally may not engage in any transactions with such an entity, unless authorized by OFAC.

Revised Guidance on Entities Owned by Persons Whose Property and Interests in Property Are Blocked (August 13, 2014), *available at* https://www.treasury.gov/resource-center/sanctions/Documents/licensing_guidance.pdf. *See also* 31 C.F.R. § 589.406. Put simply, OFAC's 50 Percent Rule means that all assets of an entity in which a blocked person has a 50 percent or greater interest are blocked.

17. As mentioned above, OFAC relies on U.S. persons to effectuate blockings under its sanctions programs. The 50 Percent Rule provides bright-line guidance to U.S. persons of when a blocked person's ownership interest in an entity renders the entity itself, and the entity's property and interests in property, blocked. Under the 50 Percent Rule, the threshold ownership interest is 50 percent or greater, in the aggregate.

## Executive Order 13662 and the Blocking of Viktor Vekselberg

18. Following Russia's intervention in Crimea, President Obama issued Executive Order 13660 of March 6, 2014, in which he found that "the actions and policies of persons including persons who have asserted governmental authority in the Crimean region without the authorization of the Government of Ukraine that undermine democratic processes and institutions in Ukraine; threaten its peace, security, stability, sovereignty, and territorial integrity; and contribute to the misappropriation of its assets, constitute an unusual and extraordinary threat to the national security and foreign policy of the United States," and declared a national emergency to deal with that threat. E.O. 13660.

19. Ten days later, on March 16, 2014, President Obama issued a second Executive order to expand upon the scope of the national emergency declared in E.O. 13660, "finding that the actions and policies of the Government of the Russian Federation with respect to Ukraine— including the recent deployment of Russian Federation military forces in the Crimea region of Ukraine—undermine democratic processes and institutions in Ukraine; threaten its peace, security, stability, sovereignty, and territorial integrity; and contribute to the misappropriation of its assets, and thereby constitute an unusual and extraordinary threat to the national security and foreign policy of the United States." E.O. 13661.

20. Four days later, on March 20, 2014, President Obama issued a third Executive order to further expand upon the scope of the national emergency declared in E.O. 13660 and expanded by E.O. 13661, "finding that the actions and policies of the Government of the Russian Federation, including its purported annexation of Crimea and its use of force in Ukraine, continue to undermine democratic processes and institutions in Ukraine; threaten its peace,

security, stability, sovereignty, and territorial integrity; and contribute to the misappropriation of its assets, and thereby constitute an unusual and extraordinary threat to the national security and foreign policy of the United States." E.O. 13662.

21. E.O. 13662 blocks all property and interests in property within the United States or in the possession or control of U.S. persons, including foreign branches, of persons determined to be subject to the order, including any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, to operate in such sectors of the Russian Federation economy as may be determined by the Secretary of the Treasury, in consultation with the Secretary of State (Sec. 1(a)(i)), and persons determined to be owned or controlled by, or to have acted or purported to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to E.O. 13662 (Sec. 1(a)(iii)).

22. On July 14, 2014, the Secretary of the Treasury, in consultation with the Secretary of State, determined that Section 1(a)(i) of E.O. 13662 should apply to the energy sector of the Russian Federation economy, and that any person the Secretary of the Treasury or his designee subsequently determined, in consultation with the Secretary of State, operates in the energy sector, should be subject to the sanctions pursuant to Section 1(a)(i) of E.O. 13662. 79 Fed. Reg. 63024.

23. On April 6, 2018, OFAC designated Viktor Vekselberg ("Vekselberg") pursuant to Section 1(a)(i) of E.O. 13662 for operating in the energy sector of the Russian Federation economy. On the same day, OFAC also designated the entity Renova Group, pursuant to Section 1(a)(iii) of E.O. 13662, for being owned or controlled by Vekselberg. As a result of these

9

designations, all property and interests in property of Vekselberg and Renova Group within the United States, or in the possession or control of U.S. persons, were blocked.

24. OFAC does not possess—and never has possessed—any of Vekselberg's blocked property.

25. Also on April 6, 2018, OFAC served, via registered mail, blocking notices to the following U.S. persons,[2] informing them of the designations of Vekselberg and Renova Group and that all property and interests in property of Vekselberg and Renova Group were blocked effective April 6, 2018: Amos Beason, Partner of Columbus Nova MB, LLC[3] in Charlotte, NC; Reinhard Freimuth, Managing Director of Columbus Nova MB, LLC in Dallas, TX; Andrew Intrater, CEO of Columbus Nova, LLC in New York, NY; Brad Lerman, Senior Vice President, General Counsel, and Corporate Secretary of Medtronic in Minneapolis, MN; Hans Marteau, General Counsel of Octo Telematics North America, LLC in Newtown, MA; Olga Miller, Director of Renova Fort Ross Foundation in New York, NY; Jan Volsik, President of Safina Materials, Inc. in Conroe, TX; Patrick D. Gerkin, CEO of Schmolz + Bickenbach USA, Inc. in Carol Stream, IL; and Irina Vekselberg in New York, NY.

26. OFAC sent these blocking notices because, through its investigation of Vekselberg and Renova Group, it had reason to believe that these persons may have (1) had dealings with Vekselberg or Renova Group; or (2) been owned 50 percent or more by Renova Group, and therefore may have been blocked pursuant to the 50 Percent Rule. OFAC did not make any asset-specific assessments of whether any of the Vekselberg-related entities, including

---

[2] OFAC also contacted these parties by phone.

[3] At some point during the summer of 2018, Columbus Nova MB, LLC, changed its name to Bracken Capital, LLC.

those served with blocking notices, mentioned in Plaintiffs' complaint were in fact 50 percent or more owned by Vekselberg or Renova Group prior to their designations.

27. Each blocking notice informed the recipient that if they were in possession of any blocked property (i.e., property in which Vekselberg or Renova Group had an interest), they were required to report such blocked property to OFAC within 10 business days from the date the property became blocked. *See also* 31 C.F.R. § 501.603.

28. Holders of blocked property are required to file with OFAC reports on blocked property. Until June 2019, OFAC regulations required that the report "describe the owner or account party, the property, its location, any existing or new account number or similar reference necessary to identify the property, actual or estimated value, and the date it was blocked," in addition to contact information for the blocked property holder. Financial institutions were also required to file a photocopy of the payment or transfer instructions received and confirm that the payment has been deposited into a blocked account. 31 C.F.R. § 501.603 (2018).

29. No property in which Plaintiffs allege they have an interest was blocked because of the possible existence of their minority ownership or commercial interests.

30. Rather, OFAC designated Vekselberg and Renova Group, thereby causing Vekselberg's property and interests in property and Renova Group's property and interests in property to be blocked, including pursuant to the 50 Percent Rule, as described above and set forth in IEEPA, E.O. 13622, and the Ukraine Related Sanctions Regulations.

31. OFAC's effectuation of Vekselberg's SDN designation and the resulting legal obligation to block his property and interests in property, and OFAC's activity in connection

with Plaintiffs' license applications occurred in Washington, D.C., and did not occur in New York.

In accordance with 28 U.S.C. § 1746, I certify and declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 21, 2019

*Bradley T. Smith*
Bradley T. Smith
Deputy Director
Office of Foreign Assets Control
U.S. Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Freedman's Bank Building
Washington, DC 20220