**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

US VC PARTNERS GP LLC;
US VC PARTNERS MANAGEMENT, LLC;
ISRAELI VC PARTNERS LTD.;
ISRAELI VC PARTNERS MANAGEMENT,
LLC;
CN ODYSSEY GP LLC;
CN MAPANYTHING GP LLC;
SPARROW CAPITAL HOLDINGS LLC;
AUDUBON LOAN FUNDING GP LLC;
CN PARTNERS LLC; and
ANDREW INTRATER,

                             *Plaintiffs*,

      v.

UNITED STATES DEPARTMENT OF THE
TREASURY, OFFICE OF FOREIGN ASSETS
CONTROL;
THE HONORABLE STEVEN MNUCHIN, in
his official capacity as the Secretary of the
United States Department of the Treasury; and
ANDREA GACKI, in her official capacity as
the Director of the United States Department of
the Treasury's Office of Foreign Assets Control,

                             *Defendants*.

19 Civ. 6139 (GBD) (SN)

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ...................................................................1

II.     BACKGROUND ...................................................................................3

III.     ARGUMENT .........................................................................................3

         A.      Standard of Review......................................................................3

         B.      Defendants' Blocking of Plaintiffs' Property Is An Unlawful Seizure In Violation Of The Fourth Amendment...................................................4

                1.      Defendants' Blocking Is Unquestionably A Fourth Amendment Seizure.............................................................................5

                2.      Defendants' Seizure of Plaintiffs' Property Is Unreasonable ....................9

         C.      Plaintiffs Have Pleaded Violations of Their Fifth Amendment Due Process Rights ...............................................................................14

         D.      Plaintiffs Have Adequately Pleaded A Violation of the Administrative Procedure Act........................................................................19

CONCLUSION.....................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Al Haramain Islamic Found. Inc. v. U.S. Dep't of the Treasury*,
585 F. Supp. 2d 1233 (D. Or. 2008), *aff'd, Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012) ................................................. *passim*

*Bd. of Educ. v. Earls*,
536 U.S. 822 (2002) .................................................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007) ...................................................................................................3

*Benten v. Kessler*,
799 F. Supp. 281 (E.D.N.Y. 1992) ..........................................................................19

*Burlington Truck Lines, Inc. v. United States*,
371 U.S. 156 (1962) .................................................................................................19

*Camara v. Mun. Ct. of San Francisco*,
387 U.S. 523 (1967) .................................................................................................12

*Can v. United States*,
820 F. Supp. 106 (S.D.N.Y. 1993) .............................................................................8

*Carter v. JPMorgan Chasebank, N.A.*,
No. 17 CIV. 4244 (GBD) (SN), 2018 WL 1083966 (S.D.N.Y. Feb. 26, 2018) .......................4

*Cassidy v. Chertoff*,
471 F.3d 67 (2d Cir. 2006) ..................................................................................13, 14

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) .................................................................................................19

*City of Indianapolis v. Edmond*,
531 U.S. 32 (2000) ...................................................................................................13

*Coolidge v. New Hampshire*,
403 U.S. 443 (1971) .................................................................................................10

*D.C. Precision, Inc. v. United States Gov't*,
73 F. Supp. 2d 338 (S.D.N.Y. 1999) .....................................................................7, 8

*Demore v. Kim*,
538 U.S. 510 (2003) .................................................................................................18

*Detsel by Detsel v. Sullivan*,
    895 F.2d 58 (2d Cir. 1990)..................................................................................19

*United States ex rel. Fong Foo v. Shaughnessy*,
    234 F.2d 715 (2d Cir. 1955)..............................................................................15

*Foster v. U.S. EPA*,
    2015 U.S. Dist. LEXIS 132535 (S.D. W. Va. Sept. 30, 2015) .........................18, 19

*Hamdi v. Rumsfeld*,
    542 U.S. 507 (2004)..........................................................................................10

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984)..............................................................................................4

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009)................................................................................4

*Holy Land Found. For Relief & Dev. v. Ashcroft*,
    219 F. Supp. 2d 57 (D.D.C. 2002) ......................................................................7

*Illinois v. McArthur*,
    531 U.S. 326 (2001)........................................................................................5, 7

*Islamic American Relief Agency v. Unidentified FBI Agents*,
    394 F. Supp. 2d 34 (D.D.C. 2005) ......................................................................7

*Jean v. Nelson*,
    711 F.2d 1455 (11th Cir. 1983), *partially vacated as moot*, 727 F.2d 957 (11th
    Cir. 1984) .....................................................................................................15, 17

*Kadi v. Geithner*,
    42 F. Supp. 3d 1 (D.D.C. 2012) ..........................................................................7

*Katz v. U.S.*,
    389 U.S. 347 (1967)............................................................................................9

*KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*,
    647 F. Supp. 2d 857 (N.D. Ohio 2009)........................................................ *passim*

*KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*,
    710 F. Supp. 2d 637 (N.D. Ohio 2010)................................................................6

*Krimstock v. Kelly*,
    306 F.3d 40 (2d Cir. 2002)................................................................................17

*Larson v. United States*,
    888 F.3d 578 (2d Cir. 2018)..............................................................................18

*MacWade v. Kelly,*
    460 F.3d 260 (2d Cir. 2006)........................................................................14

*Milena Ship Management Co. v. Newcomb,*
    804 F. Supp. 859 (E.D. La. 1992) ..............................................................16

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983).....................................................................................20

*Nat'l Cotton Council of America v. U.S. EPA,*
    553 F.3d 927 (6th Cir. 2009) ......................................................................20

*Ochoa v. Hernandez y Morales,*
    230 U.S. 139 (1913)...................................................................................15

*OKKO Bus. PE v. Lew,*
    133 F. Supp. 3d 17 (D.D.C. 2015) .............................................................16

*Papachristou v. City of Jacksonville,*
    405 U.S. 156 (1972)...................................................................................17

*Poe v. Ullman,*
    367 U.S. 497 (1961)...................................................................................15

*Rivera-Powell v. New York City Bd. of Elections,*
    470 F.3d 458 (2d Cir. 2006)........................................................................18

*Soldal v. Cook County,*
    506 U.S. 56 (1992)..........................................................................5, 7, 12, 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007).....................................................................................4

*Tran Qui Than v. Regan,*
    658 F.2d 1296 (9th Cir. 1981) .....................................................................8

*United States v. Bailey,*
    743 F.3d 322 (2d Cir. 2014)........................................................................11

*United States v. Jacobsen,*
    466 U.S. 109 (1984)...................................................................................13

*United States v. James Daniel Good Real Prop.,*
    510 U.S. 43 (1993).....................................................................................16

*United States v. Miller,*
    425 U.S. 435 (1976).....................................................................................9

*United States v. Place*,
    462 U.S. 696 (1983) ..........................................................5, 7, 9, 10

*Vernonia School Dist. 47J v. Acton*,
    515 U.S. 646 (1995) ..................................................................13

*Wagner v. Universal Packaging Corp.*,
    2000 WL 1373668 (N.D.N.Y. 2000) ..........................................20

*Wolff v. McDonnell*,
    418 U.S. 539 (1974) ..................................................................15

*Yick Wo v. Hopkins*,
    118 U.S. 356 (1886) ..................................................................15

*Zarmach Oil Services v. U.S. Dep't of the Treasury*,
    750 F. Supp. 2d 150 (D.D.C. 2010) ............................................16

## STATUTES

5 U.S.C. § 706 ..........................................................................3, 20

5 U.S.C. § 706(2)(A) ....................................................................19

5 U.S.C. § 706(1) ........................................................................20

50 U.S.C. § 4309 ..........................................................................8

## RULES

Fed. R. Crim. P. 41(g) ..................................................................3

## REGULATIONS

31 C.F.R § 589.406 *et seq.* ..........................................................5

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. IV ........................................................ *passim*

U.S. CONST. amend. V .......................................................... *passim*

# OTHER AUTHORITIES

Resource Center, OFAC FAQs: Other Sanctions Programs at No. 570,
https://www.treasury.gov/resource-
center/faqs/Sanctions/Pages/faq_other.aspx# 570 ....................................................................6

Steven Mufson, *Treasury admits Russian-born physicist shouldn't be on oligarch
list that it cribbed from Forbes*, WASH. POST (Sept. 11, 2019) ..............................................11

# I. PRELIMINARY STATEMENT

For the last eighteen months, Plaintiffs have been barred by the Government—under penalty of potential civil fines and criminal penalties—from using, managing, selling, or otherwise receiving income from property they own, in whole or in part, worth millions of dollars. In moving to dismiss Plaintiffs' plea for the return of their property, the Government principally argues that there has been no seizure of Plaintiffs' property. Indeed, the Government appears to contend that administrative orders by the Office of Foreign Assets Control ("OFAC") are effectively exempt from scrutiny under the Fourth Amendment. The Government's argument is meritless.

The Government seized Plaintiffs' property without a warrant, or probable cause, and has continued its seizure without affording Plaintiffs due process. The Government does not deny that it has deprived Plaintiffs of their rights to access and enjoy their property. Nor does the Government claim that Plaintiffs have committed any wrongdoing to justify this seizure. Instead, the Government simply argues Plaintiffs' constitutional rights are subordinate to OFAC's interests in implementing effective sanctions programs under the International Emergency Economic Powers Act ("IEEPA"). The Government certainly has an interest in securing the nation and furthering foreign diplomacy. However, OFAC's warrantless seizures—as applied to U.S. citizens through the so-called "50% Rule"—are unreasonable and violate the Fourth Amendment. OFAC's administrative seizures are overly broad: impermissibly indefinite in duration and limitless in scope. Such seizures gut the protections afforded to every U.S. citizen—including Plaintiffs— under the Fourth and Fifth Amendments and the Administrative Procedure Act ("APA").

The Government advances several reasons why Plaintiffs' claims should be dismissed. None has merit. *First*, the Government claims OFAC has not violated Plaintiffs' Fourth Amendment rights by arguing that OFAC's seizures of Plaintiffs' property are not really "seizures"

because Plaintiffs retain title and possession of their property, and, barring that, OFAC's seizures are *per se* reasonable. But transfer of title or possession is not required to effect a Fourth Amendment seizure, and the cases upon which the Government relies misapply a Fifth Amendment permanent Takings Clause analysis instead of the seizure analysis required by the Fourth Amendment. Moreover, the Government's argument that such seizures are "reasonable" ignores the scale of OFAC's intrusion on Plaintiffs' property rights, which is absolute, ongoing, and indefinite. Indeed, the Government fails to proffer any justification for why such intrusion should be exempted from the strictures of the Fourth Amendment, or even how the continued seizure of the property at issue here furthers OFAC's mission.

*Second*, the Government boldly claims that its conduct does not constitute a violation of Plaintiffs' Fifth Amendment rights to due process because OFAC's license-application process allows Plaintiffs an avenue to seek a license to interact with their property for limited specific purposes. But OFAC's license-application process is constitutionally unsound and insufficient. OFAC has promulgated no rules, regulations, guidelines, or legal standards to govern its decision-making process, thereby reserving for itself the unfettered discretion to deny a license application for any reason or no reason at all. Further, OFAC's own rules impose no limit on the time OFAC may take to decide whether to unblock (and therefore return) Plaintiffs' property or grant a specific license application. There is, in fact, no "process" at all, and the nebulous OFAC application system places Plaintiffs at the arbitrary whim of the Executive Branch. The Government essentially argues that even if OFAC's decisions are slow, arbitrary, and unbound by regulation, due process is satisfied because Plaintiffs can always sue OFAC under the APA. This is incorrect. Plaintiffs' remedies under the APA are in addition to, not at the exclusion of, Plaintiffs' rights afforded by the Fifth Amendment. The mere existence of the APA does not inoculate OFAC's

conduct from Fifth Amendment scrutiny or absolve it from respecting rights guaranteed by the Constitution.

*Finally*, because Plaintiffs have articulated several Fourth and Fifth Amendment violations of Plaintiffs' rights, Plaintiffs have also sufficiently set forth claims for violations of the APA. Even without Plaintiffs having laid out a Fourth Amendment claim for unlawful seizure of their property or Fifth Amendment claim for lack of due process, the APA allows Plaintiffs to challenge, *inter alia*, "findings and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] (B) contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706. Defendants have failed to address, let alone refute, that their denials of Plaintiffs' license applications are arbitrary and capricious.

For the reasons set forth below, Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied.

## II.     BACKGROUND

The factual background and administrative actions which led to the filing of this Complaint are summarized in Plaintiffs' Motion for the Return of Unlawfully Seized Property pursuant to Rule 41(g), filed with this Court on September 17, 2019. In the interest of judicial economy, we respectfully direct the Court's attention to that filing for a summary of the factual background to this action. *See* Dkt. No. 30.[1]

## III.    ARGUMENT

### A.     Standard of Review

In order to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

---

[1] Unless otherwise indicated, capitalized terms shall have the meanings ascribed to them in the Motion for the Return of Unlawfully Seized Property.

"In deciding a Rule 12(b)(6) motion, a court 'accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor.'" *Carter v. JPMorgan Chasebank, N.A.*, No. 17 CIV. 4244 (GBD) (SN), 2018 WL 1083966, at *1 (S.D.N.Y. Feb. 26, 2018) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). The Court should not "scrutinize each allegation in isolation but . . . assess all the allegations holistically." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### B. Defendants' Blocking of Plaintiffs' Property Is An Unlawful Seizure In Violation Of The Fourth Amendment

OFAC's indiscriminate and indefinite application of the 50% Rule has effected an unlawful seizure of Plaintiffs' property. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. The Government argues that OFAC's blockings do not violate the Fourth Amendment as a matter of law because IEEPA blockings do not constitute Fourth Amendment seizures, and even if they did, such seizures are always reasonable. Dkt. No. 36 ("Defs.' Mot.") at 15-20. The Government's arguments are unavailing. *First*, as addressed further below, OFAC's blocking of Plaintiffs' property unquestionably constitutes a seizure under the criteria established by the U.S. Supreme Court's Fourth Amendment jurisprudence (which is largely ignored or misconstrued in the Government's brief). Rather than rely on this established law, the Government chooses to rely exclusively on cases that fail to raise or analyze issues germane to Fourth Amendment seizures. *Second*, the Government has failed to present a cogent explanation as to why its indefinite seizure of the property of U.S. citizens—none of whom have been accused of any wrongdoing—can possibly be considered reasonable,

particularly given the length of the seizure (which remains ongoing), as well as the lack of any apparent nexus between the ongoing restraint and the stated purpose of the Ukraine-Related Sanctions under which Plaintiffs' property was seized.[2]

1. *Defendants' Blocking Is Unquestionably A Fourth Amendment Seizure*

Defendants' blocking of Plaintiffs' property unquestionably constitutes a Fourth Amendment seizure. A seizure under the Fourth Amendment occurs whenever there is a "meaningful interference with . . . possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 61 (1992). Defendants' blocking falls squarely within this construction. As the Government freely admits, after April 6, 2018 (when OFAC imposed economic sanctions on additional Specially Designated Nationals ("SDNs")), by virtue of OFAC's 50% Rule, the blocking of the Investment Funds prohibited Plaintiffs from "controlling targeted property" or "exercis[ing] [the] powers and privileges normally associated with ownership" over that property. Defs.' Mot. at 15 (citing Treasury Website FAQ). Such property and property rights blocked include the rights to participate in the management and control of the Investment Funds, collect their share of investment proceeds, and receive management fees for the management of the Investment Funds.[3] Using the Government's own words, these blockings "immediately impose[d] an across-the-board prohibition against transfers or dealings *of any kind* with regard to the [Plaintiffs'] property." Defs.' Mot. at 15. Such blockings plainly act as a seizure of Plaintiffs' property. *Illinois v. McArthur*, 531 U.S. 326, 332-33 (2001) (preventing suspect's access to his home for two hours constituted a Fourth Amendment seizure); *United States v. Place*, 462 U.S.

---

[2] The Ukrainian-Related Sanctions refer to the sanctions imposed pursuant to Executive Orders 13360, 13361, and 13362 in March 2014 in response to, among other things, "the actions and policies of the Government of the Russian Federation, including its purported annexation of Crimea and its use of force in Ukraine." *See* 31 CFR Sec. 589.406 *et seq*. Compl. ¶¶ 2, 30.

[3] A fulsome description of Plaintiffs' property seized by OFAC through its blockings is restated in Plaintiffs' Complaint. *See, e.g.*, Compl. ¶¶ 44-45, 48-49, 52-53, 59-60, 65-66, 134-71.

696, 706-09 (1983) (90-minute detention of luggage constituted Fourth Amendment seizure); *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 710 F. Supp. 2d 637, 643 (N.D. Ohio 2010) (OFAC blocking of assets constituted a Fourth Amendment seizure); *Al Haramain Islamic Found. Inc. v. U.S. Dep't of the Treasury*, 585 F. Supp. 2d 1233, 1262-63 (D. Or. 2008) (same), *aff'd, Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012).[4]

OFAC's blocking orders extend far beyond dispossessing Plaintiffs of access to their Property.  OFAC's blocking orders prohibit Plaintiffs from selling, managing, running, or interacting in any way with their own property.  The resulting restrictions and harm on Plaintiffs is uniquely far-reaching and often illogical.  In one example of its impact, Plaintiffs have been unable to divest ownership of an American company because that company has a minority interest in a property blocked by the 50% Rule.  Though maintenance of this American company is costly and no longer of any use to Plaintiffs, they have been forced to continue ownership because, under OFAC's arbitrary rule, Plaintiffs would need permission to divest their ownership.  *See* Resource Center, OFAC FAQs: Other Sanctions Programs at No. 570, https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_other.aspx#570 (requiring General License 13C as authorization for "U.S. persons to divest or transfer to a non-U.S. person, or to facilitate the transfer by a non-U.S. person to another non-U.S. person, debt, equity, or other holdings").  In another example, Plaintiffs have been forced to hold shares of public U.S. companies that they cannot sell by virtue of the 50% Rule.  In the meantime, the value of Plaintiffs' shares have substantially declined.  As a result of these forced ownerships, Plaintiffs are not only deprived of their rights to enjoy their

---

[4] Despite the Government's argument to the contrary, the holding in *Al Haramain*, 585 F. Supp. 2d ("*Al Haramain I*") that OFAC blockings constitute Fourth Amendment seizures was not simply *dicta*, Defs.' Mot. at 19, as reflected by the fact that the Ninth Circuit adopted that ruling when considering the reasonableness of OFAC's seizure in *Al Haramain*, 686 F.3d 965 ("*Al Haramain II*").

property, but are also obligated to assume any and all liabilities of ongoing ownership against their will and endure the resulting declines in value of their property.

The Government contends that Plaintiffs' blocked property is not "seized" because it was "not moved or taken into Government custody" and "[t]itle . . . remain[ed] with the blocked person." Defs.' Mot. at 15. Taking title or physical possession of property, however, is not required to effect a seizure under the Fourth Amendment. *See, e.g.*, *McArthur*, 531 U.S. at 330-33 (applying Fourth Amendment to find a "temporary seizure" of suspect's home when officers prevented him from re-entering home during two hours needed to obtain warrant); *Place*, 462 U.S. at 710 (holding luggage for 90-minute investigation at an airport constituted an unreasonable seizure); *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 647 F. Supp. 2d 857, 872 (N.D. Ohio 2009) ("A Fourth Amendment seizure . . . does not result in passage of title to the government or even necessarily permanent deprivation"). Instead, all that is required is a "meaningful interference" with the possessory interests of that property. *Soldal*, 506 U.S. at 61. Under these well-settled definitions of seizures within the context of the Fourth Amendment, OFAC's complete blocking of all of Plaintiffs' rights to control or benefit from their ownership interests, or even to divest those interests, plainly qualifies as a seizure.

The Government cites two cases—*Holy Land Found. For Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 79 (D.D.C. 2002) and *Islamic American Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 48 (D.D.C. 2005)—for the proposition that an OFAC blocking order does not amount to a Fourth Amendment seizure.[5] However, both *Holy Land* and *Islamic American* are

---

[5] The Government's other cited cases do not support the proposition that a blocking does not constitute a Fourth Amendment seizure because they do not address Fourth Amendment seizures in any manner. *See Kadi v. Geithner*, 42 F. Supp. 3d 1, 36-38 (D.D.C. 2012) (electing not to rule as to whether a blocking constitutes a Fourth Amendment seizure); *see generally D.C. Precision, Inc. v. United States Gov't*, 73 F. Supp. 2d 338 (S.D.N.Y. 1999) (addressing Fifth Amendment takings claims, *not* Fourth Amendment seizure claims).

fundamentally flawed because neither District Court substantively analyzed or applied Fourth Amendment jurisprudence in its decision. Instead, *Holy Land* and *Islamic American* each erroneously relied in conclusory fashion on language pulled without context from cases that did not involve Fourth Amendment seizures. *See, e.g.*, *Tran Qui Than v. Regan*, 658 F.2d 1296 (9th Cir. 1981) (addressing Fifth Amendment takings claim of a non-citizen and statutory triggers for jurisdiction); *D.C. Precision, Inc. v. United States Gov't*, 73 F. Supp. 2d 338, 343 n.1 (S.D.N.Y. 1993) (citing *Tran Qui Than* and addressing Fifth Amendment takings claims of non-citizen); *Can v. United States*, 820 F. Supp. 106, 109 (S.D.N.Y. 1993) (quoting *Tran Qui Than* and specifically noting that *Tran Qui Than* stands for the proposition that "blocking of assets *does not constitute a taking*.") (emphasis added).

Reliance on *Tran Qui Than* is particularly misplaced. In that case, Than brought claims for the unlawful taking of property in violation of the Fifth and Fourteenth Amendments, and for the government's denial of a license for the release of property under the Trading with the Enemies Act ("TWEA"). Section 9(c) of the TWEA authorized "any person not an enemy or ally of [an] enemy claiming any interest, right, or title in any money or other property which *may have been conveyed, transferred, assigned, delivered, or paid to the [United States Government] or seized by [it]*" to seek return of the property through an administrative proceeding or through suit in federal court. 50 U.S.C. § 4309 (emphasis added). The court, likening this language to a Fifth Amendment seizure, ultimately declared that property that was blocked was not "seized" for the purposes of conferring jurisdiction to sue under Section 9(c) because title—which is relevant for Fifth Amendment takings claims—remained with Than. *Tran Qui Than*, 658 F.2d at 1301. Therefore, without transfer of title, Than did not have standing to sue. *Id.* Importantly, Than never raised a Fourth Amendment challenge to the government's conduct, and the *Tran Qui Than* court

never invoked the Fourth Amendment as part of its analysis (nor did it have occasion to). Rather, *Tran Qui Than* simply reflects a statutory interpretation of the word "seize" as a jurisdictional predicate to bringing suit in the context of the TWEA. Courts that have actually analyzed *Tran Qui Than* in the context of Fourth Amendment seizures alongside Fourth Amendment jurisprudence have easily reached a different result. *See KindHearts*, 647 F. Supp. 2d at 872 ("An OFAC block interferes with possessory rights, and is, in Fourth Amendment terms a seizure."); *Al Haramain I*, 585 F. Supp. 2d at 1263 (rejecting application of *Tran Qui Than*, and noting that "[e]ven a temporary deprivation of property, as a blocking is, constitutes a meaningful interference with property and qualifies as a 'seizure' for purposes of the Fourth Amendment").

Accordingly, OFAC's blocking orders, which have deprived Plaintiffs of all rights to access and control their property, constitute a Fourth Amendment seizure.

### 2. *Defendants' Seizure of Plaintiffs' Property Is Unreasonable*

Defendants' warrantless seizure of Plaintiffs' property, as carried out through its mechanical and indefinite application of the 50% Rule, is patently unreasonable. As a general starting point, "seizure of personal property [is] *per se* unreasonable . . . unless it is accomplished pursuant to a judicial warrant issued upon probable cause." *Place*, 462 U.S. at 701.[6] The warrant requirement for seizures is "subject only to a few specifically established and well-delineated exceptions," *Katz v. U.S.*, 389 U.S. 347, 357 (1967) (exceptions later codified by Congress), none of which exists here. *See Al Haramain II*, 686 F.3d at 990-95 (holding OFAC blocking was

---

[6] The Government also argues, in a single sentence, that Plaintiffs do not have a "privacy interest" in their personal property, Defs.' Mot. at 20, relying on a single case, *United States v. Miller*, 425 U.S. 435, 442 (1976). *Miller* simply stands for the uncontroversial but irrelevant proposition that "no interest legitimately protected by the Fourth Amendment is implicated by governmental *investigative activities* unless there is an intrusion into a zone of privacy . . ." and that a bank's business records were not respondent's "private papers" subject to Fourth Amendment analysis. 425 U.S. at 440 (emphasis added). *Miller* does not suggest or imply that Plaintiffs do not have a privacy interest in the property that they own and control. Moreover, OFAC's seizures of Plaintiffs' property was not undertaken for any investigative purpose.

unreasonable seizure, special needs exception to warrant requirement did not apply); *KindHearts*, 647 F. Supp. 2d at 879-84 (holding OFAC blocking violated Fourth Amendment and both the exigent circumstances and special needs exceptions to warrant requirement were inapplicable).

The Government does not dispute that it has not obtained a warrant for the seizure of Plaintiffs' property. Rather, the Government claims, in conclusory fashion, that OFAC's warrantless seizures are reasonable because the seizures are "critical to the successful implementation of sanctions" and the 50% Rule "provides a valuable bright-line rule as to which assets . . . will be deemed blocked." Defs.' Mot. at 22. Such justifications, no matter how well-intentioned, are "no excuse for the dispensing altogether with domestic persons' constitutional rights." *Al Haramain II*, 686 F.3d at 993 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004)); *see Coolidge v. New Hampshire*, 403 U.S. 443, 461 (1971) (national security "is not a talisman in whose presence the Fourth Amendment fades away and disappears"). Instead, the reasonableness of the seizure can only be assessed by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Place*, 462 U.S. at 703.

The Government's brief does not offer any meaningful analysis of such balancing, and simply asserts that its interests "outweigh[] the hardship that may be experienced by minority owners of blocked assets." Defs.' Mot. at 22. The opposite is true. The intrusion on Plaintiffs' Fourth Amendment interests here is absolute: OFAC's blockings effect a total interference with Plaintiffs' property rights. *See Al Haramain II*, 686 F.3d at 992 ("The domestic entity's interest in being free from blocking orders is great. A blocking order effectively shuts down the private entity. Indeed, blocking orders do so *by design.*") (emphasis in original). Like the seizure in *Al Haramain II*, Plaintiffs have been foreclosed from exercising their ownership over their property,

and have alleged a substantial reduction of the value of their investments and other property, which require management that Plaintiffs are unable to provide.

The unreasonableness of OFAC's warrantless seizures is made all the more apparent when considering that the Government concedes that none of the Plaintiffs is suspected or accused of *any* wrongdoing whatsoever. And moreover, the Government has not alleged any risk that Plaintiffs will transfer their property to an SDN, or even articulated how a release of Plaintiffs' property would undermine the sanctions imposed upon any SDN. And while the Fourth Amendment "demands that the scope and duration of the detention be reasonable," *United States v. Bailey*, 743 F.3d 322, 336 (2d Cir. 2014), the seizure of Plaintiffs' assets lacks any apparent limits. It has been ongoing for eighteen months, and may continue indefinitely. Against this backdrop, it is difficult to see how the indefinite (and potentially permanent) intrusion into Plaintiffs' property rights—in violation of the Fourth Amendment—furthers the Government's goal of sanctioning foreign actors.

The Government never addresses the magnitude of this deprivation of Plaintiffs' rights. Instead, it argues that its conduct is reasonable because issuing IEEPA blocking orders "requires an exacting process." Defs.' Mot. at 21. This is both factually incorrect and legally irrelevant. *See Al Haramain II*, 686 F. 3d at 990-95; *KindHearts*, 647 F. Supp. 2d at 879-84. As an initial matter, there is no evidence that OFAC follows any "exacting process" whatsoever in designating SDNs, and there is little Congressional or judicial oversight over OFAC's initial designations. Indeed, as OFAC's admissions in a recently dismissed lawsuit against OFAC make clear,[7] there is

---

[7] On December 3, Valentin Gapontsev, an American citizen and businessman, sued OFAC for naming him on a list of Russian oligarchs released by OFAC on January 29, 2018. *See Gapontsev et al. v. United States Department of The Treasury et al.*, No. 1:18-cv-02826-RC (D.D.C.). On April 23, 2019, OFAC was ultimately forced to admit in open court that its list of Russian oligarchs was simply "cribbed entirely" from a list of billionaires published in Forbes Magazine, with no further examination. *See* Steven Mufson, *Treasury admits Russian-born physicist shouldn't be on oligarch list that it cribbed from Forbes*, WASH. POST (Sept. 11, 2019), https://www.washingtonpost.com/climate-

often disturbingly little "process" leading up to such designations. But even if OFAC followed some process in designating Vekselberg and Renova as SDNs—which is a dubious claim—there is no such process (or even minimal investigation) governing the blocking of Plaintiffs' property. OFAC's process as applied to Plaintiffs has resulted in the indiscriminate and indefinite blocking of persons not designated as SDNs and with potentially no nexus to the stated goals of the OFAC sanctions regime. In this way, Plaintiffs are victims of the perverse reality where individuals designated as SDNs or suspected of wrongdoing are afforded greater Fourth Amendment protections than those accused of no wrongdoing whatsoever. *See Al Haramain II*, 686 F.3d at 990-95; *KindHearts*, 647 F. Supp. 2d at 879-84. The Supreme Court has expressly rejected this outcome. *See Soldal*, 506 U.S. at 69 ("[I]t would be 'anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior.'") (quoting *Camara v. Mun. Ct. of San Francisco*, 387 U.S. 523, 530 (1967)).

The Government's argument that its ongoing warrantless seizures are reasonable because "owners of blocked assets have an available avenue to seek relief by applying [to OFAC] for specific licenses" similarly fails. Defs.' Mot. at 23. As argued more fully below, OFAC's suggested remedial procedures are themselves woefully deficient under the Due Process clause of the Fifth Amendment. OFAC's regulations provide Plaintiffs with no probable-cause hearing, no standard by which license applications will be granted or denied, and no time limit within which OFAC must act on a license application. And while Plaintiffs have availed themselves of this process, many of Plaintiffs' applications have been pending with OFAC for over a year. In the meantime, their assets remain seized without probable cause or warrant. Many of those assets are

environment/treasury-admits-russian-born-physicist-shouldnt-be-on-oligarch-list/2019/09/11/41e06db2-d4c1-11e9-9610-fb56c5522e1c_story.html. OFAC settled that lawsuit shortly thereafter.

declining in value because Plaintiffs are unable to manage or sell them while Plaintiffs continue to incur liabilities on those assets, such as taxes and corporate filing fees. Even if the Government's seizures were initially warranted, such an absolute and ongoing seizure strips its actions of any reasonableness. *United States v. Jacobsen*, 466 U.S. 109, 124 (1984) ("[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the [] Fourth Amendment's prohibition on 'unreasonable seizures.'").

For similar reasons, the Government cannot wedge its conduct into a "special needs" exception. Courts have found such "special needs" exceptions to exist only in limited circumstances, where the intrusion serves a purpose above and beyond normal law enforcement, and the circumstances make adherence to the warrant and probable-cause requirement impracticable. *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000) (quoting *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646 (1995)). In evaluating any purported "special need," however, a court still must consider the nature and extent of the property interest at hand against the nature and immediacy of the government's concerns and the efficacy of the procedures employed in meeting those concerns. *Bd. of Educ. v. Earls*, 536 U.S. 822, 830-38 (2002); *Cassidy v. Chertoff*, 471 F.3d 67, 75 (2d Cir. 2006).

Here, the Government claims—without explanation—that application for warrants to seize Plaintiffs' property would be impractical because "it would not be feasible for OFAC to trace all permutations of the blockings that result when it identifies a foreign individual or entity whose assets should be blocked." Defs.' Mot. at 23. However, the Government provides no evidence for this assessment, which is belied by the Government's own attestation that it maintains "an exacting process" prior to designation of individuals as SDNs. If true, such a process should presumably

enable OFAC to identify property to be seized from each SDN that is subject to a warrant requirement rather than seek and apply a limitless and indefinite seizure of property as effected through the 50% Rule.[8]   *Al Haramain II*, 686 F.3d at 993 (noting warrant requirement is only relevant in limited circumstances).[9]

Even if the implementation of blocking orders against the Investment Funds were required to prevent asset flight or another emergency (no real risk of asset flight or emergency has been identified by the Government here), the Government fails to address why such a seizure should be allowed to continue indefinitely after Plaintiffs have traced its property for OFAC.  Defs.' Mot. at 23.  There is no immediate concern justifying an ongoing seizure, and the Government has not (and cannot) articulate any interest that is furthered by the continued seizure of Plaintiffs' property, other than administrative convenience.  Convenience cannot form the basis for eviscerating U.S. citizens' Fourth Amendment protections from unlawful search and seizure.  *Al Haramain II*, 686 F.3d at 993 (acknowledging that OFAC may seize assets without warrant to prevent asset flight, but still requiring OFAC to obtain a warrant once the threat of asset flight is abated).

C.     **Plaintiffs Have Pleaded Violations of Their Fifth Amendment Due Process Rights**

The Fifth Amendment's Due Process clause provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law."  U.S. CONST. amend. V.  The guarantee of due process has been recognized as one of the "safest foundations of our institutions;"

---

[8] The "impracticality" alleged here also stands in stark contrast to the impracticality of other special needs cases where an imminent threat or policy requires random and suspicionless searches in the name of national security, and where the intrusion is limited in both scope and time.  *See, e.g.*, *Cassidy*, 471 F.3d at 82 (authorizing brief, warrantless searches of trunks); *MacWade v. Kelly*, 460 F.3d 260, 271-75 (2d Cir. 2006) (authorizing warrantless bag searches).

[9] The Government attempts to distinguish *Al Haramain II* and *KindHearts* on the grounds that plaintiffs in those cases were themselves designated as SDNs for suspected or alleged support of terror.  Defs.' Mot. at 18-19.  Again, it would be the height of injustice to argue that Plaintiffs—who are not SDNs and who are not accused of any wrongdoing— should be afforded less protection for a similar intrusion on their Fourth Amendment rights.  The Supreme Court has expressly rejected this result.  *See Soldal*, 506 U.S. at 69.

without it, "the right of private property cannot be said to exist." *Ochoa v. Hernandez y Morales*, 230 U.S. 139, 161 (1913). The Government first claims that Plaintiffs are provided due process to address the wrongful and ongoing seizure of their property because "individuals affected by blockings may apply to OFAC for specific licenses for whatever use of blocked assets the applicant proposes." Defs.' Mot. 26. What the Government fails to acknowledge—and what the allegations within the Complaint make clear—is that OFAC's license-application process is constitutionally infirm.[10]

As the Supreme Court has long recognized, "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also Poe v. Ullman*, 367 U.S. 497, 543 (1961) (finding that liberty guaranteed by the Due Process Clause "includes a freedom from all substantial arbitrary impositions and purposeless restraints"). The constitutional guarantee of due process implies that "a reasonable procedure was used in exercising [] authority," and that citizens "were not unreasonably subjected . . . to an uncontrolled official discretion." *United States ex rel. Fong Foo v. Shaughnessy*, 234 F.2d 715, 720 (2d Cir. 1955); *Yick Wo v. Hopkins*, 118 U.S. 356, 366, 369-70 (1886) (an agency's "naked and arbitrary power to give or withhold consent" contradicts the "nature and the theory of our institutions of government"). Due process is threatened where agencies are "left to exercise discretion in an unguided fashion," as such unfettered discretion may result in the deprivation of rights in an arbitrary manner. *Jean v. Nelson*, 711 F.2d 1455, 1470 (11th Cir. 1983), *partially vacated as moot*, 727 F.2d 957 (11th Cir. 1984).

---

[10] This, of course, says nothing of the fact that OFAC offers no procedures by which an entity may challenge the 50% Rule's immediate and irreversible application. Unless the SDN itself is de-designated, the entities affected by the SDN's designation may only avail themselves of the OFAC licensing process.

OFAC's licensing process lacks these fundamental protections against arbitrary discretion. OFAC is unconstrained by rules, regulations, or guidelines governing what information it must consider when making decisions, or the length of time under which such decisions must be made. Instead, OFAC enjoys unfettered discretion to consider (or ignore) information regarding the property rights of each license applicant, the nature of the blocking, the scope of the license request, or how that request furthers or inhibits OFAC's sanctions regime. It may consider all of this information. Or none of it. There is no articulated evaluation process.[11] It is well-established that such processes and procedures are necessary "not only to ensure abstract fair play to the individual," but "more particularly, . . . to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993).[12]

The risk of falling victim to arbitrary decision-making is particularly acute because OFAC is not obligated to explain how or why it exercised its discretion. Here, over a year and a half after submitting several license applications, Plaintiffs still have no understanding of why certain of their license applications were denied wholesale, while certain others were partially granted, and still others have yet to be acted upon. Where there are "no standards governing the exercise of discretion . . . the scheme permits and encourages an arbitrary and discriminatory enforcement of

---

[11] This point is undisputed by the Government. Nowhere in the Government's moving papers has the Government attempted to identify the rules or regulations that OFAC must follow in determining whether to grant or deny a license request.

[12] None of the cases cited by the Government for its claim that Courts have "long recognized and endorsed OFAC's broad discretion over blocking orders and licensing matters," Defs.' Mot. at 29, addresses Fifth Amendment challenges to OFAC's decisions as applied to U.S. citizens. Instead, they address *APA* challenges brought by *foreign entities*, and, in each case, the court's dismissal was only after a full analysis of the factual record and justifications provided by OFAC. *See Milena Ship Mgmt. Co. v. Newcomb*, 804 F. Supp. 859 (E.D. La. 1992) (dismissing APA claim brought by shipping company owned or controlled by Yugoslavian government after review of factual record); *OKKO Bus. PE v. Lew*, 133 F. Supp. 3d 17, 23 (D.D.C. 2015) (dismissing APA claim brought by privately-owned Ukranian company challenging license to unblock funds, where such funds were to be paid to a blocked entity); *Zarmach Oil Services v. U.S. Dep't of the Treasury*, 750 F. Supp. 2d 150, 155 (D.D.C. 2010) (dismissing APA claim brought by a British Virgin Island company challenging license to unblock funds, where such funds were paid by a blocked entity).

the law." *Jean*, 711 F.2d at 1502 (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170-71 (1972)). Plaintiffs are completely at the whim of OFAC's unbridled discretion as to when, how, and why OFAC will make its determination. All the while, Plaintiffs face the indefinite deprivation of their property with no procedure for recourse.

Even if OFAC did apply and follow a system in its approval and denials of licenses (the Government does not contend that such a system exists), the lack of time constraints on the agency's decision-making would still render the process constitutionally infirm. In cases where citizens are deprived of their property without pre-seizure notice, the Government must, at minimum, provide the opportunity for a hearing that will "enable [them] to test the probable validity of continued deprivation" of their property. *Krimstock v. Kelly*, 306 F.3d 40, 69 (2d Cir. 2002). In *Krimstock*, the Second Circuit analyzed whether seizing vehicles of U.S. citizens who were accused of driving while intoxicated pending adjudication of their case violated their Fifth Amendment due process rights for a prompt post-deprivation hearing. *Id.* at 53. The court, finding the twenty-five days between seizure and post-deprivation hearing to be a "significant temporal gap," ruled in the affirmative. *Id.* at 45-46. OFAC has withheld Plaintiffs' property for far longer without affording Plaintiffs the basis rights that *Krimstock* sought to protect.

Similar to the vehicle owners in *Krimstock*, Plaintiffs' rights to due process have been violated by their inability to obtain prompt redress through OFAC's administrative licensing process. Given Plaintiffs' substantial interest in their property, due process requires the opportunity to challenge the Government "at an early point after seizure in order to minimize any arbitrary or mistaken encroachment upon [their] use and possession of their property." *Id.* at 53. The license application process does not, in its current form, offer any redress for this wrong or guarantee any prompt adjudication of such seizures.

Perhaps conceding the fundamental deficiencies in OFAC's own procedures, the Government contends that, to the extent OFAC's conduct is unreasonably slow and arbitrary (which it does not dispute), there can be no violation of due process where Plaintiffs are afforded the opportunity to seek review of OFAC's actions under the APA.[13] Defs.' Mot. at 26-27, 29. This is not so. The mere existence of the APA as a remedy of last resort does not obviate the need for OFAC to provide due process in the first instance.[14] *See, e.g.*, *Foster v. U.S. EPA*, 2015 U.S. Dist. LEXIS 132535, at *17 (S.D. W. Va. Sept. 30, 2015) ("A basic principle of administrative law is that . . . the agency itself must supply appropriate due process protections in the first instance."); *see also KindHearts*, 647 F. Supp. 2d at 897-914 (analyzing due process claims under Fifth Amendment, not APA). Plaintiffs have the right to sue OFAC for its unreasonable delay pursuant to the Fifth Amendment, and are in no way required to first, or contemporaneously, sue the Government for APA violations. *Foster*, 2015 U.S. Dist. LEXIS 132535, at *13-*14.

---

[13] The Government cites a single case, *Demore v. Kim*, for the proposition that administrative delay in decision-making cannot constitute a constitutional violation. 538 U.S. 510 (2003). However, *Demore* (which had nothing to do with an unlawful deprivation of property) dealt with a six-month delay in action, after the plaintiff himself—"a criminal alien who [had] conceded he that he [was] deportable–requested a continuance of his removal hearing. *Id.* at 530. Unlike that plaintiff, Plaintiffs are U.S. citizens who have not been alleged to have committed (let alone admitted to) any wrongdoing, and the 18-month administrative delay in the Government's decision-making has been over three times as long as the admittedly "longer than the average" six-month delay in *Demore*. *Id.* at 531.

[14] The cases cited by the Government to support this idea are easily distinguished from the case at hand. In one, the plaintiff—unlike Plaintiffs here—was afforded State-provided process. *See Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 466-67 (2d Cir. 2006) (due process of judicial candidate whose name was removed from primary ballot was satisfied not by the mere availability of judicial review of the removal, but by the "combination of [] two procedures" offered to the plaintiff: (1) a form of pre-deprivation hearing where she received notice and an opportunity to be heard by the city's board about the impending removal of her name; and (2) a post-deprivation special proceeding pursuant to the relevant election law). The Government's other cited case is inapposite, as it deals with penalties owed by a plaintiff who had been convicted of tax crimes and who did not dispute the statute governing his process. *Larson v. United States*, 888 F.3d 578, 585-87 (2d Cir. 2018) (convicted tax criminal not disputing the process offered via judicial remedy, but arguing, in essence, that the penalties he owed for crimes committed were "just not fair."). Plaintiffs here—who have not been accused (let alone convicted) of any wrongdoing—challenge the lack of process offered by the Government. Both cases are fundamentally different from the present case because both simply challenged the outcome of an agency's decision; neither plaintiff alleged—as Plaintiffs allege here—that the agency itself lacked the process by which to make determinations. *See Rivera-Powell*, 470 F.3d at 466-67; *see also Larson*, 888 F.3d at 585-87.

### D. Plaintiffs Have Adequately Pleaded A Violation of the Administrative Procedure Act

Under the APA, an agency action shall be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although courts generally defer to the agency with respect to the rules it administers, *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984), such deference is not limitless. *Benten v. Kessler*, 799 F. Supp. 281, 290 (E.D.N.Y. 1992). Agencies "must articulate a logical basis for their decisions, including a rational connection between the facts found and the choices made." *Detsel by Detsel v. Sullivan*, 895 F.2d 58, 63 (2d Cir. 1990) (quotation marks omitted). "Agency deference has not come so far that [courts] will uphold regulations whenever it is possible to 'conceive a basis' for administrative action." *Id.* An agency has the responsibility to explain the rationale and factual basis for its decision. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167-68 (1962).

The Government dedicates a single paragraph to Plaintiffs' claims under the APA, arguing that such claims should be dismissed because Plaintiffs have not stated a claim under the Fourth Amendment. Defs.' Mot. at 30. The Government's argument fails for several reasons. *First*, since Plaintiffs have stated Fourth Amendment claims, *see* Section II.B., *supra*, the Government's sole argument for dismissing Plaintiffs' APA claims is inapplicable. *Second*, the Government's brief acknowledges that Plaintiffs have claims for unreasonable delay and arbitrary decision-making under the APA. *See* Defs.' Mot. at 27-29. Indeed, the Government argues that the APA should be Plaintiffs' sole avenue for redress and the reason why this Court should dismiss Plaintiffs' Fifth Amendment claims. Defs.' Mot. at 26-27. To the extent the Government is claiming Plaintiffs have stated claims under the APA, but have not pleaded under the correct sections of the APA, *see id.* at 28, the Court should accept the facts pleaded as stating a claim

under the other relevant subsections of the APA, including 5 U.S.C. § 706(1), in the interests of justice. *Wagner v. Universal Packaging Corp.*, 2000 WL 1373668 (N.D.N.Y. 2000) ("Clearly, a complaint cannot be dismissed simply because it fails to use the 'magic words' of a statute. At the pleading stage, Fed. R. Civ. P. 8(e)(1) requires only that '[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings or motions are required.'")

*Third*, Defendants have violated the APA sections 706(2)(A) and (B), which permit this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be" "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" or "contrary to constitutional right, power, privilege, or immunity," respectively. 5 U.S.C. § 706. Under the "arbitrary and capricious" standard, the agency must "examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Defendants have failed to do so in two ways: (1) in applying the 50% Rule to Plaintiffs' property; and (2) in failing to grant or to articulate a reason for denying Plaintiffs' license applications. Indeed, in the total absence of any rule of decision promulgated by OFAC to guide its decision-making on license applications of the sort made by Plaintiffs, OFAC's actions on Plaintiffs' applications are, by definition, arbitrary and capricious.

The Government does not dispute that its designation of SDNs, as applied to Plaintiffs through OFAC's 50% Rule, is a final agency determination. For the reasons stated above, the Government has acted arbitrarily and capriciously by establishing and applying the 50% Rule to Plaintiffs by failing to "examine[] the relevant data and articulate[] a satisfactory explanation for its action including a rational connection between the facts and the choice made." *Nat'l Cotton Council of America v. U.S. EPA*, 553 F.3d 927, 934 (6th Cir. 2009). Defendants have not only violated Plaintiffs' Fourth Amendment rights for the reasons set out above, in Section II.B., but

20

have failed to evaluate and thoughtfully consider Plaintiffs' repeated requests for access to their blocked funds. Further, Defendants cite repeatedly to their authority to block foreign property, pursuant to the IEEPA, but fail to offer evidence or a logical explanation of why they are entitled to indefinitely seize the property of non-SDN U.S. citizens.

## CONCLUSION

For the foregoing reasons, Plaintiffs US VC Partners GP LLC, US VC Partners Management, LLC, Israeli VC Partners Ltd., Israeli VC Partners Management, LLC, CN Odyssey GP LLC, CN MapAnything GP LLC, Sparrow Capital Holdings LLC, Audubon Loan Funding GP LLC, CN Partners LLC, and Andrew Intrater respectfully request that the Court deny Defendants' Motion to Dismiss the Complaint.

Dated: October 21, 2019
New York, New York

LATHAM & WATKINS LLP

By: /s/ Richard D. Owens
Richard D. Owens
Matthew S. Salerno
885 Third Avenue
New York, New York 10022-4834
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Richard.Owens@lw.com
Matthew.Salerno@lw.com

*Attorneys for Plaintiffs US VC Partners GP LLC, US VC Partners Management, LLC, Israeli VC Partners Ltd., Israeli VC Partners Management, LLC, CN Odyssey GP LLC, CN MapAnything GP LLC, Sparrow Capital Holdings LLC, Audubon Loan Funding GP LLC, CN Partners LLC, and Andrew Intrater*