USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 1 7 2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
US VC PARTNERS GP LLC; US VC PARTNERS
MANAGEMENT, LLC; ISRAELI VC PARTNERS
LTD.; ISRAELI VC PARTNERS MANAGEMENT,
LLC; CN ODYSSEY GP LLC; CN MAPANYTHING GP
LLC; SPARROW CAPITAL HOLDINGS LLC;
AUDUBON LOAN FUNDING GP LLC; CN
PARTNERS LLC; ANDREW INTRATER,

                    Plaintiffs,

   -against-

UNITED STATES DEPARTMENT OF THE
TREASURY, OFFICE OF FOREIGN ASSETS
CONTROL; THE HONORABLE STEVEN MNUCHIN,
*in his official capacity as the Secretary of the United
States Department of the Treasury*; ANDREA GACKI, *in
her official capacity as the Director of the United States
Department of the Treasury's Office of Foreign Assets
Control*,

                    Defendants.
------------------------------------- x

MEMORANDUM DECISION
AND ORDER

19 Civ. 6139 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiffs, comprised of United States-based investment-related entities ("Entity Plaintiffs") and their principal, Andrew Intrater, (Compl., ECF No. 1 ¶¶ 10–19), bring this action against multiple Defendants, alleging that Defendants conducted a "warrantless seizure" and engaged in "ongoing interference" with the property interests of United States citizens. (*Id.* ¶ 1.) Specifically, Plaintiffs challenge the effect of the "50 Percent Rule," under which the Office of Foreign Assets Control ("OFAC") may impose certain sanctions against individuals that it lists as a "Specially Designated National" ("SDN") and may place a block on property in which an SDN has at least a 50 percent interest. (*Id.* ¶ 4.) Plaintiffs assert claims for (1) unlawful seizure under the Fourth Amendment; (2) Due Process violation under the Fifth Amendment; and (3) violation of the

Administrative Procedure Act ("APA"). (*Id.* ¶¶ 172–178.) Before this Court are Plaintiffs' motion for the return of property, (*see* Pls.' Notice of Mot., ECF No. 34), and Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), (*see* Defs.' Notice of Mot., ECF No. 35). Defendants' motion to dismiss for failure to state a claim is GRANTED. Plaintiffs' motion for the return of property is DENIED.

## I. FACTUAL BACKGROUND

Plaintiffs are comprised of (1) a collection of entities 100 owned by United States citizens, and (2) their principal, Andrew Intrater—who is also a United States citizen. (Compl. ¶¶ 10–19.) None of the Entity Plaintiffs are either partially or indirectly owned or controlled by any SDN. (*See id.* ¶ 9.) They do, however, hold certain assets through blocked entities in which Viktor Vekselberg—an SDN—owns 50 percent or more. (*Id.* ¶ 4.) Because of OFAC's 50 percent rule, Plaintiffs are unable to take certain actions as they pertain to those assets and entitlements, which Plaintiffs allege has caused, among other things, lost business opportunities or decreases in investment value. (*See generally* Compl.)

According to the complaint, "OFAC has promulgated no rules by which [United States] persons or entities may seek return of or access to property interests subject to sanctions" under the 50 percent rule. (*Id.* ¶ 133.) Plaintiffs have attempted to obtain licenses from OFAC, which would permit them to take certain actions regarding the blocked entities. (*Id.* ¶¶ 70–133.) As Plaintiffs note, "none of OFAC's rules, regulations, or public guidance provides any time limit on the time within which OFAC must act on a license application." (*Id.* ¶ 8.) Indeed, Plaintiffs allege that between April 16, 2018 and April 30, 2019, they made several applications seeking to collect proceeds and fees, as well as manage their assets, but that OFAC "has neither granted nor denied Plaintiffs' applications." (*Id.* ¶ 71.) Plaintiffs also allege that neither OFAC's rules or regulations

"set forth any legal standards that the agency must follow in determining whether to grant or deny license applications." (*Id.*) Plaintiffs have, however, acknowledged that OFAC did grant some of their applications for licenses. (*See* Tr. of Oral Arg. dated Aug. 13, 2020 ("Tr. of Oral Arg."), ECF No. 73 at 19:17–25.) Plaintiffs allege that they have been harmed by application of the 50 percent rule in three principal ways: they have been (1) unable to collect certain proceeds that they would otherwise be entitled to collect; (2) unable to collect certain management fees that they would otherwise be entitled to collect; and (3) "deprived of their rights . . . to control and manage" certain funds and entities, causing their investments and stakes in the entities to "diminish in value." (Compl. ¶¶ 135–171.)

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).[1]

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at

---

[1] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

3

679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

### III. DEFENDANTS' MOTION TO DISMISS IS GRANTED

Plaintiffs fail to make out claims under the Fourth Amendment, Fifth Amendment, or APA. At oral argument, Plaintiffs' counsel made an oral application to submit additional briefing, should this Court grant Defendants' motion to dismiss. That application is hereby DENIED as futile. Plaintiffs filed a substantive letter containing additional argument and case law after this Court held oral argument. (*See* Pls.' Aug. 20, 2020 Letter, ECF No. 72.) That letter does not lead this Court to reach a different determination. Plaintiffs also, however, request "permission to file leave to amend the complaint to incorporate a claim under 5 U.S.C. § 706(1)." (*Id.* at 3.) Defendants do not oppose this request, and in fact explicitly state that to bring a claim pursuant to 5 U.S.C. § 706(1), Plaintiffs should file a proposed amended complaint, as the current complaint "does not even cite . . . § 706(1), nor does it allege facts showing what conduct or inactivity plaintiffs consider an unreasonable delay." (*See* Defs.' Sept. 4, 2020 Letter ("Defs.' Ltr"), ECF No. 76.) Plaintiffs are hereby GRANTED leave to file a letter motion to amend, attaching a proposed amended complaint.

#### A. Defendants Did Not Violate Plaintiffs' Fourth Amendment Rights.

Plaintiffs argue that Defendants violated their Fourth Amendment rights by "complete[ly] blocking of all of Plaintiffs' rights to control or benefit from their ownership interests, or even to divest those interests." (*See* Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the Compl.

("Mem. in Opp'n"), ECF No. 41 at 7.) Defendants argue, however, that "blocking" does not qualify as a seizure because it does not "tak[e] title to, possession of, or physical control of affected property." (Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) ("Mem. in Supp."), ECF No. 36 at 16.) Even if this Court found that this *did* constitute a "seizure" under the Fourth Amendment, however, a balancing of the interests on both sides indicates that this is not unreasonable.

Under the Fourth Amendment, warrantless seizures are analyzed through a balancing of the competing interests, and will be deemed reasonable if "the circumstances, viewed *objectively*, justify the action." *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) (internal citation and alteration omitted). Defendants assert that the purpose of the freeze on properties with a majority interest held by an SDN are to "ensur[e] the effectiveness of sanctions programs that are key elements of the national effort to combat terrorism, nuclear proliferation, severe human rights abuses, and other international threats to the national interest." (Mem. in Supp. at 21.) Defendants also describe the "exacting process" under which the Government analyzes whether to issue a blocking order. (*Id.*) Clearly there is an important public and governmental interest in ensuring that SDN-owned properties and entities are blocked, and sanctions are upheld. Moreover, while Plaintiffs, as minority owners, are at least temporarily blocked from using their property, there is a rational explanation for why the Government would need to implement this type of restriction—it stops the SDN from being able to manipulate the property.

Moreover, as the parties note, there is a procedure by which Plaintiffs may request that the block to be removed. Indeed, while Plaintiffs complain about the amount of time it takes OFAC to reach a decision on whether to grant licenses, they admit that some of their requests have already been granted. (Tr. of Oral Arg. at 19:17–25.) They further admitted at oral argument that there has

been no instance where they have applied for a license and were rejected.[2] (*See id.* at 20:1–3 ("THE COURT: But there is no instance where you've applied for a license and they said no. MR. OWENS: That's correct.").) Because any alleged seizure would be reasonable, Plaintiffs' Fourth Amendment claim cannot withstand Defendants' motion to dismiss. Plaintiffs' claim is therefore dismissed.

## B. Defendants Did Not Violate Plaintiffs' Fifth Amendment Rights.

Defendants correctly note that Plaintiffs do not challenge OFAC's designation of Vekselberg as an SDN, or that the entities in which Plaintiffs have a stake are subject to the 50 percent rule. (*See* Mem. in Supp. at 2.) Plaintiffs assert that because there are no standards or principles under which OFAC must make its decisions, OFAC "enjoys unfettered discretion to consider (or ignore) information" and has violated Plaintiffs' due process rights through its procedures. (Mem. in Opp'n at 16.) As Defendants correctly note, however, the law does not require advance notice before sanctions go into effect, nor can Plaintiffs possibly demonstrate that simply denying their applications violates due process. (Mem. in Supp. at 25.) Plaintiffs allege that "[t]he risk of falling victim to arbitrary decision-making is particularly acute because OFAC is not obligated to explain how or why it exercised its discretion." (Mem. in Opp'n at 16.) While this Court does not deny some possibility that OFAC may reach a determination with which Plaintiffs do not agree, the fact that Plaintiffs may be unhappy with the result of OFAC's future decision is not before this Court.

---

[2] In light of this Court's finding that any seizure would be reasonable under the circumstances, it need not reach a determination as to whether this scenario could fall under the "special needs" exception to the Fourth Amendment, as Defendants argue.

Indeed, that is a matter for an appeal *after* OFAC makes an adverse decision and filing the instant case is not the appropriate procedural route for Plaintiffs to take.[3]

Plaintiffs also assert that the lack of guidelines and standards as to how long an OFAC decision may take violates due process. However, this alone does not violate due process, and Plaintiffs cite no authority to support a rule that OFAC must determine the license applications within a certain time period in order to comply with due process. Indeed, the only authority Plaintiffs cite in support of their argument is *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002), wherein the Second Circuit found that there was an unreasonable delay between a *seizure* and a post-deprivation hearing. *See id.* at 48. Notably, and as described above, Plaintiffs cannot demonstrate that they were subject to a seizure. Moreover, Plaintiffs' arguments regarding this point are particularly problematic because there are specific procedures in place through which Plaintiffs could obtain review and the relief they seek. Indeed, as Plaintiffs acknowledged at oral argument, they could have sought administrative review, but opted not to do so. (*See* Tr. of Oral Arg. At 23:2–17.) While Plaintiffs attempt to salvage their argument by correctly stating that "[t]he mere existence of the APA as a remedy of last resort does not obviate the need for OFAC to provide due process in the first instance," (Mem. in Opp'n at 18), they have not plausibly alleged that OFAC has committed any such offense. This Court declines to act as an alternative route by which Plaintiffs may circumvent procedures established for the specific purpose of addressing these concerns.

---

[3] For example, once a license application is denied, "[t]he applicant or any other party in interest may at any time request, by written correspondence, reconsideration of the denial of an application on the basis of new facts or changed circumstances." 31 C.F.R. § 501.801 (b)(5). (*See also* Defs.' Ltr. at 1.) Moreover, as Defendants describe, although OFAC guidelines make clear that although the denial of an application for a license constitutes a final agency action, "OFAC will reconsider its determinations for good cause, for example, where the applicant can demonstrate changed circumstances or submit additional relevant information not previously made available to OFAC." (Defs.' Ltr. at 1–2.)

## C. Defendants Did Not Violate the APA.

Defendants argue that this Court should dismiss Plaintiffs' claim that they violated the APA because Plaintiffs' allegations supporting this claim are identical to those that they allege in support of their insufficient Fourth Amendment claim. (*See* Mem. in Supp. at 30.) Plaintiffs, however, allege that they assert that they assert viable claims under 5 U.S.C. § 706(1), that is, in the interests of justice, as well as under 5 U.S.C. §§ 706(2)(A) and (B), which permit review for agency actions that may be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity." (Mem. in Opp'n at 19–21.) Specifically, Plaintiffs argue that Defendants have acted arbitrarily and capriciously "(1) in applying the [50 percent] rule to Plaintiffs' property; and (2) in failing to grant or to articulate a reason for denying Plaintiffs' license applications." (*Id.* at 20.) Plaintiffs, however, provide only conclusory allegations to support their claim that this was arbitrary and capricious. Indeed, based on this Court's analysis above, and the fact that Plaintiffs' complaint is devoid of any facts that would support a finding that Defendants have violated the APA, they have failed to state a claim.

Plaintiffs also appear to confuse Defendants' arguments. They allege that because Defendants assert that Plaintiffs could have turned to the APA for redress, *i.e.*, to assert a claim for unreasonable delay, Plaintiffs' claim under the APA should not be dismissed. (*Id.* at 19–20.) Plaintiffs, however, do not make a claim for unreasonable delay, and chose to move forward with this matter instead of utilizing the appropriate procedures. Indeed, as Defendants indicate in their reply brief in support, "the Government does not 'acknowledge that Plaintiffs here have claims . . . under the APA.'" (*See* Reply Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Compl. Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 44 at 10.) The APA provides an available route for Plaintiffs to address their concerns which they have deliberately decided to avoid.

8

### IV. PLAINTIFFS' MOTION FOR RETURN OF PROPERTY IS DENIED

Plaintiffs move for the "immediate return of seized property pursuant to Fed. R. Crim. P. 41(g)." (*See* Pls.' Notice of Mot.) Plaintiffs argue that Defendants cannot provide a meaningful reason for continuing to hold Plaintiffs' property and restrain their access to this property. (*See* Reply Mem. of Law in Further Supp. of Pls.' Mot. for the Return of Unlawfully Seized Property, ECF No. 45 at 1.) Plaintiffs, however, carry the burden of demonstrating that they are entitled to relief pursuant to Rule 41(g). "To prevail on a [Rule 41(g)] motion, a criminal defendant must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *Ferreira v. United States*, 354 F.Supp.2d 406, 409 (S.D.N.Y. 2005) (citation omitted). For the reasons stated above, Plaintiffs have not demonstrated that they are entitled to possession of blocked property, or that Defendants have acted either illegally or improperly. Indeed, as Defendants note in their motion to dismiss, Plaintiffs have not actually alleged that OFAC's characterization or blocking of their assets is improper, if the 50 percent rule applies. (*See* Mem. in Supp. at 2.) Plaintiffs' motion for the return of property, therefore, is denied.

### V. CONCLUSION

Defendant's motion to dismiss, (ECF No. 35), is GRANTED. Plaintiffs' motion for the return of property, (ECF No. 34), is DENIED. The Clerk of Court is directed to close these motions accordingly.

Dated: New York, New York
September 17, 2020

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

9